JS 44 (Rev 3/99)

# CIVIL COVER SHEET

B-01-142

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JEFFERSON PILOT LIFE INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff ______
(EXCEPT IN U S PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
JASON R MANN
J EDWARD MANN, JR & ASSOCIATES
P.O BOX 231
HARLINGEN, TEXAS 78550

## DEFENDANTS

SORT-RITE INTERNATIONAL, INC., EXPORT-IMPORT BANK OF THE UNITED STATES, COASTAL BANK, SSB, LETICIA ELIZALDE DE PINO, Beneficiary, DEBRA ANN METZGER FINCH, Contingent Beneficiary, KATHERINE LEE METZGER, Second Contingent Beneficiary

County of Residence of First Listed Defendant CAMERON
(IN U S. PLAINTIFF CASES ONLY)

NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

United States District Court
Southern District of Texas
FILED

Attorneys (If Known)

AUG 15 2001

Michael N. Milby
Clerk of Court

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U S Government Plaintiff
- ☐ 3 Federal Question (U S Government Not a Party)
- ☐ 2 U S Government Defendant
- x 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | x 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | x 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- x 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl Ret Inc Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U S Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- x 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U S Civil Statute under which you are filing and write brief statement of cause Do not cite jurisdictional statutes unless diversity)

Plaintiff, Jefferson Pilot Life Insurance Company wishes to place death benefit proceeds from a life insurance policy on Shirley J Metzger into the registry of the corut Multiple claims are asserted against tl property subject to this interpleader by Defendants

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☐ Yes x No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE ______ DOCKET NUMBER ______

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG JUDGE ______

ClibPDF - www.fastio.com

/

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

AUG 15 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **JEFFERSON- PILOT LIFE INSURANCE COMPANY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **SORT-RITE INTERNATIONAL, INC., EXPORT IMPORT BANK OF THE UNITED STATES, COASTAL BANK, SSB, LETICIA ELIZALDE de PINO, Beneficiary, DEBRA ANN METZGER FINCH, Contingent Beneficiary, KATHERINE LEE METZGER, Second Contingent Beneficiary** | § | **CIVIL ACTION NO.** B-01-142 |
| **Defendant.** | § | |

---

## JEFFERSON PILOT LIFE INSURANCE COMPANY'S ORIGINAL COMPLAINT FOR INTERPLEADER

---

COMES NOW, JEFFERSON-PILOT LIFE INSURANCE COMPANY, (hereinafter referred to as "JEFFERSON PILOT") and makes and files this its Original Complaint for Interpleader and in support of same respectfully shows the Court as follows:

### I. Parties and Service of Process

1. Plaintiff, JEFFERSON-PILOT LIFE INSURANCE COMPANY is a Corporation that is incorporated under the laws of the State of North Carolina.

2. Defendant, SORT-RITE INTERNATIONAL, Inc. is a Corporation that is incorporated under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process care of Christopher Boswell, Stapleton, Curtis & Boswell, 515 East Harrison, Suite A, Harlingen, Texas 78550.

ClibPDF - www.fastio.com

3. Defendant, EXPORT-IMPORT BANK OF THE UNITED STATES is a corporation of the United States of America, may be served by sending a copy of the summons to the United States Attorney, Gregory A. Serres, at the United States Department of Justice, United States Attorney's Office, Attention: Civil Docketing, at 910 Travis Street #1500, P.O. Box 61129, Houston, Texas 77208, and by sending a copy of the summons and of the complaint by registered or certified mail to Defendant, William Mays, Export Import Bank of the United States at 811 Vermont Avenue, N.W., Washington, D.C. 20571, and also by sending a copy of the summons and of the complaint by registered or certified mail to John Ashcroft, U.S. Attorney General, located at 10 and Constitution Avenue, Washington, D.C. 20530

4. Defendant, COASTAL BANC, SSB, is a Corporation that is incorporated under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by servicing its attorney Mike Ezell, at 312 Van Buren, Harlingen, Texas 78550.

5. Defendant, LETICIA ELIZALDE de PINO, is an individual who is a citizen of the State of Florida, who may be served with process at 600 Grapetree Dr., Apt. 11 DN, Key Biscayne, Florida 33149 or where ever she may be found.

6. Defendant, DEBRA ANN METZGER FINCH, is an individual who is a citizen of the State of Texas, who may be served with process at 1900 Laurel Drive, Harlingen, Texas 78550.

7. Defendant, KATHERINE LEE METZGER, is an individual who is a citizen of the State of Texas, who may be served with process 3121 Buffalo Speedway, # 6203, Houston, TX 77098.

ClibPDF - www.fastio.com

II. Jurisdiction and Venue

8. JEFFERSON PILOT is diverse from each Claimant, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. The parties who claim entitlement to and dispute the proceeds of the Policy are citizens of the United States of America.

9. Venue is proper in the United States District Court for the Southern District of Texas, Brownsville Division, pursuant to 28 U.S.C. §§ 1397 and 124(b)(7), because one or more of the Claimants reside in the judicial district of Brownsville.

III. The Property

10. The property subject to this interpleader is life insurance policy No. JP4038973, issued by JEFFERSON PILOT on or about December 1, 1987, (The "Policy") attached hereto as Exhibit A, insuring the life of SHIRLEY J. METZGER (The "Insured) in the amount of $1,500,000.00. SHIRLEY J. METZGER died in March 2001. Pursuant to a Split-Dollar Endorsement for Universal Life Policy under the Policy, SHIRLEY J. METZGER was Co-Owner and SORT-RITE INTERNATIONAL, INC. was the Employer Co-Owner of the Policy. The Co-Beneficiaries under the Split-Dollar Endorsement for Universal Life Policy of the Policy were DEBRA ANN METZGER FINCH, KATHERINE LEE METZGER and FRANCIS E. MERRICK. SORT-RITE INTERNATIONAL, INC., is entitled, under the Split-Dollar Endorsement for Universal Life Policy, to the greater of $1,000,000.00 or the net premiums. (See attached Exhibit B).

11. Upon information and belief, the policy was assigned by SHIRLEY J. METZGER to SAN BENITO BANK & TRUST COMPANY (Now COASTAL BANC, SSB), and then subsequently assigned to EXPORT-IMPORT BANK OF THE UNITED STATES. The

assignment to EXPORT-IMPORT BANK OF THE UNITED STATES was made both in SHIRLEY METZGER's individual capacity and in her capacity as President of SORT-RITE INTERNATIONAL, INC.

12. The Insured, in her capacity as President of SORT-RITE INTERNATIONAL, INC., changed the beneficiary designation in August 1995, naming LETICIA ELIZALDE de PINO, friend, as primary beneficiary and DEBRA ANN METZGER FINCH and KATHERINE LEE METZGER as contingent beneficiaries.

13. At the time of the Insured's death, the benefits due under the policy were $1,500,000.00, less an outstanding policy loan in the amount of $13,406.80, making the actual benefits due under the policy $1,486,593.23, plus interest at the rate of four (4) percent from the Insured's date of death.

14. The current value of the property subject to this interpleader is $1,509,774.70.

IV. The Claims

15. There are multiple claims asserted against the property subject to this interpleader by SORT-RITE INTERNATIONAL, INC., COASTAL BANK, SSB., EXPORT-IMPORT BANK OF THE UNITED STATES, LETICIA ELIZALDE de PINO, DEBRA ANN METZGER FINCH, KATHERINE LEE METZGER. The Claimants' claims against the property subject to this interpleader are adverse as shown by the following paragraphs Nos. 16, 17, 18, 19, 20, and 21.

16. On or about April 25, 2001, Ken E. Mackey, counsel for SORT-RITE INC., made demand on JEFFERSON PILOT, to receive the stated amount in the policy as the Owner's share of the policy proceeds and to put JEFFERSON PILOT on notice of competing

ClibPDF - www.fastio.com

claimants to the proceeds of the policy, and to request that no disbursement of any proceeds under the policy be made.

17. On or about June 7, 2001, Mike R. Ezell, counsel for COASTAL BANK, SSB., made written demand upon JEFFERSON PILOT for the prompt payment of the proceeds of the Policy.

18. On or about April 25, 2001, EXPORT-IMPORT BANK OF THE UNITED STATES, sent notice to JEFFERSON PILOT, with an attached claimant statement whereby EXPORT-IMPORT BANK OF THE UNITED STATES presented a claim as duly constituted assignee of policy JP4038973, in the amount of $471,879.80, as of April 1, 2001 together with interest at 8.5 percent per annum.

19. On or about April 4, 2001, Jane Akin Brasch, then counsel for LETICIA ELIZALDE de PINO, made written demand upon JEFFERSON PILOT to refrain from disbursing any insurance proceeds until the correct and exact amounts owed on outstanding loans underlying the assignments can be determined.

20. On or about May 2, 2001, Constance Y. Singleton, counsel for DEBRA ANN METZGER FINCH and KATHERINE LEE METZGER sent correspondence to JEFFERSON PILOT, which appears to make a claim on the policy proceeds on behalf of DEBRA ANN METZGER FINCH and KATHERINE LEE METZGER, by asserting inadequacies in transfers and/or assignments of the policy, along with issues concerning ownership and premium payments made on said policy.

21. Accordingly, JEFFERSON PILOT has been notified of a dispute as to the distribution of the proceeds of the Policy.

ClibPDF - www.fastio.com

V. The Interpleader

22. JEFFERSON PILOT has reasonable fear of multiple liability because of these adverse claims. Because of the dispute and the adverse claims, JEFFERSON PILOT is unsure which Claimant is entitled to the proceeds of the Policy.

23. Accordingly, JEFFERSON PILOT is hereby unconditionally tendering the disputed proceeds of the Policy into the registry of this Court.

VI. Count One - Interpleader

24. JEFFERSON PILOT realleges and incorporated herein by reference all of the allegations contained in paragraphs 1 through 20, inclusive, of this Claim for Interpleader.

25. All obligations under the provisions of the Policy having been duly performed, and proof of death having been made, there has become due and owing under the terms of the Policy the sum of $1,486,593.23, such sum being the total amount of the death benefits payable under the Policy at the time of the Insured's death.

26. A party is entitled to relief by interpleader if the party is subject to or has reasonable grounds to anticipate rival claims to the same funds or property. There is a dispute between interested parties regarding proper allocation of these funds for payment.

27. JEFFERSON PILOT is an innocent stakeholder faced with potential multiple claims for the distribution of the $1,486,593.23 death benefits ($1,500,000.00 less an outstanding policy loan in the amount of $13,406.80) to be paid under the Policy. JEFFERSON PILOT neither has nor claims any interest in these life insurance proceeds and has at all times been wiling to pay the proceeds to the person, persons, or entities who are lawfully entitled to them.

ClibPDF - www.fastio.com

28. JEFFERSON PILOT has not colluded with any of the Claimants regarding this dispute. JEFFERSON PILOT is not indemnified in any manner by any of the Claimants. JEFFERSON PILOT has filed this Original Claim, which includes the cause of action of interpleader, to avoid multiple liability, unnecessary suits, and the costs incident thereto. JEFFERSON PILOT has not unreasonably delayed in filing this action for interpleader.

29 Contemporaneously with the filing of this action, and subject to the approval of the United States Disctrict Clerk's Office, JEFFERSON PILOT will deposit the sum of $1,509,774.70 ($1,500,000.00 policy proceeds, less an outstanding policy loan in the amount of $13,406.80, making the actual benefits due under the policy $1,486,593.23, plus interest at the rate of four (4) percent through the date deposited) into the registry of this Court, such sum representing the proceeds due under the Policy to one or more of the Claimants. JEFFERSON PILOT hereby petitions the Court to order the U.S. District Clerk to deposit the proceeds in an interest bearing account until the ownership of the proceeds is determined by the Court.

VII. Count Two - Declaratory Judgment

30. JEFFERSON PILOT realleges and incorporated herein by reference all of the allegations contained in paragraphs 1 through 29, inclusive, of this Claim for Interpleader.

31. JEFFERSON PILOT seeks a declaratory judgment from the Court setting forth the rights and status of the parties. Specifically, JEFFERSON PILOT seeks a declaration:

a. That the amount of the death benefit payable under the Policy Issued by JEFFERSON PILOT on the life of the Insured is $1,486,593.23, plus applicable interest;

b. That there exists a dispute between SORT-RITE INTERNATIONAL, INC., COASTAL BANK, SSB., EXPORT-IMPORT BANK OF THE UNITED STATES, LETICIA ELIZALDE de PINO, DEBRA ANN METZGER FINCH, and

KATHERINE LEE METZGER regarding the proper allocation of these funds for payment;

c. That JEFFERSON PILOT is an innocent stakeholder which does not make any claim to the disputer life insurance proceeds;

d. That JEFFERSON PILOT, by interpleading the disputed funds into the registry of the Court, has fulfilled its obligations under the terms of the Policy, and is thereby released and discharged from any and all liability to the Claimants, or any related parties, with regard to the Policy or the proceeds thereof and that JEFFERSON PILOT is hereby discharged from this lawsuit and all other claims and/or caused of action against JEFFERSON PILOT are hereby dismissed with prejudice;

e. That JEFFERSON PILOT should have and recover its reasonable attorneys' fees for the services of its attorneys in the amount of at least $5,000.00, together with all costs of Court and expenses incurred by it in this cause, with all such sums to be paid out of the funds deposited into the registry of the Court, to be determined by this court at the time of filing;

f. That the funds deposited into the registry of the Court by JEFFERSON PILOT shall remain in the registry of the Court until such time as it is determined who is justly entitled to the funds.

32. JEFFERSON PILOT realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 31, inclusive, of this Claim for Interpleader.

33. When an interpleader is a disinterested stakeholder with no interest of its own in the property, it can recover costs and attorneys' fees from the competing claimants. JEFFERSON PILOT is a disinterested stakeholder and should be awarded its costs and reasonable attorneys' fees.

34. JEFFERSON PILOT would further show that it has been required to employ legal counsel to represent it in this cause and has agreed to pay a reasonable attorneys' fee for said services. Pursuant to *Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2D 675, 683 (2nd Cir. 1989), JEFFERSON PILOT is entitled to recover the reasonable and necessary attorneys' fees incurred by it in this cause. Therefore, JEFFERSON PILOT

ClibPDF - www.fastio.com

respectfully seeks an award of the reasonable and necessary attorneys' fees of at least $5,000.00, incurred by it in prosecuting this action.

35. WHEREFORE, PREMISES CONSIDERED, JEFFERSON PILOT respectfully requests that SORT-RITE INTERNATIONAL, INC., COASTAL BANK, SSB., EXPORT-IMPORT BANK OF THE UNITED STATES, LETICIA ELIZALDE de PINO, DEBRA ANN METZGER FINCH, and KATHERINE LEE METZGER, be required to appear and answer herein, asserting their conflicting claims for the sum now deposited with the Court and, upon a full and final trial hereon, that JEFFERSON PILOT have judgment as follows:

1. A declaratory Judgment

a. That the amount of the death benefit payable under the Policy Issued by JEFFERSON PILOT on the life of the Insured is $1,486,593.23 plus applicable interest;

b. That there exists a dispute between interested parties, SORT-RITE INTERNATIONAL, INC., COASTAL BANK, SSB., EXPORT-IMPORT BANK OF THE UNITED STATES, LETICIA ELIZALDE de PINO, DEBRA ANN METZGER FINCH, and KATHERINE LEE METZGER, regarding the proper allocation of these funds for payment;

c. That JEFFERSON PILOT is an innocent stakeholder which does not make any claim to the disputer life insurance proceeds;

d. That JEFFERSON PILOT, by interpleading the disputed funds into the registry of the Court, has fulfilled its obligations under the terms of the Policy, and is thereby released and discharged from any and all liability to the Claimants, or any related parties, with regard to the Policy or the proceeds thereof and that JEFFERSON PILOT is hereby discharged from this lawsuit and all other claims and/or causes of action against JEFFERSON PILOT are hereby dismissed with prejudice;

e. That JEFFERSON PILOT should have and recover its reasonable attorneys' fees for the services of its attorneys, together with all costs of Court and expenses incurred by it in this cause, with all such sums to be paid at this time out of the funds deposited into the registry of the Court; and

ClibPDF - www.fastio.com

f. That the funds deposited into the registry of the Court by JEFFERSON PILOT, less the amount paid to JEFFERSON PILOT pursuant to paragraph 1(e) herein, shall remain in the registry of the Court until such time as it is determined who is justly entitled to the funds.

2. Costs of Court

3. Reasonable and necessary attorneys' fees of at least $5,000.00; and

4. Such other and further relief, both general and special, at law or in equity, to which JEFFERSON PILOT may show itself to be justly entitled.

Respectfully submitted,

*J. EDWARD MANN, JR. & ASSOCIATES*

Jason R. Mann
State Bar No. 24004793
Federal Bar No. 23543
222 E. Van Buren, Suite 701
P. O. Box 231
Harlingen, Texas 78551-0231
Telephone: 956/428-4114
Facsimile: 956/428-9494
Attorney for JEFFERSON-PILOT LIFE INSURANCE COMPANY

ClibPDF - www.fastio.com



Jefferson Pilot

Jefferson-Pilot Life Insurance

1. The Death Benefit of this po... immediately upon receipt of du... Insured while the policy is in fo... Date, or

2. the Maturity Value of this pol... Maturity Date if the policy is in ... on that date.

This policy is a legal contract between the Owner and the Company. All provisions on the following pages are a part of this contract.

**Ten Day Right to Examine Policy**

This policy may be surrendered within ten days after it is delivered by returning it to the Company or to one of its agents. Upon such surrender, the policy will be considered void from the beginning and any premiums paid will be refunded.

Signed for the Company at its home office in Greensboro, North Carolina, on the policy date.

Jerry L. Engle    W Roger Soles

Secretary    Chairman of the Board
Chief Executive Officer

Form 87-130

## Flexible Premium Adjustable Life Insurance Policy

Adjustable death benefit payable at death prior to the Maturity Date. Maturity Value payable on the Maturity Date if the Insured is then alive. Flexible premiums payable during Insured's lifetime until the Maturity Date. Non-participating

ClibPDF - www.fastio.com

**Death Benefit** The Death Benefit of the policy will be defined under one of the following options.

Option A The Death Benefit is the larger of
1. The Specified Amount on the date of death plus the cash value at the beginning of the policy month of death, or
2. A percentage of the cash value at the beginning of the policy month of death. The percentage is defined below.

Option B The Death Benefit is the largest of
1. The Specified Amount on the date of death, or
2. The cash value at the beginning of the policy month of death, plus $25,000, or
3. A percentage of the cash value at the beginning of the policy month of death. The percentage is defined below

| Attained Age | Percentage | Attained Age | Percentage | Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 140% | 55 | 125 | 70 | 110 |
| 41 | 139 | 56 | 124 | 71 | 109 |
| 42 | 138 | 57 | 123 | 72 | 108 |
| 43 | 137 | 58 | 122 | 73 | 107 |
| 44 | 136 | 59 | 121 | 74 | 106 |
| 45 | 135 | 60 | 120 | 75 & over | 105 |
| 46 | 134 | 61 | 119 | | |
| 47 | 133 | 62 | 118 | | |
| 48 | 132 | 63 | 117 | | |
| 49 | 131 | 64 | 116 | | |
| 50 | 130 | 65 | 115 | | |
| 51 | 129 | 66 | 114 | | |
| 52 | 128 | 67 | 113 | | |
| 53 | 127 | 68 | 112 | | |
| 54 | 126 | 69 | 111 | | |

Under either option, the Death Benefit will be reduced by any indebtedness on the date of death. In addition, any premium paid after the beginning of the policy month of death will be refunded. The cash value at the beginning of the month of death used in calculating the death benefit above is after subtracting all parts of the monthly deduction for the month except for the cost of insurance.

The Specified Amount at issue and the option in effect at issue are shown on page three. Either may be changed as described below. The Death Benefit payable is subject to all provisions of this policy.

**Maturity Value** The Maturity Date is shown on page three. The Maturity Date is the date the policy will terminate if the policy is in force and the Insured is alive on that date. The Maturity Value will be paid on termination on the Maturity Date. The Maturity Value will be the cash value less any indebtedness on that date. It is possible that the policy will terminate without value prior to the Maturity Date. This will happen if premiums paid and interest credited are not sufficient to continue coverage to that date.

**Changes in Insurance Coverage** The insurance coverage may be change[d a]t any time after the first policy year on writt[en] request by the Owner The changes which can be made are
1. Increase in the Specified Amount.
2. Decrease in the Specified Amount.
3. Change in the existing death benefit option.
4. Change in the Maturity Date, subject to the consent of the Company.

If a change would result in an increase in the amount payable [at] death, such change will be subject to satisfactory evidence o[f] insurability. The Specified Amount may not be decreased below $25,000. A decrease in the Specified Amount will appl[y] first against insurance with the most recent effective date, wit[h] the Initial Specified Amount being last to be decreased. A change will be effective on the Monthly Anniversary Day on o[r] next following the date of approval by the Company of the request for the change, unless another date acceptable to the Company is requested.

## Premium Provisions

**Payment of Premiums** The initial premium is due on the policy date. Subsequent premiums may be paid at any time and in any amount, subject to the following conditions, unless otherwise agreed to in writing by the Company.

The amount of each premium must be at least $25 00.

The maximum amount of premium the Company will accept in any policy year will be three times the yearly planned premiu[m] shown on page 3.

All premiums are payable either at the home office or to an authorized agent. If paid to an agent, the agent will furnish a[n] official premium receipt. This receipt must be signed by the Secretary of the Company and countersigned by the agent. [N]o agent has the authority to collect a premium unless he has su[ch] a receipt.

**Grace Period** If on a Monthly Anniversary Day the cash value less any indebtedness is less than the monthly deductio[n] due, a grace period of 60 days from that date will be allowed [for] the payment of the minimum amount needed to continue the policy. The cash value and monthly deductions are described in the Nonforfeiture Provisions.

The Company will notify the Owner and any Assignee of the minimum amount due at least 30 days before the end of the grace period. If the amount specified is not paid within the grace period, the policy will terminate without value at the en[d] of such period. If the Insured dies within the grace period, th[e] amount needed to continue the policy to the end of the polic[y] month of death will be deducted from the amount otherwise payable.

## Non-participating

No dividends will be paid on this policy

## POLICY SPECIFICATIONS

INSURED SHIRLEY JEAN METZGER

SPECIFIED AMOUNT $1,500,000 DECEMBER 1, 1987 POLICY DATE

POLICY NUMBER JP4038973

DEATH BENEFIT OPTION B

MATURITY DATE DECEMBER 1, 2032

NOTE: THE MATURITY DATE SHOWN IS THE DATE THE POLICY WILL MATURE IF IT IS IN FORCE ON THAT DATE. EVEN IF COVERAGE CONTINUES TO THE MATURITY DATE, THERE MAY IN FACT BE LITTLE OR NO VALUE TO BE PAID. IT IS POSSIBLE THAT COVERAGE WILL TERMINATE PRIOR TO THE MATURITY DATE SHOWN. THIS WILL HAPPEN IF PREMIUMS PAID AND INTEREST CREDITED ARE NOT SUFFICIENT TO CONTINUE COVERAGE TO THAT DATE.

ISSUE AGE 50

PLANNED PREMIUM $1,004.48 MONTHLY

OWNER AS PROVIDED IN RIDER

BENEFICIARY PAYABLE AS PROVIDED IN RIDER

## SCHEDULE OF BENEFITS AND PREMIUMS - POLICY NUMBER JP-4038973

| FORM NUMBER | BENEFIT | | EFFECTIVE DATE | MONTHLY DEDUCTION | RATE CLASS | YEARS PAYABLE |
|---|---|---|---|---|---|---|
| 87-130 | INITIAL SPECIFIED AMOUNT | 1,500,000 | DEC 1, 1987 | SEE PAGE 6 | STD | |

ClibPDF - www.fastio.com

# General Provisions

**The Contract** This insurance is issued in return for the application and the payment of the initial premium.

The policy and the application make up the entire contract. A copy of the application is attached to the policy. Only statements contained in the application can be used to contest a claim or the validity of the policy. These statements are considered representations and not warranties, in the absence of fraud.

**Incontestability** This policy becomes incontestable if it is in force and the Insured is alive two years after the policy date. After that time the validity of the policy cannot be contested due to misrepresentation of material facts in the application.

An addition to the Specified Amount becomes incontestable if it is in force and if the Insured is alive two years from its effective date.

**Modification** No agent or other person, except an officer in the home office of the Company, has the power to act for the Company. Only such officers can modify the terms of this policy. No promise made by any other person with regard to the terms or benefits of this policy is binding on the Company. The agent is not authorized to accept any information for the Company that is not in the application, to extend the time allowed for paying a premium, or to waive and of the Company's rights or requirements.

**Settlement** All sums payable by the Company are payable at the home office. Any sum due will be mailed or otherwise delivered. In any settlement under this policy all indebtedness will be first deducted. The term indebtedness means the balance owed to the Company on a loan on this policy.

**Reinstatement** If this policy terminates because a premium or other required amount is not paid, but it is not surrendered for cash, it may be reinstated. Reinstatement means the policy is put back in full force. Reinstatement may be made at any time within five years from the date of termination and prior to the Maturity Date. Satisfactory evidence of insurability must be furnished at that time. The minimum payment required will be an amount sufficient to keep the policy in force for at least two months. Any indebtedness which existed on the date of termination must also be repaid or reinstated. Reinstatement will be effective on the Monthly Anniversary Day on or next following the date of approval by the Company of the request for reinstatement, unless another date acceptable to the Company is requested.

**Suicide** If the Insured commits suicide, while sane or insane, within two years from the policy date, the amount payable under this policy will be the sum of the premiums paid less any indebtedness and less any partial surrenders.

If the Insured commits suicide, while sane or insane, within two years from the date of an addition to the Specified Amount, the amount payable under such addition will be the sum of the monthly deductions for such addition.

**Misstatement of Age or Sex** If the date of birth or the sex of the Insured has been misstated, the amount of death benefit will be adjusted to the amount which would have been provided by the most recent cost of insurance deduction at the true age and sex.

**Assignment** This policy may be assigned. An assignment will not be binding on the Company unless it is in writing and filed at the home office. The Company is not responsible for the validity or sufficiency of an assignment.

**Ownership** The Owner of this policy is shown on page 3 or in a rider attached to the policy. While the Insured is living, the Owner may exercise every right and option and receive every benefit provided by the policy. The rights of the Owner are not subject to consent of the Beneficiary.

**Beneficiary** The Beneficiary may be changed by written request satisfactory to the Company filed at its home office. Any change will take effect on the date of the written request if the Insured is alive at that time. However, a change is subject to any payment made or action taken by the Company prior to the time such request is filed at the home office.

If any Beneficiary dies before the Insured, benefits which would have been paid such Beneficiary shall be paid to the Owner, if living, unless otherwise provided. If the Owner is not living, such proceeds will be paid to the estate of the Owner, unless otherwise provided. The interest of any Beneficiary will be subject to the rights of any Assignee.

**Monthly Anniversary Day** The monthly anniversary day in each month is the same day of the month as the policy date.

ClibPDF - www.fastio.com

# Non-Forfeiture Provisions (Continued)

**Continuation of Insurance** This policy and all riders will continue in force according to their terms as long as the cash value, less any indebtedness, is sufficient to cover the monthly deduction. If such value is not sufficient, the policy will terminate according to the Grace Period provision. In no case will the policy continue past the Maturity Date nor will a rider continue past its termination date. If premiums are discontinued on any date, the value on that date will be used to provide insurance under this provision

**Basis of Values** Minimum cash values are based on the 1958 Commissioners' Standard Ordinary Mortality Table, age nearest birthday, with interest at 4% per year. A detailed statement of the method of computation of cash values under this policy has been filed with the insurance department of the state in which this policy was delivered. Cash values under this policy are not less than the minimum values required by law.

**Surrender and Surrender Value** This policy may be surrendered at any time prior to the Maturity Date. Written request must be made by the Owner. The surrender value will be the cash value as of the date of surrender less any indebtedness and less the charge for full surrender.

If surrender is requested within 30 days after the end of a policy year, the surrender value will not be less than the surrender value at the end of that year less any policy loans or partial surrenders made since the end of that year.

The Company has the right to defer the payment of any surrender value for up to six months after receiving written request.

**Partial Surrender** A partial surrender of this policy may be made at any time prior to the Maturity Date. Written request must be made by the Owner. A partial surrender will not be allowed if the remaining surrender value would be less than the minimum required by law. The partial surrender may be for any amount not to exceed the surrender value at the time, less $500.00.

When a partial surrender is made,

1. the cash value will be reduced by the amount of the partial surrender, plus a fee of $25.00, plus the charge for the partial surrender.

2. the death benefit will also be reduced by the same amount as the reduction in cash value. The Specified Amount will be reduced by such amount if the policy is under death benefit option B at the time. A partial surrender cannot be allowed if it would reduce the Specified Amount below $25,000.

The Company has the right to defer the payment of a partial surrender for up to six months after receiving written request. A partial surrender made for the purpose of paying premiums to the Company will not be deferred.

**Surrender Charges** If the policy has been in force less than ten years (120 months) there will be a charge for full or partial surrender. The charge will be the amount of excess interest credited to the policy or to the amount of the partial surrender for the period immediately preceding surrender as shown below. For full surrender during the first 12 months, there will be an additional charge of $30.00 for each policy month less than 12 the policy has been in force.

| Number of full months the policy has been in force prior to surrender | Excess interest charge |
|---|---|
| Less than 60 | 12 months excess interest |
| 60-71 | 10 months excess interest |
| 72-83 | 8 months excess interest |
| 84-95 | 6 months excess interest |
| 96-107 | 4 months excess interest |
| 108-119 | 2 months excess interest |
| 120 or more | no surrender charge |

ClibPDF - www.fastio.com

# Loans

The Company will make a policy loan on the security of this policy. Loans are subject to the following conditions:

1. Written request for a loan must be made to the Company.

2. The loan value at any time is the then current cash value less an amount equal to the surrender charge which would apply if the policy were surrendered on the date of the loan. The maximum loan at any time is the loan value at that time less any existing loan. Loan interest to the end of the policy year, if not paid in cash, will be deducted from the loan amount.

3. Interest on a policy loan will be payable in advance. Interest will be charged at the rate of 5.66% per year in advance, which is equivalent to a rate of 6% payable at the end of the year.

4. If loan interest is not paid when due, it will be added to the loan balance and bear interest at the same rate. If the loan balance plus accrued interest at any time equals or exceeds the cash value, the policy will terminate. In such event the Company will give at least one month's notice (not less than 30 days) to the Owner and any Assignee before the policy is terminated.

5. Every payment to the Company will be considered a premium payment unless clearly marked for loan repayment or for payment of loan interest.

6. The Company has the right to defer making a policy loan for up to six months after receiving written request. A loan for the purpose of paying premiums to the Company will not be deferred.

ClibPDF - www.fastio.com

# Optional Methods of Settlement

The net amount payable under this policy may be applied under one of the following options, provided:

a. The amount applied must be at least $2,500.

b. The periodic payments must be at least $25.

c. Consent of the Company is needed if the policy is assigned or if the payee is an executor, administrator, trustee, corporation, partnership or association.

**1. Payments for a Specified Period** Under this option, the Company will make equal monthly payments for a specified number of years. The first payment will be made immediately. Table I shows the monthly payment for each $1,000 applied.

**2. Life Income with Payments for a Guaranteed Period** Under this option, the Company will make equal monthly payments for the life of the original payee. If the original payee dies during the guaranteed period, the Company will continue the payments to the payee's beneficiary for the balance of the guaranteed period. The guaranteed period can be 5, 10, 15, or 20 years. The first payment will be made immediately. Table II shows the monthly payment for each $1,000 applied.

**3. Amount Left at Interest** Under this option, the Company will retain the amount payable for a specified period for 30 years or less or for the life of the original payee. Interest will be paid on the balance held at a rate declared by the Company. Such rate will not be less than 3% per year. The amount of each interest payment per $1,000 held by the Company will not be less than $30.00 annually, $14 89 semi-annually, $7.42 quarterly, or $2.47 monthly.

**4. Payments of a Fixed Amount** Under this option, the Company will make equal annual, semi-annual, quarterly or monthly payments of a fixed amount. The payments will be made until the balance held runs out. Interest will be added to the balance held at a rate declared by the Company .Such rate will not be less than 3% per year. The fixed payment may not be less than 8% per year of the original amount left with the Company.

In the event of the death of the last surviving payee before all payments have been made under any of the above options, the present value of the remaining guaranteed payments under Option 1 or 2, or the balance held under Option 3 or 4 will be paid in one sum to the estate of that payee. The present value will be calculated using an interest rate of 3% per year.

Payments under Option 1 or 2 can also be made annually, semi-annually, or quarterly. The amount of such payments will be equivalent to the monthly payments at 3% per year.

The amounts guaranteed under Option 1 and 2 are based on an interest rate of 3% per year. Such excess interest as the Company may declare will be payable on the 15th day of December of each year. No excess interest will be paid under Option 2 after the guaranteed period.

The Owner may elect any of the above options, or may change or revoke a previous election. A change of Beneficiary automatically revokes a settlement option previously elected. If the Owner elects a settlement option, the Beneficiary cannot change the election unless the right to do so is given the Beneficiary in the election. If at the death of the Insured the proceeds of the policy are payable to the Beneficiary in a single sum, the Beneficiary may elect a settlement option at that time.

Payments under a settlement option may not be assigned. To the extent permitted by law, funds held and payments made shall not be subject to claims of creditors, nor to execution or other legal process by creditors.

**5. Annuity Settlement Option** Instead of the above options, the amount payable may be used to provide income according to the Company's Single Premium Immediate Annuity rates in effect at that time. The amount of the payments under this option will be 104% of the payments which the amount applied would otherwise purchase, adjusted so the first payment is immediate. No excess interest will be payable under this option.

ClibPDF - www.fastio.com

**COMPLAINT NOTICE:** Should any dispute arise about your premiums or about a claim that you have filed, write to Jefferson-Pilot Life Insurance Company, PO Box 21008, Greensboro, NC 27420. If the problem is not resolved, you may also write the State Board of Insurance, Department C, 1110 San Jacinto Street, Austin, Texas 78786. This notice of complaint is for information only and does not become a part or condition of this contract.

(Texas)
BJ-5130

ClibPDF - www.fastio.com

# Amendments to the Policy

**Rider forming a part of the policy to which attached.**

The **Death Benefit** provision on page 2 is hereby replaced by the following:

**Death Benefit** The Death Benefit of the policy will be defined under one of the following options:

Option A The Death Benefit is the larger of
1. The Specified Amount on the date of death plus the policy value at the beginning of the policy month of death, or
2. A percentage of the policy value at the beginning of the policy month of death. The percentage is defined below

Option B The Death Benefit is the larger of
1. The Specified Amount on the date of death, or
2. A percentage of the policy value at the beginning of the policy month of death. The percentage is defined below.

| Attained Age | Percentage | Attained Age | Percentage | Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 55 | 150 | 70 | 115 |
| 41 | 243 | 56 | 146 | 71 | 113 |
| 42 | 236 | 57 | 142 | 72 | 111 |
| 43 | 229 | 58 | 138 | 73 | 109 |
| 44 | 222 | 59 | 134 | 74 | 107 |
| 45 | 215 | 60 | 130 | 75-90 | 105 |
| 46 | 209 | 61 | 128 | 91 | 104 |
| 47 | 203 | 62 | 126 | 92 | 103 |
| 48 | 197 | 63 | 124 | 93 | 102 |
| 49 | 191 | 64 | 122 | 94 | 101 |
| 50 | 185 | 65 | 120 | 95 | 100 |
| 51 | 178 | 66 | 119 | | |
| 52 | 171 | 67 | 118 | | |
| 53 | 164 | 68 | 117 | | |
| 54 | 157 | 69 | 116 | | |

Under either option, the Death Benefit will be reduced by any indebtedness on the date of death. In addition, any premium paid after the beginning of the policy month of death will be refunded. The policy value at the beginning of the month of death used in calculating the death benefit above is after subtracting all parts of the monthly deduction for the month except for the cost of insurance.

The Specified Amount at issue and the option in effect at issue are shown on page 3. Either may be changed as described below. The Death Benefit payable is subject to all provisions of this policy

The General Provisions contained in this policy are hereby amended by adding the following paragraph:

**Compliance with the Internal Revenue Code** The Company reserves the right to: 1. refund any premium payment, or 2. refuse to make any change in the Specified Amount or the Death Benefit Option – if such premium or change would cause this policy to fail to qualify as life insurance under the Internal Revenue Code.

Jerry L. Engle

Secretary

BJ-5146

Jefferson-Pilot
Life Insurance Company

ClibPDF - www.fastio.com

Jefferson-Pilot Life
Insurance Company
P.O. Box 21008
Greensboro, NC 27420

SPLIT DOLLAR ENDORSEMENT
FOR UNIVERSAL LIFE POLICY

Policy No. ______________ or New Application dated ______________

on the life of SHIRLEY JEAN METZGER
Name of Insured

Jefferson-Pilot Life Insurance Company is requested to make the provisions of this form a part of the policy. Any previous designations of beneficiary or contingent beneficiary and election of settlement options are hereby revoked.

I. Definitions - Where the terms below appear, they are defined as follows:

"Employer": SORT-RITE INTERNATIONAL, INC.

"Co-Owner": SHIRLEY JEAN METZGER

"Co-Beneficiary": (Check (X) the appropriate block and insert the desired Co-Beneficiary.)

( ) ______________, ______________ of the Insured, if living; otherwise ______________ ______________, ______________ of the Insured, if living; otherwise the Co-Owner, if living; otherwise the estate of the Co-Owner.

( XX ) DEBRA ANN METZGER, DAUGHTER, KATHERINE LEE METZGER, DAUGHTER, AND FRANCES E. MERRICK, MOTHER OF INSURED SHARE AND SHARE ALIKE, SURVIVOR OR SURVIVORS.

"Net Premiums": For the purpose of this Endorsement, the term "Net Premiums" means the total premiums paid on the policy by the Employer less (1) any outstanding policy loans made by the Employer plus accrued interest thereon, (2) any partial withdrawals made by the Employer, and (3) any other amounts received by the Employer from the Co-Owner as a reimbursement of premium paid by the Employer.

B-5250A

39

Copyright 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

II. Payment of Premiums

The Employer and Co-Owner agree to the following plan for payment of premiums: (Check (X) appropriate box.)

( ) EMPLOYER PAYS ALL - The Employer agrees to pay the entire gross premium(s) on the policy. Co-Owner may make voluntary additional premium contributions to the Employer and Employer shall pay each such amount as an increased premium.

( XX ) CO-OWNER PAYS COST OF INSURANCE - Each premium on the policy shall be paid by the Employer as it becomes due. The Co-Owner agrees to pay to the Employer an amount equal to the cost of the insurance provided to the Co-Owner by the policy each year. Co-Owner may make voluntary additional premium contributions to the Employer and Employer shall pay each such amount as an increased premium.

III. Division of Death Proceeds

This endorsement contemplates a division of death proceeds between two beneficiaries: the Employer and the Co-Beneficiary.

Upon the death of the Insured while this Split Dollar Endorsement is in effect: (Select one)

1. ( ) The Co-Beneficiary shall receive the net death proceeds less the Net Premiums. Employer shall receive the remainder of any net death proceeds.

2. ( ) The Co-Beneficiary shall receive the lesser of (1) $______________, or (2) the net death proceeds less the Net Premiums. The Employer shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer.

3. (XX ) The Employer shall receive the greater of (1) $ 1,000,000.00, or (2) the Net Premiums. The Co-Beneficiary shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer.

Regardless of the option selected above, the amount payable to the Co-Beneficiary shall be referred to as "Co-Beneficiary Death Proceeds".

Notwithstanding the above, in no event shall the Co-Beneficiary be entitled to receive an amount which is less than the Policy Value or Cash Value less the total of Net Premiums and any policy loans by the Co-Owner.

Jefferson–Pilot Life shall pay the entire net death proceeds in one sum to the joint order of the Employer, the Co-Beneficiary, and any collateral assignee. Payment by Jefferson-Pilot Life in accordance with the above will fully and finally discharge Jefferson-Pilot Life for the amount so paid.

27:SD2

40

Copyright 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

IV. Ownership Rights

Unless otherwise stated herein, the Employer, acting alone, may exercise the following rights:

1) The right to borrow against, pledge or assign the policy, however, in an amount not to exceed the Net Premiums.

2) The right to make partial surrenders of the cash surrender value, provided the aggregate amount of such partial surrenders shall not exceed the amount of the Net Premiums.

3) The right to designate and change the beneficiary for the Employer's share of the death proceeds.

4) The right to change the planned premium, the mode of premium payment and the frequency of premium payment.

Unless otherwise stated herein, the Co-Owner, acting alone, may exercise the following rights:

1) The right to designate and change the Co-Beneficiary and to change a settlement option for the Co-Beneficiary.

2) The right to exercise the Conversion Privilege of any Spouse Term Rider or Children's Term Rider which is included in the policy and be the Owner and premium payor of any new policy issued in lieu of such Rider.

3) The right to transfer, assign or pledge the Co-Owner's interest in the policy.

Unless otherwise stated herein, the Employer and Co-Owner must act jointly to exercise the following rights:

1) The right to change the Specified Amount of the policy and the death benefit option.

2) The right to reinstate the policy.

3) The right to borrow against or make a partial surrender of the Co-Owner's interest in the policy.

The Employer's consent to these transactions shall not be unreasonably withheld.

The Employer and Co-Owner hereby agree that Jefferson–Pilot Life is authorized to recognize the Employer's claims to its rights hereunder and to rely on the Employer's determination of any amount payable to the Employer under this policy prior to the death of the Insured, with no further inquiry of any nature. The exercise of these rights and determination of these amounts by the Employer shall be binding on the Co-Owner, and the rights of any other persons or parties having an ownership or beneficiary interest in the policy shall be subject to such exercise and/or such determination.

Copyright, 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

Nevertheless, as between the Employer and the Co-Owner, the Employer covenants that it will not exercise any rights, options and privileges not specifically reserved to the Employer in a manner which would impair any right or interest of the Co-Owner or Co-Beneficiary. In a like manner, the Co-Owner covenants that it will not exercise any rights, options or privileges not specifically reserved to the Co-Owner in a manner which would impair any right or interest of the Employer.

V. Termination

A. Upon the termination of the Insured's employment with the Employer for any reason other than death of the Insured or if the Co-Owner shall fail to pay that portion of each premium payment, if any, required in II above, the Employer shall have the following rights, without the consent of the Co-Owner:

(1) If the Surrender Value of the policy is less than the Net Premiums, the Employer shall have the right to

(a) surrender the policy and receive all surrender proceeds to the exclusion of the Co-Owner and Co-Beneficiary (however, the Co-Owner shall owe and pay to the Employer the difference between the surrender proceeds and the Net Premiums), or

(b) sell the policy to the Co-Owner for an amount equal to the Net Premiums. The Co-Owner may purchase said policy within 15 days following the date of the Employer's written offer to sell.

(2) If the Surrender Value exceeds the Net Premiums, the following shall apply

(a) The Employer may split the policy into two separate policies, one to be owned by the Employer and one to be owned by the Co-Owner. The Employer shall receive a policy which has a Cash Surrender Value equal to the Net Premuims and a Death Benefit which shall not exceed that to which the Employer was entitled under Article III. The remaining cash values shall then be applied to a policy for the Co-Owner, issued with the same policy date as this policy and with a Death Benefit not to exceed the Co-Beneficiary's Death Proceeds determined under Article III.

(b) If the Employer elects not to take a policy pursuant to (a) above, then the Employer shall make a partial surrender in an amount equal to the Net Premiums and shall have no further incidence of ownership in the policy; however, the Death Benefit may be adjusted, if necessary, so that the Death Benefit is no greater than the Co-Beneficiary's Death Proceeds as determined in Article III.

Copyright 1986, By LifeComp Programs, Inc.

The type and insured amount of any new policy shall conform to Jefferson-Pilot Life's policy rules in effect on the date of the issue or reissue of the new policy.

Jefferson-Pilot Life shall have no responsibility for determining the Net Premiums for the purposes of this Section V but instead shall rely solely upon the statements and representations of the Employer and shall be fully protected in relying thereon.

B. Upon the adjudication of the Employer as an insolvent or as a bankrupt, the Co-Owner may pay to the Employer an amount equal to the Net Premiums in exchange for the transfer by the Employer of all ownership rights to the Co-Owner, including the right to change the beneficiary.

C. This Endorsement may be cancelled only upon the joint request of the Employer and the Co-Owner.

D. In the event of a conflict between the terms of this Endorsement and the policy to which it is attached, the terms of the policy shall control.

Dated at Harlingen Texas this the 1st day of September, 1987

Witness

Shirley Metzger
(Signature of Applicant/Co-Owner)

ATTEST:

By: Francis E. Merrick VP
Title:

(Name of Employer)

By: Shirley Metzger
Title:

Jefferson-Pilot Life Insurance Company acknowledges and has recorded this Split Dollar Endorsement.

December 17, 1987
Date recorded

By: Doris J. Calicutt

27:SD5

43

Copyright 1986, By Lifecomp Programs, Inc.

ClibPDF - www.fastio.com

Pilot Life
Insurance Company
PO Box 20727
Greensboro, NC 27420-0727

Pilot
Life

## Life Insurance Application Part One

1. Print full name of proposed insured: Shirley Jean Metzger

2. Date of Birth

| Month | Day | Year | Age | State of Birth | Sex |
|---|---|---|---|---|---|
| 5 | 20 | 38 | 49 | Col | F |

3. Residence address
No. and Street: 2206 Treasure Hills Apt
City: Harlingen State: Texas
County: Cameron Zip: 78550
Social Security Number: 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

4. Owner if not insured (full name, relationship & address)
Sort Rite International, Inc
PO Box 1805
Harlingen Texas 78551

5. Social Security or Federal Tax I.D. number of owner if not insured: 74-1982l7-7

6. Premium payor if not insured (full name & address)
Sort-Rite International, Inc.
PO Box 1805
Harlingen Tx 78551

7. a. Beneficiary (full name & relationship to insured)
See Split Dollar Endorsement

b. Contingent Beneficiary (full name & relationship to insured)

c. The policyowner reserves the right to change the beneficiary. Yes ☒ No ☐

8. Insurance now in force on the life of the proposed insured. If none, check here ☐

| Amount | ADB | Date | Company |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

9. Occupation: President - CEO.

10. Name & address of employer
Sort Rite International, Inc
P.O. Box 1805
Harlingen TX 78551

11. Amount: $1,500,000

12. Plan: UL283N

13. APL ☐ Yes ☐ No
Not Available on U.L. or Term

14. Premium Basis: DTMS

15. Premium: $985.13

16. ☐ Non Par

17. ☐ Premium Waiver

18. ☐ Accidental Death Benefit ☐ 2 times ADB

19. ☐ Par

Dividend Option
☐ cash ☐ 1 YT-add
☐ left on dep ☐ 5 DO-dep
☐ paid up add ☐ 5 DO-add
☐ reduce prem ☐ 5 DO-rp

20. Universal Life Option
☐ Option A—Death benefit equals specified amount plus cash value
☒ Option B—Death benefit equals specified amount

21. Additional benefits or riders

22. Special instructions

23. Date application was completed: 9-1-87

24. City and state where signed: Harlingen Tx.

25. Amount collected with application $ $1,160.96

26. Driver's license number of the proposed insured and state of issue: Texas 04076241

27. Within the past 12 months have you smoked cigarettes? If the answer is "yes," smoker's rate is accepted. Yes ☐ No ☒

28. Is the Non-Medical Alternative being used? Yes ☐ No ☒

29. Will this insurance replace any existing insurance or annuities on the life of the proposed insured? Yes ☐ No ☒
If yes, show the amount, plan, company & payor

As of the close of business on December 31, 1986, Pilot Life Insurance Company changed its name to Jefferson-Pilot Life Insurance Company. At the same time it changed its address to 101 North Elm Street, Greensboro, North Carolina 27401. Any reference to Pilot Life Insurance Company on the form to which this is attached shall be deemed to mean Jefferson-Pilot Life Insurance Company

BJ-6576

Home Office Endorsements
~~RATED PREMIUM CLASS~~
~~Age 50~~

B—3870D

Part One of application continues on Page 2

**Part one of Application Continued.**

| | Yes | No |
|---|---|---|
| 30. Have you ever had an application for life or accident and sickness insurance or for reinstatement declined, postponed or rated? | ☐ | ☒ |
| 31. Do you have an application for insurance or reinstatement pending in this or any other company? | ☐ | ☒ |
| 32. Within the past 2 years have you flown other than as a passenger or do you plan to do so? (If yes, and coverage is desired, complete Aviation Questionnaire) | ☐ | ☒ |
| 33. Within the past 5 years have you been convicted of 2 or more moving violations, driving under the influence of alcohol or other drugs or had your driver's license suspended or revoked? | ☐ | ☒ |
| 34. Within the past 2 years have you engaged in or do you have any plans to engage in motor racing on land or water, underwater or sky diving, ballooning, hang gliding or parachuting? | ☐ | ☒ |
| 35. In the past ten years have you: | | |
| (1) had or been told you had Acquired Immune Deficiency Syndrome ("AIDS"), AIDS Related Complex ("ARC"), or AIDS related conditions? | ☐ | ☒ |
| (2) received advice or treatment in connection with any of the categories mentioned in (1) above? | ☐ | ☒ |
| (3) tested positive for antibodies to the AIDS (Human T-cell Lymphotropic, Type III; HTLV-III) virus? | ☐ | ☒ |

36. Details of "yes" answers - identify the question being answered.

**Statement**

I have paid to the Company $ 1160.96 which is equal to at least one month's premium. I have received, read and agree to the terms of the conditional receipt.

Under penalties of perjury, I, the Owner, declare that the Tax Identification Number or Social Security Number shown is correct and that the Internal Revenue Service has not notified me that I am subject to back-up withholding for failing to properly report dividend or interest income.

The answers in this application and on the examination are to the best of my knowledge complete, true and written as I gave them. If no money has been paid with this application there will be no insurance unless: (1) a policy has been issued and delivered to me; (2) the full first premium has been paid and; (3) the answers to the questions contained in the application continue to be correct. I understand that only an officer of the Company can make or change a contract of insurance. I have received and read the "Notice to Applicant". I agree that my accepting a policy issued on this application will be acceptance of any changes, additions or corrections made by the Company in the space provided for "Home Office Endorsements". No changes will be made in age at issue, plan of insurance, amount, classification, or benefits unless I agree in writing. I agree that a copy of this application shall be attached to and made a part of any policy issued.

**If this block ☐ is checked, I request an interview if an investigative consumer report is made.**

W. E. May — Signature of agent taking application

0152 — Account No.

Harlingen TX — City and state where signed

9-1-87 — Date

Signature of proposed insured (if under age 15, parent)

Signature of policyowner (if other than Insured)

X Shirley Stutzer — Signature of applicant

Part . Continuation of Application to The Pilot Life Insurance Company

Proposed Insured (First name - Middle initial - Last name): SHIRLEY J Metzger

Birthdate (Month - Day - Year): 5 20 1938

1 a. Name and address of your personal physician? DR Burnzian - Dignostic Hospital Houston
b. Date and reason last consulted? 1/87 - Physical
c. What treatment was given or medication prescribed? Allergies

2 Have you, within the past 10 years, been treated for or had any known indication of:

| Question | Yes | No | Details of "Yes" answers. (Identify question number, circle applicable items: Include diagnoses, dates, duration, names and addresses of all physicians and medical facilities.) |
|---|---|---|---|
| a. Disorder of eyes, ears, nose or throat? | ☐ | ☒ | |
| b. Dizziness, fainting, convulsions, headache, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ | |
| c. Shortness of breath, persistent hoarseness or cough, asthma, bronchitis, pleurisy, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ | |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart attack, murmur or other disorder of the heart or blood vessels? | ☐ | ☒ | |
| e. Jaundice, intestinal bleeding, (ulcer), colitis, diverticulitis, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☒ | ☐ | 2 months - 1986 DR Burnzian |
| f. Sugar, albumin, blood or pus in urine, sexually transmitted diseases, stone or other disorder of kidney, bladder or prostate? | ☐ | ☒ | |
| g. Diabetes, thyroid or other endocrine disorders? | ☐ | ☒ | |
| h. Neuritis, arthritis, gout, or disorder of the muscles or bones, including the spine, back or joints? | ☐ | ☒ | |
| i. Deformity, lameness, or amputation? | ☐ | ☒ | |
| j. Disorder of skin, lymph glands, cyst, tumor or cancer? | ☐ | ☒ | |
| k. (Allergies), anemia or other disorder of the blood? | ☒ | ☐ | To Smoke + etc Burnzian |
| l. Need for treatment because of alcohol or drug abuse? | ☐ | ☒ | |
| m. Abnormalities, disease or disorder of the reproductive organs or breasts, menstruation or pregnancy? | ☐ | ☒ | |
| 3 Are you now under observation or taking treatment? | ☐ | ☒ | |
| 4 Have you had any change in weight in the past year? | ☒ | ☐ | 10# - dieting |
| 5 Other than the above, have you within the past 5 years: | | | |
| a. Had any mental or physical disorder not listed above? | ☐ | ☒ | |
| b. Had a checkup, consultation, illness, injury or surgery? | ☒ | ☐ | Corrective hand + foot - Dr. Burns + Co. |
| c. Been a patient in a hospital, clinic, sanatorium or other medical facility? | ☒ | ☐ | 2/87 - Park Plaza Houston |
| d. Had electrocardiogram, X-ray, or other diagnostic test? | ☒ | ☐ | |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ | |
| 6 Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☒ | |
| 7 Have you ever requested or received a pension, benefits or payment due to an injury, sickness or disability? | ☐ | ☒ | |
| 8 To the best of your knowledge and belief are you now pregnant? | ☐ | ☒ | |
| 9 Family History: Tuberculosis, diabetes, cancer, high blood pressure, (heart) or kidney disease, mental illness, alcoholism or suicide? | ☒ | ☐ | Father died 1978 |

| Parents | Age if Alive | Age at Death | Cause of Death | Siblings | Age if Alive | Age at Death | Cause of Death |
|---|---|---|---|---|---|---|---|
| Father | | 60 | heart | Brothers | 45 | | |
| Mother | 71 | | | Sisters | 41 | | |

The answers to the above questions are to the best of my knowledge complete, true and written as I gave them.

For the purpose of underwriting this application for life insurance, I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of the proposed insureds or their health to give Pilot Life Insurance Company and its reinsurers such information. I also authorize the foregoing, except for the Medical Information Bureau, to give such information to any consumer reporting agency acting on behalf of Pilot Life. I further authorize Pilot Life to give all such information to my personal physician upon request and I waive any privilege to such information. I understand either I or my authorized representative may obtain a copy of this authorization. This authorization shall be valid for 30 months from this date and a copy of this authorization shall be as valid as the original.

Harlingen, TX — City and state where signed

9/1/87 — Date

Shirley Metzger — Signature of proposed insured (if under age 15, parent)

SEP 0 8 1987

**Important Please read your policy carefully.**

Additional life insurance service or information about your policy may be obtained from our nearest agent or by writing to the home office.

Your policy is a valuable asset. Please let us examine any proposal to change your policy or to allow it to lapse.

If you change your address, please notify the Company at P. O. Box 21008, 101 North Elm Street, Greensboro, N. C. 27420. In any correspondence, give your full name and policy number.

**Guide To Policy Provisions**

Annual Report . . . . . . . . . . . . 8
Assignment . . . . . . . . . . . . . . 5
Beneficiary . . . . . . . . . . . . . . 5
Cash Value . . . . . . . . . . . . . . 6
Exchange Privilege . . . . . . . . . 8
General Provisions . . . . . . . . . 5
Grace Period . . . . . . . . . . . . . 2
Insurance Coverage Provisions . . . . . . . . . . . . . 2
Interest . . . . . . . . . . . . . . . . . 6
Loans . . . . . . . . . . . . . . . . . . 9
Maturity . . . . . . . . . . . . . . . . . 2
Optional Methods of Settlement . . . . . . . . 11-12
Nonforfeiture Provisions . . . . 6-7
Ownership . . . . . . . . . . . . . . 5
Premium Provisions . . . . . . . . 2
Policy Specifications . . . . . . . . 3
Reinstatement . . . . . . . . . . . . 5
Table of Guaranteed Maximum Insurance Rates . . . . . . . . . . . . . . . . . 10

Additional Benefit Provisions, if any, and a copy of the Application will be found following Page 12.

Flexible Premium Adjustable Life Insurance Policy. Adjustable death benefit payable at death prior to the Maturity Date. Maturity Value payable on the Maturity Date if the Insured is then alive. Flexible premiums payable during Insured's lifetime until the Maturity Date. Non-participating.

Jefferson
Pilot

ClibPDF - www.fastio.com



Policy Date

**Jefferson Pilot**

**Jefferson-Pilot Life Insurance Company will pay**

1 the Death Benefit of this policy to the Beneficiary immediately upon receipt of due proof of the death of the Insured while the policy is in force and prior to the Maturity Date, or

2 the Maturity Value of this policy to the Owner on the Maturity Date if the policy is in force and the Insured is alive on that date.

This policy is a legal contract between the Owner and the Company All provisions on the following pages are a part of this contract

**Ten Day Right to Examine Policy**

This policy may be surrendered within ten days after it is delivered by returning it to the Company or to one of its agents. Upon such surrender, the policy will be considered void from the beginning and any premiums paid will be refunded.

Signed for the Company at its home office in Greensboro, North Carolina, on the policy date.

Secretary

Chairman of the Board
Chief Executive Officer

## Flexible Premium Adjustable Life Insurance Policy

Adjustable death benefit payable at death prior to the Maturity Date. Maturity Value payable on the Maturity Date if the Insured is then alive. Flexible premiums payable during Insured's lifetime until the Maturity Date Non-participating.

EXHIBIT
B

Form 87-130

ClibPDF - www.fastio.com

**Death Benefit** The Death Benefit of this policy will be defined under one of the following options.

Option A The Death Benefit is the larger of
1. The Specified Amount on the date of death plus the cash value at the beginning of the policy month of death, or
2. A percentage of the cash value at the beginning of the policy month of death. The percentage is defined below

Option B The Death Benefit is the largest of
1. The Specified Amount on the date of death, or
2. The cash value at the beginning of the policy month of death, plus $25,000, or
3. A percentage of the cash value at the beginning of the policy month of death. The percentage is defined below

| Attained Age | Percentage | Attained Age | Percentage | Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 140% | 55 | 125 | 70 | 110 |
| 41 | 139 | 56 | 124 | 71 | 109 |
| 42 | 138 | 57 | 123 | 72 | 108 |
| 43 | 137 | 58 | 122 | 73 | 107 |
| 44 | 136 | 59 | 121 | 74 | 106 |
| 45 | 135 | 60 | 120 | 75 & over | 105 |
| 46 | 134 | 61 | 119 | | |
| 47 | 133 | 62 | 118 | | |
| 48 | 132 | 63 | 117 | | |
| 49 | 131 | 64 | 116 | | |
| 50 | 130 | 65 | 115 | | |
| 51 | 129 | 66 | 114 | | |
| 52 | 128 | 67 | 113 | | |
| 53 | 127 | 68 | 112 | | |
| 54 | 126 | 69 | 111 | | |

Under either option, the Death Benefit will be reduced by any indebtedness on the date of death. In addition, any premium paid after the beginning of the policy month of death will be refunded. The cash value at the beginning of the month of death used in calculating the death benefit above is after subtracting all parts of the monthly deduction for the month except for the cost of insurance.

The Specified Amount at issue and the option in effect at issue are shown on page three. Either may be changed as described below. The Death Benefit payable is subject to all provisions of this policy.

**Maturity Value** The Maturity Date is shown on page three. The Maturity Date is the date the policy will terminate if the policy is in force and the Insured is alive on that date. The Maturity Value will be paid on termination on the Maturity Date The Maturity Value will be the cash value less any indebtedness on that date. It is possible that the policy will terminate without value prior to the Maturity Date. This will happen if premiums paid and interest credited are not sufficient to continue coverage to that date.

**Changes in Insurance Coverage** The insurance coverage may be changed at any time after the first policy year on written request by the Owner. The changes which can be made are
1. Increase in the Specified Amount.
2. Decrease in the Specified Amount
3. Change in the existing death benefit option
4. Change in the Maturity Date, subject to the consent of the Company.

If a change would result in an increase in the amount payable at death, such change will be subject to satisfactory evidence of insurability. The Specified Amount may not be decreased below $25,000. A decrease in the Specified Amount will apply first against insurance with the most recent effective date, with the Initial Specified Amount being last to be decreased A change will be effective on the Monthly Anniversary Day on or next following the date of approval by the Company of the request for the change, unless another date acceptable to the Company is requested.

## Premium Provisions

**Payment of Premiums** The initial premium is due on the policy date. Subsequent premiums may be paid at any time and in any amount, subject to the following conditions, unless otherwise agreed to in writing by the Company

The amount of each premium must be at least $25 00

The maximum amount of premium the Company will accept in any policy year will be three times the yearly planned premium shown on page 3.

All premiums are payable either at the home office or to an authorized agent. If paid to an agent, the agent will furnish an official premium receipt This receipt must be signed by the Secretary of the Company and countersigned by the agent. No agent has the authority to collect a premium unless he has such a receipt.

**Grace Period** If on a Monthly Anniversary Day the cash value less any indebtedness is less than the monthly deduction due, a grace period of 60 days from that date will be allowed for the payment of the minimum amount needed to continue the policy. The cash value and monthly deductions are described in the Nonforfeiture Provisions

The Company will notify the Owner and any Assignee of the minimum amount due at least 30 days before the end of the grace period. If the amount specified is not paid within the grace period, the policy will terminate without value at the end of such period. If the Insured dies within the grace period, the amount needed to continue the policy to the end of the policy month of death will be deducted from the amount otherwise payable

## Non-participating

No dividends will be paid on this policy.

ClibPDF - www.fastio.com



## POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| INSURED | SHIRLEY JEAN METZGER | | |
| SPECIFIED AMOUNT | $1,500,000 | DECEMBER 1, 1987 | POLICY DATE |
| POLICY NUMBER | JP4038973 | | |
| DEATH BENEFIT OPTION | B | | |
| MATURITY DATE | DECEMBER 1, 2032 | | |

NOTE: THE MATURITY DATE SHOWN IS THE DATE THE POLICY WILL MATURE IF IT IS IN FORCE ON THAT DATE. EVEN IF COVERAGE CONTINUES TO THE MATURITY DATE, THERE MAY IN FACT BE LITTLE OR NO VALUE TO BE PAID. IT IS POSSIBLE THAT COVERAGE WILL TERMINATE PRIOR TO THE MATURITY DATE SHOWN. THIS WILL HAPPEN IF PREMIUMS PAID AND INTEREST CREDITED ARE NOT SUFFICIENT TO CONTINUE COVERAGE TO THAT DATE.

| | | |
|---|---|---|
| ISSUE AGE | 50 | |
| PLANNED PREMIUM | $1,004.48 | MONTHLY |
| OWNER | AS PROVIDED IN RIDER | |
| BENEFICIARY | PAYABLE AS PROVIDED IN RIDER | |

## SCHEDULE OF BENEFITS AND PREMIUMS - POLICY NUMBER JP-4038973

| FORM NUMBER | BENEFIT | | EFFECTIVE DATE | MONTHLY DEDUCTION | RATE CLASS | YEARS PAYABLE |
|---|---|---|---|---|---|---|
| 87-130 | INITIAL SPECIFIED AMOUNT | 1,500,000 | DEC 1, 1987 | SEE PAGE 6 | STD | |

ClibPDF - www.fastio.com

# General Provisions

**The Contract** This insurance is issued in return for the application and the payment of the initial premium.

The policy and the application make up the entire contract. A copy of the application is attached to the policy. Only statements contained in the application can be used to contest a claim or the validity of the policy. These statements are considered representations and not warranties, in the absence of fraud.

**Incontestability** This policy becomes incontestable if it is in force and the Insured is alive two years after the policy date. After that time the validity of the policy cannot be contested due to misrepresentation of material facts in the application.

An addition to the Specified Amount becomes incontestable if it is in force and if the Insured is alive two years from its effective date.

**Modification** No agent or other person, except an officer in the home office of the Company, has the power to act for the Company. Only such officers can modify the terms of this policy. No promise made by any other person with regard to the terms or benefits of this policy is binding on the Company. The agent is not authorized to accept any information for the Company that is not in the application, to extend the time allowed for paying a premium, or to waive and of the Company's rights or requirements.

**Settlement** All sums payable by the Company are payable at the home office. Any sum due will be mailed or otherwise delivered. In any settlement under this policy all indebtedness will be first deducted. The term indebtedness means the balance owed to the Company on a loan on this policy.

**Reinstatement** If this policy terminates because a premium or other required amount is not paid, but it is not surrendered for cash, it may be reinstated. Reinstatement means the policy is put back in full force. Reinstatement may be made at any time within five years from the date of termination and prior to the Maturity Date. Satisfactory evidence of insurability must be furnished at that time. The minimum payment required will be an amount sufficient to keep the policy in force for at least two months. Any indebtedness which existed on the date of termination must also be repaid or reinstated. Reinstatement will be effective on the Monthly Anniversary Day on or next following the date of approval by the Company of the request for reinstatement, unless another date acceptable to the Company is requested.

**Suicide** If the Insured commits suicide, while sane or insane, within two years from the policy date, the amount payable under this policy will be the sum of the premiums paid less any indebtedness and less any partial surrenders.

If the Insured commits suicide, while sane or insane, within two years from the date of an addition to the Specified Amount, the amount payable under such addition will be the sum of the monthly deductions for such addition.

**Misstatement of Age or Sex** If the date of birth or the sex of the Insured has been misstated, the amount of death benefit will be adjusted to the amount which would have been provided by the most recent cost of insurance deduction at the true age and sex.

**Assignment** This policy may be assigned. An assignment will not be binding on the Company unless it is in writing and filed at the home office. The Company is not responsible for the validity or sufficiency of an assignment.

**Ownership** The Owner of this policy is shown on page 3 or in a rider attached to the policy. While the Insured is living, the Owner may exercise every right and option and receive every benefit provided by the policy. The rights of the Owner are not subject to consent of the Beneficiary.

**Beneficiary** The Beneficiary may be changed by written request satisfactory to the Company filed at its home office. Any change will take effect on the date of the written request if the Insured is alive at that time. However, a change is subject to any payment made or action taken by the Company prior to the time such request is filed at the home office.

If any Beneficiary dies before the Insured, benefits which would have been paid such Beneficiary shall be paid to the Owner, if living, unless otherwise provided. If the Owner is not living, such proceeds will be paid to the estate of the Owner, unless otherwise provided. The interest of any Beneficiary will be subject to the rights of any Assignee.

**Monthly Anniversary Day** The monthly anniversary day in each month is the same day of the month as the policy date.

ClibPDF - www.fastio.com

# Non-Forfeiture Provisions (Continued)

**Continuation of Insurance** This policy and all riders will continue in force according to their terms as long as the cash value, less any indebtedness, is sufficient to cover the monthly deduction. If such value is not sufficient, the policy will terminate according to the Grace Period provision. In no case will the policy continue past the Maturity Date nor will a rider continue past its termination date. If premiums are discontinued on any date, the value on that date will be used to provide insurance under this provision

**Basis of Values** Minimum cash values are based on the 1958 Commissioners' Standard Ordinary Mortality Table, age nearest birthday, with interest at 4% per year. A detailed statement of the method of computation of cash values under this policy has been filed with the insurance department of the state in which this policy was delivered. Cash values under this policy are not less than the minimum values required by law

**Surrender and Surrender Value** This policy may be surrendered at any time prior to the Maturity Date. Written request must be made by the Owner. The surrender value will be the cash value as of the date of surrender less any indebtedness and less the charge for full surrender

If surrender is requested within 30 days after the end of a policy year, the surrender value will not be less than the surrender value at the end of that year less any policy loans or partial surrenders made since the end of that year

The Company has the right to defer the payment of any surrender value for up to six months after receiving written request.

**Partial Surrender** A partial surrender of this policy may be made at any time prior to the Maturity Date. Written request must be made by the Owner A partial surrender will not be allowed if the remaining surrender value would be less than the minimum required by law. The partial surrender may be for any amount not to exceed the surrender value at the time, less $500.00

When a partial surrender is made,

1. the cash value will be reduced by the amount of the partial surrender, plus a fee of $25.00, plus the charge for the partial surrender

2. the death benefit will also be reduced by the same amount as the reduction in cash value. The Specified Amount will be reduced by such amount if the policy is under death benefit option B at the time. A partial surrender cannot be allowed if it would reduce the Specified Amount below $25,000

The Company has the right to defer the payment of a partial surrender for up to six months after receiving written request. A partial surrender made for the purpose of paying premiums to the Company will not be deferred.

**Surrender Charges** If the policy has been in force less than ten years (120 months) there will be a charge for full or partial surrender The charge will be the amount of excess interest credited to the policy or to the amount of the partial surrender for the period immediately preceding surrender as shown below For full surrender during the first 12 months, there will be an additional charge of $30.00 for each policy month less than 12 the policy has been in force.

| Number of full months the policy has been in force prior to surrender | Excess interest charge |
|---|---|
| Less than 60 | 12 months excess interest |
| 60-71 | 10 months excess interest |
| 72-83 | 8 months excess interest |
| 84-95 | 6 months excess interest |
| 96-107 | 4 months excess interest |
| 108-119 | 2 months excess interest |
| 120 or more | no surrender charge |

ClibPDF - www.fastio.com

# Loans

The Company will make a policy loan on the security of this policy. Loans are subject to the following conditions:

1. Written request for a loan must be made to the Company.

2. The loan value at any time is the then current cash value less an amount equal to the surrender charge which would apply if the policy were surrendered on the date of the loan. The maximum loan at any time is the loan value at that time less any existing loan. Loan interest to the end of the policy year, if not paid in cash, will be deducted from the loan amount.

3. Interest on a policy loan will be payable in advance. Interest will be charged at the rate of 5.66% per year in advance, which is equivalent to a rate of 6% payable at the end of the year.

4. If loan interest is not paid when due, it will be added to the loan balance and bear interest at the same rate. If the loan balance plus accrued interest at any time equals or exceeds the cash value, the policy will terminate. In such event the Company will give at least one month's notice (not less than 30 days) to the Owner and any Assignee before the policy is terminated.

5. Every payment to the Company will be considered a premium payment unless clearly marked for loan repayment or for payment of loan interest.

6. The Company has the right to defer making a policy loan for up to six months after receiving written request. A loan for the purpose of paying premiums to the Company will not be deferred.

ClibPDF - www.fastio.com

# Optional Methods of Settlement

The net amount payable under this policy may be applied under one of the following options, provided.

a The amount applied must be at least $2,500.

b. The periodic payments must be at least $25.

c. Consent of the Company is needed if the policy is assigned or if the payee is an executor, administrator, trustee, corporation, partnership or association

**1. Payments for a Specified Period** Under this option, the Company will make equal monthly payments for a specified number of years. The first payment will be made immediately. Table I shows the monthly payment for each $1,000 applied.

**2. Life Income with Payments for a Guaranteed Period** Under this option, the Company will make equal monthly payments for the life of the original payee. If the original payee dies during the guaranteed period, the Company will continue the payments to the payee's beneficiary for the balance of the guaranteed period. The guaranteed period can be 5, 10, 15, or 20 years. The first payment will be made immediately. Table II shows the monthly payment for each $1,000 applied.

**3. Amount Left at Interest** Under this option, the Company will retain the amount payable for a specified period for 30 years or less or for the life of the original payee. Interest will be paid on the balance held at a rate declared by the Company. Such rate will not be less than 3% per year The amount of each interest payment per $1,000 held by the Company will not be less than $30.00 annually, $14 89 semi-annually, $7 42 quarterly, or $2.47 monthly

**4. Payments of a Fixed Amount** Under this option, the Company will make equal annual, semi-annual, quarterly or monthly payments of a fixed amount. The payments will be made until the balance held runs out. Interest will be added to the balance held at a rate declared by the Company .Such rate will not be less than 3% per year. The fixed payment may not be less than 8% per year of the original amount left with the Company.

In the event of the death of the last surviving payee before all payments have been made under any of the above options, the present value of the remaining guaranteed payments under Option 1 or 2, or the balance held under Option 3 or 4 will be paid in one sum to the estate of that payee The present value will be calculated using an interest rate of 3% per year.

Payments under Option 1 or 2 can also be made annually, semi-annually, or quarterly. The amount of such payments will be equivalent to the monthly payments at 3% per year.

The amounts guaranteed under Option 1 and 2 are based on an interest rate of 3% per year. Such excess interest as the Company may declare will be payable on the 15th day of December of each year No excess interest will be paid under Option 2 after the guaranteed period

The Owner may elect any of the above options, or may change or revoke a previous election A change of Beneficiary automatically revokes a settlement option previously elected If the Owner elects a settlement option, the Beneficiary cannot change the election unless the right to do so is given the Beneficiary in the election. If at the death of the Insured the proceeds of the policy are payable to the Beneficiary in a single sum, the Beneficiary may elect a settlement option at that time

Payments under a settlement option may not be assigned. To the extent permitted by law, funds held and payments made shall not be subject to claims of creditors, nor to execution or other legal process by creditors.

**5. Annuity Settlement Option** Instead of the above options, the amount payable may be used to provide income according to the Company's Single Premium Immediate Annuity rates in effect at that time. The amount of the payments under this option will be 104% of the payments which the amount applied would otherwise purchase, adjusted so the first payment is immediate No excess interest will be payable under this option

ClibPDF - www.fastio.com

**COMPLAINT NOTICE:** Should any dispute arise about your premiums or about a claim that you have filed, write to Jefferson-Pilot Life Insurance Company, PO Box 21008, Greensboro, NC 27420. If the problem is not resolved, you may also write the State Board of Insurance, Department C, 1110 San Jacinto Street, Austin, Texas 78786. This notice of complaint is for information only and does not become a part or condition of this contract.

(Texas)
BJ-5130

ClibPDF - www.fastio.com

# Amendments to the Policy

**Rider forming a part of the policy to which attached.**

The **Death Benefit** provision on page 2 is hereby replaced by the following:

**Death Benefit** The Death Benefit of the policy will be defined under one of the following options:

Option A The Death Benefit is the larger of
1 The Specified Amount on the date of death plus the policy value at the beginning of the policy month of death, or
2. A percentage of the policy value at the beginning of the policy month of death The percentage is defined below

Option B The Death Benefit is the larger of
1. The Specified Amount on the date of death, or
2 A percentage of the policy value at the beginning of the policy month of death. The percentage is defined below

| Attained Age | Percentage | Attained Age | Percentage | Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 55 | 150 | 70 | 115 |
| 41 | 243 | 56 | 146 | 71 | 113 |
| 42 | 236 | 57 | 142 | 72 | 111 |
| 43 | 229 | 58 | 138 | 73 | 109 |
| 44 | 222 | 59 | 134 | 74 | 107 |
| 45 | 215 | 60 | 130 | 75-90 | 105 |
| 46 | 209 | 61 | 128 | 91 | 104 |
| 47 | 203 | 62 | 126 | 92 | 103 |
| 48 | 197 | 63 | 124 | 93 | 102 |
| 49 | 191 | 64 | 122 | 94 | 101 |
| 50 | 185 | 65 | 120 | 95 | 100 |
| 51 | 178 | 66 | 119 | | |
| 52 | 171 | 67 | 118 | | |
| 53 | 164 | 68 | 117 | | |
| 54 | 157 | 69 | 116 | | |

Under either option, the Death Benefit will be reduced by any indebtedness on the date of death. In addition, any premium paid after the beginning of the policy month of death will be refunded. The policy value at the beginning of the month of death used in calculating the death benefit above is after subtracting all parts of the monthly deduction for the month except for the cost of insurance.

The Specified Amount at issue and the option in effect at issue are shown on page 3 Either may be changed as described below The Death Benefit payable is subject to all provisions of this policy.

The General Provisions contained in this policy are hereby amended by adding the following paragraph:

**Compliance with the Internal Revenue Code** The Company reserves the right to· 1. refund any premium payment, or 2. refuse to make any change in the Specified Amount or the Death Benefit Option – if such premium or change would cause this policy to fail to qualify as life insurance under the Internal Revenue Code

Jerry L. Engle

Secretary

BJ-5146

Jefferson-Pilot
Life Insurance Company

ClibPDF - www.fastio.com

Jefferson-Pilot Life
Insurance Company
P.O. Box 21008
Greensboro, NC 27420

SPLIT DOLLAR ENDORSEMENT
FOR UNIVERSAL LIFE POLICY

Policy No. ____________ or New Application dated ____________

on the life of SHIRLEY JEAN METZGER
Name of Insured

Jefferson-Pilot Life Insurance Company is requested to make the provisions of this form a part of the policy. Any previous designations of beneficiary or contingent beneficiary and election of settlement options are hereby revoked.

I. Definitions - Where the terms below appear, they are defined as follows:

"Employer": SORT-RITE INTERNATIONAL, INC.

"Co-Owner": SHIRLEY JEAN METZGER

"Co-Beneficiary": (Check (X) the appropriate block and insert the desired Co-Beneficiary.)

( ) ____________, ____________ of the Insured, if living; otherwise ____________ ____________, ____________ of the Insured, if living; otherwise the Co-Owner, if living; otherwise the estate of the Co-Owner.

( XX ) DEBRA ANN METZGER, DAUGHTER, KATHERINE LEE METZGER, DAUGHTER, AND FRANCES E. MERRICK, MOTHER OF INSURED SHARE AND SHARE ALIKE, SURVIVOR OR SURVIVORS.

"Net Premiums": For the purpose of this Endorsement, the term "Net Premiums" means the total premiums paid on the policy by the Employer less (1) any outstanding policy loans made by the Employer plus accrued interest thereon, (2) any partial withdrawals made by the Employer, and (3) any other amounts received by the Employer from the Co-Owner as a reimbursement of premium paid by the Employer.

B-5250A

Copyright 1986, By LifeComp Programs, Inc.

II. Payment of Premiums

The Employer and Co-Owner agree to the following plan for payment of premiums:
(Check (X) appropriate box.)

( ) EMPLOYER PAYS ALL – The Employer agrees to pay the entire gross premium(s) on the policy. Co-Owner may make voluntary additional premium contributions to the Employer and Employer shall pay each such amount as an increased premium.

( XX ) CO-OWNER PAYS COST OF INSURANCE – Each premium on the policy shall be paid by the Employer as it becomes due. The Co-Owner agrees to pay to the Employer an amount equal to the cost of the insurance provided to the Co-Owner by the policy each year. Co-Owner may make voluntary additional premium contributions to the Employer and Employer shall pay each such amount as an increased premium.

III. Division of Death Proceeds

This endorsement contemplates a division of death proceeds between two beneficiaries: the Employer and the Co-Beneficiary.

Upon the death of the Insured while this Split Dollar Endorsement is in effect:
(Select one)

1. ( ) The Co-Beneficiary shall receive the net death proceeds less the Net Premiums. Employer shall receive the remainder of any net death proceeds.

2. ( ) The Co-Beneficiary shall receive the lesser of (1) $______________, or (2) the net death proceeds less the Net Premiums. The Employer shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer.

3. (XX ) The Employer shall receive the greater of (1) $1,000,000.00, or (2) the Net Premiums. The Co-Beneficiary shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer.

Regardless of the option selected above, the amount payable to the Co-Beneficiary shall be referred to as "Co-Beneficiary Death Proceeds"

Notwithstanding the above, in no event shall the Co-Beneficiary be entitled to receive an amount which is less than the Policy Value or Cash Value less the total of Net Premiums and any policy loans by the Co-Owner.

Jefferson–Pilot Life shall pay the entire net death proceeds in one sum to the joint order of the Employer, the Co-Beneficiary, and any collateral assignee. Payment by Jefferson-Pilot Life in accordance with the above will fully and finally discharge Jefferson-Pilot Life for the amount so paid

Copyright 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

IV. Ownership Rights

Unless otherwise stated herein, the Employer, acting alone, may exercise the following rights:

1) The right to borrow against, pledge or assign the policy, however, in an amount not to exceed the Net Premiums.

2) The right to make partial surrenders of the cash surrender value, provided the aggregate amount of such partial surrenders shall not exceed the amount of the Net Premiums.

3) The right to designate and change the beneficiary for the Employer's share of the death proceeds.

4) The right to change the planned premium, the mode of premium payment and the frequency of premium payment.

Unless otherwise stated herein, the Co-Owner, acting alone, may exercise the following rights:

1) The right to designate and change the Co-Beneficiary and to change a settlement option for the Co-Beneficiary.

2) The right to exercise the Conversion Privilege of any Spouse Term Rider or Children's Term Rider which is included in the policy and be the Owner and premium payor of any new policy issued in lieu of such Rider.

3) The right to transfer, assign or pledge the Co-Owner's interest in the policy.

Unless otherwise stated herein, the Employer and Co-Owner must act jointly to exercise the following rights:

1) The right to change the Specified Amount of the policy and the death benefit option.

2) The right to reinstate the policy.

3) The right to borrow against or make a partial surrender of the Co-Owner's interest in the policy.

The Employer's consent to these transactions shall not be unreasonably withheld.

The Employer and Co-Owner hereby agree that Jefferson–Pilot Life is authorized to recognize the Employer's claims to its rights hereunder and to rely on the Employer's determination of any amount payable to the Employer under this policy prior to the death of the Insured, with no further inquiry of any nature. The exercise of these rights and determination of these amounts by the Employer shall be binding on the Co-Owner, and the rights of any other persons or parties having an ownership or beneficiary interest in the policy shall be subject to such exercise and/or such determination.

Copyright, 1986, By LifeComp Programs, Inc.

Nevertheless, as between the Employer and the Co-Owner, the Employer covenants that it will not exercise any rights, options and privileges not specifically reserved to the Employer in a manner which would impair any right or interest of the Co-Owner or Co-Beneficiary. In a like manner, the Co-Owner covenants that it will not exercise any rights, options or privileges not specifically reserved to the Co-Owner in a manner which would impair any right or interest of the Employer.

V. Termination

A. Upon the termination of the Insured's employment with the Employer for any reason other than death of the Insured or if the Co-Owner shall fail to pay that portion of each premium payment, if any, required in II above, the Employer shall have the following rights, without the consent of the Co-Owner:

(1) If the Surrender Value of the policy is less than the Net Premiums, the Employer shall have the right to

(a) surrender the policy and receive all surrender proceeds to the exclusion of the Co-Owner and Co-Beneficiary (however, the Co-Owner shall owe and pay to the Employer the difference between the surrender proceeds and the Net Premiums), or

(b) sell the policy to the Co-Owner for an amount equal to the Net Premiums. The Co-Owner may purchase said policy within 15 days following the date of the Employer's written offer to sell.

(2) If the Surrender Value exceeds the Net Premiums, the following shall apply

(a) The Employer may split the policy into two separate policies, one to be owned by the Employer and one to be owned by the Co-Owner. The Employer shall receive a policy which has a Cash Surrender Value equal to the Net Premuims and a Death Benefit which shall not exceed that to which the Employer was entitled under Article III. The remaining cash values shall then be applied to a policy for the Co-Owner, issued with the same policy date as this policy and with a Death Benefit not to exceed the Co-Beneficiary's Death Proceeds determined under Article III

(b) If the Employer elects not to take a policy pursuant to (a) above, then the Employer shall make a partial surrender in an amount equal to the Net Premiums and shall have no further incidence of ownership in the policy; however, the Death Benefit may be adjusted, if necessary, so that the Death Benefit is no greater than the Co-Beneficiary's Death Proceeds as determined in Article III.

Copyright 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

**Important Please read your policy carefully.**

Additional life insurance service or information about your policy may be obtained from our nearest agent or by writing to the home office.

Your policy is a valuable asset Please let us examine any proposal to change your policy or to allow it to lapse.

If you change your address, please notify the Company at P O. Box 21008, 101 North Elm Street, Greensboro, N. C 27420 In any correspondence, give your full name and policy number

**Guide To Policy Provisions**

Annual Report . . . . . . . . . . . 8
Assignment . . . . . . . . . . . 5
Beneficiary . . . . . . . . . . . 5
Cash Value . . . . . . . . . 6
Exchange Privilege . . . . . . 8
General Provisions . . . . . . . 5
Grace Period . . . . . . . . . . . 2
Insurance Coverage Provisions . . . . . . . . . . 2
Interest . . . . . . . . . . . . . 6
Loans . . . . . . . . . . . . . . 9
Maturity . . . . . . . . . . . . . . 2
Optional Methods of Settlement . . . . . . 11-12
Nonforfeiture Provisions . . . . 6-7
Ownership . . . . . . . . . . . . 5
Premium Provisions . . . . . . . . 2
Policy Specifications . . . . . . . . 3
Reinstatement . . . . . . . . . . . . 5
Table of Guaranteed Maximum Insurance Rates . . . . . . . . . . . 10

Additional Benefit Provisions, if any, and a copy of the Application will be found following Page 12

Flexible Premium Adjustable Life Insurance Policy. Adjustable death benefit payable at death prior to the Maturity Date. Maturity Value payable on the Maturity Date if the Insured is then alive. Flexible premiums payable during Insured's lifetime until the Maturity Date Non-participating.

ClibPDF - www.fastio.com



**Part II. Continuation of Application to The Pilot Life Insurance Company**

Proposed Insured (First name - Middle initial - Last name) SHIRLEY J Metzger

Birthdate (Month - Day - Year) 5 20 1938

1 a. Name and address of your personal physician? DR BURNZIAN - DIGNOSTIC HOSPITAL Houston
b. Date and reason last consulted? 1/87 - Physical
c. What treatment was given or medication prescribed? Allergies

2 Have you, within the past 10 years, been treated for or had any known indication of:

| | Yes | No | Details of "Yes" answers. (Identify question number, circle applicable items: Include diagnoses, dates, duration, names and addresses of all physicians and medical facilities.) |
|---|---|---|---|
| a. Disorder of eyes, ears, nose or throat? | ☐ | ☒ | |
| b. Dizziness, fainting, convulsions, headache, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ | |
| c. Shortness of breath, persistent hoarseness or cough, asthma, bronchitis, pleurisy, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ | |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart attack, murmur or other disorder of the heart or blood vessels? | ☐ | ☒ | |
| e. Jaundice, intestinal bleeding, (ulcer), colitis, diverticulitis, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☒ | ☐ | 2 months - 1986 DR Burnzian |
| f. Sugar, albumin, blood or pus in urine, sexually transmitted diseases, stone or other disorder of kidney, bladder or prostate? | ☐ | ☒ | |
| g. Diabetes, thyroid or other endocrine disorders? | ☐ | ☒ | |
| h. Neuritis, arthritis, gout, or disorder of the muscles or bones, including the spine, back or joints? | ☐ | ☒ | |
| i. Deformity, lameness, or amputation? | ☐ | ☒ | |
| j. Disorder of skin, lymph glands, cyst, tumor or cancer? | ☐ | ☒ | |
| k. (Allergies), anemia or other disorder of the blood? | ☒ | ☐ | To Smoke + etc Burnzian |
| l. Need for treatment because of alcohol or drug abuse? | ☐ | ☒ | |
| m. Abnormalities, disease or disorder of the reproductive organs or breasts, menstruation or pregnancy? | ☐ | ☒ | |
| 3 Are you now under observation or taking treatment? | ☐ | ☒ | |
| 4 Have you had any change in weight in the past year? | ☒ | ☐ | 10# - dieting |
| 5 Other than the above, have you within the past 5 years: | | | |
| a. Had any mental or physical disorder not listed above? | ☐ | ☒ | |
| b. Had a checkup, consultation, illness, injury or surgery? | ☒ | ☐ | Corrective hand & foot - Dr. Burns + Clar[illegible] |
| c. Been a patient in a hospital, clinic, sanatorium or other medical facility? | ☒ | ☐ | 2/87 - Park Plaza Houston |
| d. Had electrocardiogram, X-ray, or other diagnostic test? | ☒ | ☐ | |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ | |
| 6 Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☒ | |
| 7 Have you ever requested or received a pension, benefits or payment due to an injury, sickness or disability? | ☐ | ☒ | |
| 8 To the best of your knowledge and belief are you now pregnant? | ☐ | ☒ | |
| 9 Family History: Tuberculosis, diabetes, cancer, high blood pressure, (heart) or kidney disease, mental illness, alcoholism or suicide? | ☒ | ☐ | Father died 1978 |

| Parents | Age if Alive | Age at Death | Cause of Death | Siblings | Age if Alive | Age at Death | Cause of Death |
|---|---|---|---|---|---|---|---|
| Father | | 60 | heart | Brothers | 45 | | |
| Mother | 71 | | | Sisters | 41 | | |

The answers to the above questions are to the best of my knowledge complete, true and written as I gave them.

For the purpose of underwriting this application for life insurance, I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of the proposed insureds or their health to give Pilot Life Insurance Company and its reinsurers such information. I also authorize the foregoing, except for the Medical Information Bureau, to give such information to any consumer reporting agency acting on behalf of Pilot Life. I further authorize Pilot Life to give all such information to my personal physician upon request and I waive any privilege to such information. I understand either I or my authorized representative may obtain a copy of this authorization. This authorization shall be valid for 30 months from this date and a copy of this authorization shall be as valid as the original.

Harlingen, TX — City and state where signed

9/1/87 — Date

Shirley Metzger — Signature of proposed insured (if under age 15, parent)

SEP 0 2 1987

Pilot Life
Insurance Company
PO Box 20727
Greensboro, NC 27420-0727

## Life Insurance Application Part One

1. Print full name of proposed insured: Sherley Jean Metzger

2. Date of Birth — Month: 5 | Day: 20 | Year: 38 | Age: 49 | State of Birth: Col | Sex: F

3. Residence address
No. and Street: 2206 Treasure Hills Apt 86
City: Harlingen State: Texas
County: Cameron Zip: 78550
Social Security Number: 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

4. Owner if not insured (full name, relationship & address)
Sort Rite International, Inc
PO Box 1805
Harlingen Texas 78551

5. Social Security or Federal Tax I.D. number of owner if not insured: 74-1982177-7

6. Premium payor if not insured (full name & address)
Sort-Rite International, Inc.
PO Box 1805
Harlingen TX 78551

7. a. Beneficiary (full name & relationship to insured)
See Split Dollar Endorsement

b. Contingent Beneficiary (full name & relationship to insured)

c. The policyowner reserves the right to change the beneficiary. Yes ☒ No ☐

8. Insurance now in force on the life of the proposed insured. If none, check here ☐

| Amount | ADB | Date | Company |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

9. Occupation: President - C.E.O.

10. Name & address of employer
Sort Rite International, Inc
P.O. Box 1805
Harlingen TX 78551

11. Amount: $1,500,000

12. Plan: UL203N

13. APL ☐ Yes ☐ No
Not Available on U.L. or Term

14. Premium Basis: DTMS

15. Premium: $985.13

16. ☐ Non Par

17. ☐ Premium Waiver

18. ☐ Accidental Death Benefit ☐ 2 times ADB

19. ☐ Par Dividend Option
☐ cash ☐ 1 YT-add
☐ left on dep ☐ 5 DO-dep
☐ paid up add ☐ 5 DO-add
☐ reduce prem ☐ 5 DO-rp

20. Universal Life Option
☐ Option A—Death benefit equals specified amount plus cash value
☒ Option B—Death benefit equals specified amount

21. Additional benefits or riders

22. Special instructions

23. Date application was completed: 9-1-87

24. City and state where signed: Harlingen Tx.

25. Amount collected with application $ $1,160.96

26. Driver's license number of the proposed insured and state of issue: Texas 04076241

27. Within the past 12 months have you smoked cigarettes? If the answer is "yes," smoker's rate is accepted. Yes ☐ No ☒

28. Is the Non-Medical Alternative being used? ☐ ☒

29. Will this insurance replace any existing insurance or annuities on the life of the proposed insured? ☐ ☒
If yes, show the amount, plan, company & payor

As of the close of business on December 31, 1986, Pilot Life Insurance Company changed its name to Jefferson-Pilot Life Insurance Company. At the same time it changed its address to 101 North Elm Street, Greensboro, North Carolina 27401. Any reference to Pilot Life Insurance Company on the form to which this is attached shall be deemed to mean Jefferson-Pilot Life Insurance Company.

BJ-6576

Home Office Endorsements
~~RATED PREMIUM CLASS~~
~~Age 50~~ Age

Part One of application continues on Page 2

**Part one of Application Continued.**

| Question | Yes | No |
|---|---|---|
| 30. Have you ever had an application for life or accident and sickness insurance or for reinstatement declined, postponed or rated? | ☐ | ☒ |
| 31. Do you have an application for insurance or reinstatement pending in this or any other company? | ☐ | ☒ |
| 32. Within the past 2 years have you flown other than as a passenger or do you plan to do so? (If yes, and coverage is desired, complete Aviation Questionnaire) | ☐ | ☒ |
| 33. Within the past 5 years have you been convicted of 2 or more moving violations, driving under the influence of alcohol or other drugs or had your driver's license suspended or revoked? | ☐ | ☒ |
| 34. Within the past 2 years have you engaged in or do you have any plans to engage in motor racing on land or water, underwater or sky diving, ballooning, hang gliding or parachuting? | ☐ | ☒ |
| 35. In the past ten years have you: | | |
| (1) had or been told you had Acquired Immune Deficiency Syndrome ("AIDS"), AIDS Related Complex ("ARC"), or AIDS related conditions? | ☐ | ☒ |
| (2) received advice or treatment in connection with any of the categories mentioned in (1) above? | ☐ | ☒ |
| (3) tested positive for antibodies to the AIDS (Human T-cell Lymphotropic, Type III; HTLV-III) virus? | ☐ | ☒ |

36. Details of "yes" answers - identify the question being answered.

**Statement**

I have paid to the Company $ 1160.96 which is equal to at least one month's premium. I have received, read and agree to the terms of the conditional receipt.

Under penalties of perjury, I, the Owner, declare that the Tax Identification Number or Social Security Number shown is correct and that the Internal Revenue Service has not notified me that I am subject to back-up withholding for failing to properly report dividend or interest income.

The answers in this application and on the examination are to the best of my knowledge complete, true and written as I gave them. If no money has been paid with this application there will be no insurance unless: (1) a policy has been issued and delivered to me; (2) the full first premium has been paid and; (3) the answers to the questions contained in the application continue to be correct. I understand that only an officer of the Company can make or change a contract of insurance. I have received and read the "Notice to Applicant". I agree that my accepting a policy issued on this application will be acceptance of any changes, additions or corrections made by the Company in the space provided for "Home Office Endorsements". No changes will be made in age at issue, plan of insurance, amount, classification, or benefits unless I agree in writing. I agree that a copy of this application shall be attached to and made a part of any policy issued.

**If this block ☐ is checked, I request an interview if an investigative consumer report is made.**

W. E. May
Signature of agent taking application

0152
Account No.

Harlingen TX
City and state where signed

9-1-87
Date

Signature of proposed insured (if under age 15, parent)

Signature of policyowner (if other than Insured)

X Shirley Metzger
Signature of applicant

ClibPDF - www.fastio.com

The type and insured amount of any new policy shall conform to Jefferson-Pilot Life's policy rules in effect on the date of the issue or reissue of the new policy.

Jefferson-Pilot Life shall have no responsibility for determining the Net Premiums for the purposes of this Section V but instead shall rely solely upon the statements and representations of the Employer and shall be fully protected in relying thereon.

B. Upon the adjudication of the Employer as an insolvent or as a bankrupt, the Co-Owner may pay to the Employer an amount equal to the Net Premiums in exchange for the transfer by the Employer of all ownership rights to the Co-Owner, including the right to change the beneficiary.

C. This Endorsement may be cancelled only upon the joint request of the Employer and the Co-Owner.

D. In the event of a conflict between the terms of this Endorsement and the policy to which it is attached, the terms of the policy shall control.

Dated at Harlingen Texas this the 1st day of September, 1987

Witness

Shirley Metzger
(Signature of Applicant/Co-Owner)

ATTEST:

By: [signature] VP
Title:

(Name of Employer)

By: Shirley Metzger
Title:

Jefferson-Pilot Life Insurance Company acknowledges and has recorded this Split Dollar Endorsement.

December 17, 1987
Date recorded

By: Doris J. [signature]

27:SD5

43

Copyright 1986, By Lifecomp Programs, Inc.

Jefferson-Pilot Life
Insurance Company
P.O. Box 21008
Greensboro, NC 27420

SPLIT DOLLAR ENDORSEMENT
FOR UNIVERSAL LIFE POLICY

Policy No. ______________ or New Application dated ______________

on the life of SHIRLEY JEAN METZGER
Name of Insured

Jefferson-Pilot Life Insurance Company is requested to make the provisions of this form a part of the policy. Any previous designations of beneficiary or contingent beneficiary and election of settlement options are hereby revoked.

I. Definitions – Where the terms below appear, they are defined as follows:

"Employer": SORT-RITE INTERNATIONAL, INC.

"Co-Owner": SHIRLEY JEAN METZGER

"Co-Beneficiary": (Check (X) the appropriate block and insert the desired Co-Beneficiary.)

( ) ______________, ______________ of the Insured, if living; otherwise ______________ ______________, ______________ of the Insured, if living; otherwise the Co-Owner, if living; otherwise the estate of the Co-Owner.

(XX) DEBRA ANN METZGER, DAUGHTER, KATHERINE LEE METZGER, DAUGHTER, AND FRANCES E. MERRICK, MOTHER OF INSURED SHARE AND SHARE ALIKE, SURVIVOR OR SURVIVORS.

"Net Premiums": For the purpose of this Endorsement, the term "Net Premiums" means the total premiums paid on the policy by the Employer less (1) any outstanding policy loans made by the Employer plus accrued interest thereon, (2) any partial withdrawals made by the Employer, and (3) any other amounts received by the Employer from the Co-Owner as a reimbursement of premium paid by the Employer.

B-5250A

EXHIBIT B

Copyright 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

II. Payment of Premiums

The Employer and Co-Owner agree to the following plan for payment of premiums: (Check (X) appropriate box.)

( ) EMPLOYER PAYS ALL – The Employer agrees to pay the entire gross premium(s) on the policy. Co-Owner may make voluntary additional premium contributions to the Employer and Employer shall pay each such amount as an increased premium.

( XX ) CO-OWNER PAYS COST OF INSURANCE – Each premium on the policy shall be paid by the Employer as it becomes due. The Co-Owner agrees to pay to the Employer an amount equal to the cost of the insurance provided to the Co-Owner by the policy each year. Co-Owner may make voluntary additional premium contributions to the Employer and Employer shall pay each such amount as an increased premium.

III. Division of Death Proceeds

This endorsement contemplates a division of death proceeds between two beneficiaries: the Employer and the Co-Beneficiary.

Upon the death of the Insured while this Split Dollar Endorsement is in effect: (Select one)

1. ( ) The Co-Beneficiary shall receive the net death proceeds less the Net Premiums. Employer shall receive the remainder of any net death proceeds.

2. ( ) The Co-Beneficiary shall receive the lesser of (1) $______________, or (2) the net death proceeds less the Net Premiums. The Employer shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer.

3. (XX ) The Employer shall receive the greater of (1) $ 1,000,000.00, or (2) the Net Premiums. The Co-Beneficiary shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer.

Regardless of the option selected above, the amount payable to the Co-Beneficiary shall be referred to as "Co-Beneficiary Death Proceeds".

Notwithstanding the above, in no event shall the Co-Beneficiary be entitled to receive an amount which is less than the Policy Value or Cash Value less the total of Net Premiums and any policy loans by the Co-Owner.

Jefferson–Pilot Life shall pay the entire net death proceeds in one sum to the joint order of the Employer, the Co-Beneficiary, and any collateral assignee. Payment by Jefferson-Pilot Life in accordance with the above will fully and finally discharge Jefferson-Pilot Life for the amount so paid.

Copyright 1986, By LifeComp Programs, Inc.

IV. Ownership Rights

Unless otherwise stated herein, the Employer, acting alone, may exercise the following rights:

1) The right to borrow against, pledge or assign the policy, however, in an amount not to exceed the Net Premiums.

2) The right to make partial surrenders of the cash surrender value, provided the aggregate amount of such partial surrenders shall not exceed the amount of the Net Premiums.

3) The right to designate and change the beneficiary for the Employer's share of the death proceeds.

4) The right to change the planned premium, the mode of premium payment and the frequency of premium payment.

Unless otherwise stated herein, the Co-Owner, acting alone, may exercise the following rights:

1) The right to designate and change the Co-Beneficiary and to change a settlement option for the Co-Beneficiary.

2) The right to exercise the Conversion Privilege of any Spouse Term Rider or Children's Term Rider which is included in the policy and be the Owner and premium payor of any new policy issued in lieu of such Rider.

3) The right to transfer, assign or pledge the Co-Owner's interest in the policy.

Unless otherwise stated herein, the Employer and Co-Owner must act jointly to exercise the following rights:

1) The right to change the Specified Amount of the policy and the death benefit option.

2) The right to reinstate the policy.

3) The right to borrow against or make a partial surrender of the Co-Owner's interest in the policy.

The Employer's consent to these transactions shall not be unreasonably withheld.

The Employer and Co-Owner hereby agree that Jefferson–Pilot Life is authorized to recognize the Employer's claims to its rights hereunder and to rely on the Employer's determination of any amount payable to the Employer under this policy prior to the death of the Insured, with no further inquiry of any nature. The exercise of these rights and determination of these amounts by the Employer shall be binding on the Co-Owner, and the rights of any other persons or parties having an ownership or beneficiary interest in the policy shall be subject to such exercise and/or such determination.

41

Copyright, 1986, By LifeComp Programs, Inc.

Nevertheless, as between the Employer and the Co-Owner, the Employer covenants that it will not exercise any rights, options and privileges not specifically reserved to the Employer in a manner which would impair any right or interest of the Co-Owner or Co-Beneficiary. In a like manner, the Co-Owner covenants that it will not exercise any rights, options or privileges not specifically reserved to the Co-Owner in a manner which would impair any right or interest of the Employer.

V. Termination

A. Upon the termination of the Insured's employment with the Employer for any reason other than death of the Insured or if the Co-Owner shall fail to pay that portion of each premium payment, if any, required in II above, the Employer shall have the following rights, without the consent of the Co-Owner:

(1) If the Surrender Value of the policy is less than the Net Premiums, the Employer shall have the right to

(a) surrender the policy and receive all surrender proceeds to the exclusion of the Co-Owner and Co-Beneficiary (however, the Co-Owner shall owe and pay to the Employer the difference between the surrender proceeds and the Net Premiums), or

(b) sell the policy to the Co-Owner for an amount equal to the Net Premiums. The Co-Owner may purchase said policy within 15 days following the date of the Employer's written offer to sell.

(2) If the Surrender Value exceeds the Net Premiums, the following shall apply

(a) The Employer may split the policy into two separate policies, one to be owned by the Employer and one to be owned by the Co-Owner. The Employer shall receive a policy which has a Cash Surrender Value equal to the Net Premuims and a Death Benefit which shall not exceed that to which the Employer was entitled under Article III. The remaining cash values shall then be applied to a policy for the Co-Owner, issued with the same policy date as this policy and with a Death Benefit not to exceed the Co-Beneficiary's Death Proceeds determined under Article III.

(b) If the Employer elects not to take a policy pursuant to (a) above, then the Employer shall make a partial surrender in an amount equal to the Net Premiums and shall have no further incidence of ownership in the policy; however, the Death Benefit may be adjusted, if necessary, so that the Death Benefit is no greater than the Co-Beneficiary's Death Proceeds as determined in Article III.

Copyright 1986, By LifeComp Programs, Inc.

ClibPDF - www.fastio.com

The type and insured amount of any new policy shall conform to Jefferson-Pilot Life's policy rules in effect on the date of the issue or reissue of the new policy.

Jefferson-Pilot Life shall have no responsibility for determining the Net Premiums for the purposes of this Section V but instead shall rely solely upon the statements and representations of the Employer and shall be fully protected in relying thereon.

B. Upon the adjudication of the Employer as an insolvent or as a bankrupt, the Co-Owner may pay to the Employer an amount equal to the Net Premiums in exchange for the transfer by the Employer of all ownership rights to the Co-Owner, including the right to change the beneficiary.

C. This Endorsement may be cancelled only upon the joint request of the Employer and the Co-Owner.

D. In the event of a conflict between the terms of this Endorsement and the policy to which it is attached, the terms of the policy shall control.

Dated at Harlingen Texas this the 1st day of September, 1987

Witness

Shirley Metzger
(Signature of Applicant/Co-Owner)

ATTEST:

By: [signature] VP
Title:

(Name of Employer)

By: Shirley Metzger
Title:

Jefferson-Pilot Life Insurance Company acknowledges and has recorded this Split Dollar Endorsement.

December 17, 1987
Date recorded

By: Doris J. Calliatt

27:SD5

43

Copyright 1986, By Lifecomp Programs, Inc.

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

FOR THE SOUTHERN District of TEXAS, BROWNSVILLE DIVISION

JEFFERSON PILOT LIFE INSURANCE COMPANY

V.

SORT-RITE INTERNATIONAL, INC., EXPORT-IMPORT BANK OF THE UNITED STATES, COASTAL BANK, SSB, LETICIA ELIZALDE de PINO, Beneficiary, DEBRA ANN METZGER FINCH, Contingent Beneficiary, KATHERINE LEE METZGER, Second Contingent Beneficiary

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: B-01-142

TO: (Name and address of Defendant)

EXPORT-IMPORT BANK OF THE UNITED STATES
GREGORY A. SERRES, UNITED STATES ATTORNEY'S OFFICE - AGENT FOR SERVICE
UNITED STATES DEPARTMENT OF JUSTICE
ATTN: CIVIL DOCKETING
910 TRAVIS STREET #1500, P.O. BOX 61129, HOUSTON, TEXAS 77208

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JASON R. MANN
J. EDWARD MANN, JR. & ASSOCIATES
P.O. BOX 231
HARLINGEN, TEXAS 78550

an answer to the complaint which is herewith served upon you, within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N Milby, Clerk
CLERK

8-15-01
DATE

M Perez
(By) DEPUTY CLERK

ClibPDF - www.fastio.com

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

FOR THE SOUTHERN District of TEXAS, BROWNSVILLE DIVISION

JEFFERSON PILOT LIFE INSURANCE COMPANY

V.

SORT-RITE INTERNATIONAL, INC., EXPORT-IMPORT BANK OF THE UNITED STATES, COASTAL BANK, SSB, LETICIA ELIZALDE de PINO, Beneficiary, DEBRA ANN METZGER FINCH, Contingent Beneficiary, KATHERINE LEE METZGER, Second Contingent Beneficiary

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: B-01-142

TO: (Name and address of Defendant)

EXPORT-IMPORT BANK OF THE UNITED STATES
GREGORY A. SERRES, UNITED STATES ATTORNEY'S OFFICE - AGENT FOR SERVICE
UNITED STATES DEPARTMENT OF JUSTICE
ATTN: CIVIL DOCKETING
910 TRAVIS STREET #1500, P.O. BOX 61129, HOUSTON, TEXAS 77208

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JASON R. MANN
J. EDWARD MANN, JR. & ASSOCIATES
P.O. BOX 231
HARLINGEN, TEXAS 78550

an answer to the complaint which is herewith served upon you, within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N Milby, Clerk
CLERK

8-15-01
DATE

m Perez
(By) DEPUTY CLERK

ClibPDF - www.fastio.com

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

FOR THE SOUTHERN District of TEXAS, BROWNSVILLE DIVISION

JEFFERSON PILOT LIFE INSURANCE COMPANY

V.

SORT-RITE INTERNATIONAL, INC., EXPORT-IMPORT BANK OF THE UNITED STATES, COASTAL BANK, SSB, LETICIA ELIZALDE de PINO, Beneficiary, DEBRA ANN METZGER FINCH, Contingent Beneficiary, KATHERINE LEE METZGER, Second Contingent Beneficiary

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

TO: (Name and address of Defendant)

EXPORT-IMPORT BANK OF THE UNITED STATES
JOHN ASHCROFT, AGENT FOR SERVICE
UNITED STATES ATTORNEY GENERAL
10 AND CONSTITUTION AVENUE
WASHINGTON, D.C. 20530

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JASON R. MANN
J. EDWARD MANN, JR. & ASSOCIATES
P.O. BOX 231
HARLINGEN, TEXAS 78550

an answer to the complaint which is herewith served upon you, within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N Milby, Clerk
CLERK

8-15-01
DATE

m Perez
(By) DEPUTY CLERK

ClibPDF - www.fastio.com