*15*

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 3 0 2001

JEFFERSON PILOT LIFE INSURANCE    *
COMPANY,    *
Plaintiff,    *
   *
v.    *    CIVIL ACTION No. B-01-142
   *
SORT RITE INTERNATIONAL INC., et al.,    *
Defendants.    *

## EXPORT IMPORT BANK OF THE UNITED STATES
## NOTICE OF CLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

The Export Import Bank of the United States (hereinafter referred to as "Eximbank"), by and through Gregory A. Serres, United States Attorney for the Southern District of Texas, files this Notice of Claim to the funds at issue in this Interpleader action. Attached as Government's Exhibit 1 is an "Affidavit of Debt" executed by Debra Ann Femiano. Ms. Femiano is an Asset Manager in the Asset Management Division of the Eximbank. As noted at Government's Exhibit 1, the Eximbank asserts that as of September 17, 2001, its claim totaled $486,403.66 (comprised of $375,022.44 in principal plus interest of $111,381.22).

WHEREFORE, PREMISES CONSIDERED, the Eximbank prays that this Court enter judgment in favor of the Eximbank and award the life insurance proceeds at issue to Eximbank to the extent of the amount due and owing on its promissory note that was personally guaranteed by Shirley Metzger and such other and further relief to which it may be entitled.

Respectfully submitted,

GREGORY A. SERRES
United States Attorney

NANCY L. MASSO
Assistant United States Attorney
600 E. Harrison St., No. 201
Brownsville, Texas 78520
Tel: (956) 548-2554
Fax: (956) 548-2549
State Bar No. 00800490
Federal I.D. No. 10263

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2001, a copy of the true and foregoing copy of the EXPORT IMPORT BANK OF THE UNITED STATES NOTICE OF CLAIM was mailed to the following parties herein, via certified mail, return receipt requested:

Mr. Jason R. Mann, Attorney for
Jefferson Pilot Life Insurance Company
P.O. Box 231
P.O. Box 231
Harlingen, Texas 78551

Mr. Michael R. Ezell, Attorney for
Coastal Banc, ssb
P.O. Box 2878
Harlingen, Texas 2878

Ms. Constance Singleton, Attorney for
Debra Ann Metzger Finch,
Katherine Lee Metzger
Leticia Elizalde de Pino
215 Bayland Ave.
Houston, Texas 77009

Mr. Chris Boswell, Attorney for
Sort-Rite International Inc.
515 East Harrison St., Suite A
Harlingen, Texas 78550

NANCY L. MASSO
Assistant United States Attorney

2

AFFIDAVIT OF DEBT

EXPORT-IMPORT BANK
OF THE UNITED STATES

WASHINGTON, D.C.

I, Debra Ann Femiano, am an Asset Manager in the Asset Management Division of the

Export-Import Bank of the United States (hereinafter referred to as "Ex-Im Bank"), an agency of

the United States Government established by the Export-Import Bank Act of 1945 (P.L. 102-

583, as amended) having its principal office at 811 Vermont Avenue, NW, Washington, D.C.

20571 and as an Asset Manager, I am authorized to and do make, execute and file this Affidavit

of Debt on behalf of Ex-Im Bank.

1. On/or about November 30, 1991, San Benito Bank and Trust approved the renewal of

a revolving loan to Sort-Rite International Inc. (Sort-Rite) in the sum of $1,000,000. The loan

was personally guaranteed by Shirley Metzger. The Export-Import Bank of the United States

guaranteed payment of the loan to San Benito Bank and Trust upon a payment default by Sort-

Rite.

2. Said indebtedness is evidenced by a Promissory Note, guaranteed by Ms. Shirley

Metzger, and a Loan and Security Agreement dated November 30, 1991, executed by Sort-Rite

payable to the order of San Benito Bank and Trust company in the principal sum of $1,000,000

(See Attachment 1).

4. As a result of a claim payment made to San Benito Bank and Trust Company by Ex-

Im Bank on August 13, 1992 (See Attachment 2), San Benito Bank and Trust assigned to Ex-Im

Bank all its right, title and interest in the Promissory Note dated November 30, 1991, and Loan

and Security Agreements related to the indebtedness of Sort-Rite (See Attachment 3). Ex-Im

Bank is the holder of said Promissory Note and Loan and Security Agreement.



GOVERNMENT
EXHIBIT
1

-2-

5. In 1992, Sort-Rite initiated bankruptcy proceedings; said proceedings were assigned case number 92-21053-B-11.

6. On March 15, 1994, the bankruptcy court entered an Order Confirming Debtor's Amended Plan of Reorganization (See Attachment 4). The order required that Sort-Rite pay the Ex-Im Bank 144 monthly installments in the amount of $8,292.63 over a period of 12 years. At that time, the total indebtedness to Ex-Im Bank totaled $756,483.38. From March 1994 to September 1998, Ex-Im Bank received 46 monthly payments from Sort-Rite totaling $381,460.94. No payments were received during the period January 1998 through August 1998 from Sort-Rite and no payments were received after September 1998.

7. By way of this affidavit, the Export-Import Bank of the United States makes it demand for payment upon the court or executor of the Estate for Shirley Metzger. The total amount of principal owing is $375,022.44 plus interest totaling $111,381.22 through September 17, 2001, and the daily interest accrual thereafter is $85.94 per day.

EXPORT-IMPORT BANK
THE UNITED STATES

By: *Debra Ann Femiano*
Debra Ann Femiano
Asset Manager
Asset Management Division

Subscribed and sworn before me, Debra Ann Femiano, this 17 day of September, 2001.

ATTACHMENT 1

RG/MAR/L&D          SBB&T BASE RATE plus 0.00% Floating

SORT RITE INTERNATIONAL,  # PROMISSORY NOTE          NOTE
P. O. BOX 1805                                        No.  8043019-9068
HARLINGEN, TX 78551              FLUCTUATING RATE

$.1,000,000.00 ....................... San Benito, Texas........ NOVEMBER 30, ................................., 19 91.
    As herewith stipulated, for value received, without grace, I, we, or either of us, the undersigned, promise to pay to
the order of The San Benito Bank & Trust Co. San Benito, Cameron County, Texas (Bank) the principal sum of
***ONE MILLION AND 00/100***

($.1,000,000.00....................) Dollars with interest from date until maturity at a fluctuating rate, which rate shall
equal...00.00..........% per annum above the base commercial rate of interest ("Base Rate") established from time to
time by Bank for short-term unsecured loans to substantial and responsible commercial borrowers, each change in rate
charged hereunder to become effective without notice to the undersigned on the effective date of each change in the
Base Rate, but in no event shall the rate charged hereunder exceed the maximum rate of interest permitted by applicable
law, both principal and interest payable at San Benito, Cameron County, Texas. The principal indebtedness and accrued
interest thereon shall bear interest after maturity at the maximum rate allowable by law.

    The maker and payee of this note, prior to execution, have examined all documents to be executed, and have com-
puted the interest and rate and all fees under the terms hereof and the instruments securing the payment hereof and
find that all are permissible and proper and that the interest rate is not in excess of the maximum legal rate provided
by law and have determined to the satisfaction of both maker and payee that interest payable under the terms of this
note could not exceed the maximum legal rate provided by law, and are not subject to any defense or offset based on
usury or legal capacity or otherwise; however, should the calculations and interpretations, or application of the provi-
sions hereof and the instruments securing the payment hereof when considered jointly or severally be construed by a
final judgment of a Court of competent jurisdiction to provide for or permit the payment of interest in excess of the
maximum legal rate, such interpretation was not the intention of the parties and results from a mutual mistake and
the payments shall be first applied to interest at the maximum legal rate provided by law and the remaining balance
to principal or rebated to maker where applicable

    If default shall be made in the payment of any installment of principal or interest on this note at maturity, or in
case of failure to perform any covenant or agreement contained in any of the instruments securing the payment
hereof, then this note and all accrued interest thereon shall, at the election of the legal holder hereof, become im-
mediately due and payable. Maker shall be deemed in default under this note at such time as the payee believes that
the prospect of payment of the indebtedness herein or the performance of any instrument securing this note is im-
paired or if payee should deem itself insecure at any time prior to maturity, then in such events the holder hereof may
exercise its rights in conjunction with this indebtedness and the lien document securing the same.

    If this note is placed in the hands of an attorney for collection, or is collected through Probate or Bankruptcy
Court, or through other legal proceedings, the makers, endorsers, and/or guarantors hereof further promise to pay
reasonable attorney's fees and all costs, including but not limited to court costs and the cost of any bonds required for
the preservation or possession of any property securing this note, which may be incurred by the holder of this note.

    The maker and each surety, endorser, guarantor and other party ever liable for payment of any sums of money
payable on this note, jointly and severally, waive presentment and demand for payment, protest and notice of protest,
and notice of intent to accelerate maturity, and agree to be primarily liable hereon without recourse by the payee to
the maker or any other party to this note, and agree that their liability on this note shall not be affected by any
renewal or extension in the time of payment hereof, by any indulgence, or by any release or change in any security for
the payment of this note, or by the release or change of any other surety, endorser, guarantor or other party, and
hereby consent to any and all renewals, extensions, indulgences, releases, or changes, regardless of the number of
such renewals, extensions, indulgences, releases, or changes. No renewal or extension of this note shall be effective
against payee unless agreed to in writing by payee.

    This note is secured by:

SEE ATTACHED EXHIBIT "A"

    This note is payable as follows: On Demand, or if no demand be made, then it shall be payable as follows:
Principal and interest shall be due and payable on or before DEC. 31, 1991
"Pursuant to Article 5069 V.A.T.S., the indicated rate ceiling is applicable to this note; notwithstanding any other
provision thereof, the rate of interest charged or collected hereunder shall not exceed the indicated rate ceiling that
may from time to time be in effect, for so long as debt is outstanding under this note."

Co-Makers:                              Maker:  Sort Rite International, Inc.

                                        By:   Shirley Metzger
                                              Shirley Metzger, President
                                        By: Frances E. Menek
                                                         (POA)

Guarantors:                             Address:
Shirley Metzger
By: Frances E. Menek                    P. O. Box 1805
         (POA)
                                        Harlingen, TX  78551

PAY TO THE ORDER OF EXPORT-IMPORT BANK OF THE UNITED STATES
WITHOUT RECOURSE.

The San Benito Bank & Trust Company

By: _____

David Wiechering, Senior Vice President

EXHIBIT "A"


Attached to a made a part of hereto of Note #8043019-9068

Any and all inventory, work in process, finished goods, and accounts receivable now owned
or hereafter acquired by Debtor being more specifically described as follows:

All of Debtor's accounts, contract rights, general intangibles, notes, drafts, acceptances,
instruments and chattel paper now owned by Debtor, as well as any and all products thereof,
including any and all letters of credit obtained in connection with same, or in connection
with sales of inventory, and in and to all returned or repossessed goods arising from or
relating to any account or other proceeds goods arising from or relating to any account
or other proceeds of any sale or other disposition of inventory. All of Debtor's inventory,
including all goods, merchandise, raw materials, goods in process, finished goods and other
tangible personal property now owned or hereafter acquired by Debtor and held for sale or
lease or furnished or to be furnished under contracts of service or used or consumed in
Debtor's business, and all additions and accessions thereto, and in accounts with respect
thereto and proceeds thereof; Assignment of Life Insurance Policy No. JP4038973 on the
life of Shirley Metzger and Personal Guaranty of Shirley Metzger.  This loan is 90%
Guaranteed by the Export-Import Bank of the U. S. of an outstanding amount of $1,000,000.00.

_____
Initials


The Maker hereof, so long as the Maker is not in default under the terms of this Note and
any agreement in connection therewith, may use all or any part of the credit provided for
herein at any time before maturity in compliance with the Loan Agreement, and there is
no limitationon the number of aggregate amounts of advances and repayments made hereunder
so long as the total unpaid principal amount does not exceed One Million Dollars ($1,000,000.00).

# SECURITY AGREEMENT

**DEBTOR** ___Sort Rite International, Inc._____

**DEBTOR'S RESIDENCE** _____
**OR**
**PLACE OF BUSINESS** ___P. O. Box 1805, Harlingen, TX 78551_____

**SECURED PARTY** ___The San Benito Bank & Trust Company_____

**SECURED PARTY'S ADDRESS** ___P. O. Box 1911_____

San Benito, TX 78586_____

**SECURITY INTEREST** In order to secure the payment of the Debt described below and the obligations of this Security Agreement, Debtor gives Secured Party a security interest in the following Collateral under Article 9 of the Uniform Commercial Code (UCC)

**COLLATERAL** ___See Attached Exhibit "A"_____

_____

_____

_____

**AFTER-ACQUIRED PROPERTY AND PROCEEDS** The Collateral includes: all proceeds, increases, substitutions, replacements, additions, improvements and accessions to the Collateral, all proceeds from insurance on the Collateral, and all refunds of unearned premiums for insurance, but does not include any consumer goods (other than accessions) acquired by Debtor more than 10 days after the loan proceeds are advanced. This provision shall not be construed to mean that Debtor is authorized to sell, lease, or dispose of the Collateral without the consent of Secured Party.

**DEBT** $___1,000,000.00___ Note dated ___November 30, 1991___, 19___ payable to Secured Party

**FUTURE ADVANCES AND OTHER DEBTS** The debt includes: any renewals or extensions of the Note; any amounts advanced by Secured Party to protect its security interest in the Collateral; any future amounts advanced by Secured Party at its option to Debtor, any and all other liabilities of Debtor to Secured Party, now existing or later incurred, matured or unmatured, direct or contingent; any costs or expenses that may be lawfully assessed against Debtor for the collection of the Debt, including attorney's fees;

**LOCATION OF COLLATERAL** Debtor agrees to keep the Collateral
[XX] at the Debtor's address stated above,
[ ] at the following location. _____

_____

**REAL ESTATE** If marked here [ ], the Collateral is either [ ] a fixture that is, or will be, attached to the following described real estate; or [ ] crops growing or to be grown upon the following described real estate: ___ _____

_____

whose record owner is: _____

**FARM PRODUCTS** If marked here [ ], the Collateral is farm products and includes the offspring and increase of any livestock or crops given as such Collateral and all feed, seed, fertilizer and other supplies now owned or later acquired in connection with such farming operations, all of which is located upon the above described real estate.

**LOCATION OF RECORDS** If marked here [ ], the Collateral consists of accounts, instruments, chattel paper, documents or other general intangibles and the records concerning such Collateral are kept at _____

**POSSESSION BY SECURED PARTY** If marked here [ ], the Collateral will be retained in the possession of Secured Party, and the following provisions in this section shall be applicable. Secured Party's duty with reference to the Collateral shall be solely to use reasonable care in the custody and preservation of the Collateral or its possession and to receive collections, earnings, dividends, remittances and payments on such Collateral as and when made. Secured Party shall have the option of applying the amounts so received, after deduction for any collection costs that may be lawfully charged, as payment of any debt secured by this Security Agreement, or holding such amounts for the benefit of Debtor. Secured Party shall not be responsible in any way for any depreciation in value of the Collateral, nor shall Secured Party have any duty or responsibility to take any steps to preserve rights against other parties or to enforce collection of the Collateral

**USE OF COLLATERAL** The Collateral will be used primarily for the purposes checked below:
[ ] Personal, family, or household purposes
[x] Business operations (other than farming)
[ ] Farming operations

**OWNERSHIP OF COLLATERAL** Debtor is the owner of the Collateral, or if marked here [ ], Debtor is purchasing the Collateral with the proceeds of the Note described above. Except for the security interest created by this Security Agreement, the Collateral is free from any lien, security interest, encumbrance, or claim With respect to any instruments, chattel paper, documents or other general intangibles given as Collateral, Debtor warrants and represents that: they are genuine, free from adverse claims, default, prepayment or defenses; all persons appearing to be obligated thereon have authority and capacity to contract and are bound thereon; and they comply with applicable laws concerning form, content, and manner of preparation and execution. Debtor will, at Debtor's cost and expense, defend any action which may affect Secured Party's security interest in, or Debtor's title to, the Collateral.

**FINANCING STATEMENT** No Financing Statement covering the Collateral or any part thereof or any proceeds thereof is on file in any public office and, at Secured Party's request, Debtor will join in executing all necessary Financing Statements in forms satisfactory to Secured Party and will pay the cost of filing and will further execute all other necessary instruments deemed necessary by Secured Party and pay the cost of filing

**SALE OR ENCUMBRANCE OF COLLATERAL** Debtor will not, without the written consent of Secured Party, sell, contract to sell, lease, encumber, or dispose of the Collateral or any interest therein until this Security Agreement and all debts secured thereby have been fully satisfied.

**INSURANCE** If the Collateral is tangible property and is insurable, Debtor will insure the Collateral with companies acceptable to Secured Party against such casualties and in such amounts as Secured Party shall reasonably require with a loss payable clause in favor of Debtor and Secured Party as their interest may appear, and Secured Party is hereby authorized to collect sums which may become due under any of said policies and apply the same to the obligations hereby secured.

**PROTECTION OF COLLATERAL** If the Collateral is tangible property, Debtor will keep the Collateral in good order and repair and will not waste or destroy the Collateral or any part thereof Debtor will not use the Collateral in violation of any statute or ordinance and Secured Party will have the right to examine and inspect the Collateral at any reasonable time.

**TAXES** Debtor will pay promptly when due all taxes and assessments on the Collateral or for its use and operation.

**DECREASE IN VALUE OF COLLATERAL** If in Secured Party's judgment the Collateral has materially decreased in value or if Secured Party shall at any time deem that Secured Party is insecure, Debtor shall either provide enough additional Collateral to satisfy Secured Party, or shall reduce the total indebtedness by an amount sufficient to satisfy Secured Party

**REIMBURSEMENT OF EXPENSES** At the option of Secured Party, Secured Party may discharge taxes, liens, interest, or perform or cause to be performed for and on behalf of Debtor any actions and conditions, obligations, or covenants which Debtor has failed or refused to perform, and may pay for the repair, maintenance, and preservation of the Collateral, including, to the extent but only to the extent such amounts may be lawfully collected, attorney's fees, court costs, agent's fees, or commissions, or any other costs or expenses. All sums so expended shall bear interest from the date of payment at the rate of interest stated in the Note described above, if such rate of interest can be lawfully collected and if not then at the maximum legal rate, and shall be payable on demand at the place designated in the Note and shall be secured by this Security Agreement

**CHANGE OF RESIDENCE OR PLACE OF BUSINESS** Debtor will promptly notify Secured Party of any change of the Debtor's residence, place of business, or place where records are kept.

**TIME OF PERFORMANCE AND WAIVER** In performing any act under this Security Agreement and the Note secured thereby, time shall be of the essence. Secured Party's acceptance of partial or delinquent payments, or the failure of Secured Party to exercise any right or remedy shall not be a waiver of any obligation of Debtor or right of Secured Party or constitute a waiver of any other similar default subsequently occurring.

**DEFAULT** Debtor shall be in default under this Security Agreement on the happening of any of the following events or conditions

(1) Default in the payment or performance of any obligation, covenant, or liability contained or referred to in the Note or in this Security Agreement;

(2) Any warranty, representation, or statement made or furnished to Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished;

(3) Loss, theft, substantial damage, destruction, sale, or encumbrance to or of any of the Collateral, or the making of any levy, seizure, or attachment thereof or thereon;

(4) Any time Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this Security Agreement is impaired;

(5) Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

**REMEDIES** Upon the occurrence of any such event of default, and at any time thereafter, Secured Party may declare all obligations secured immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as othe rights and remedies either at law or in equity possessed by Secured Party.

Secured Party shall have the right to remove the Collateral from the premises of Debtor, by any legal means, and the Debtor hereby waives and releases Secured Party of and from any and all claims in connection therewith or arising therefrom.

Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by the Secured Party which is reasonably convenient to both parties. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give the Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Debtor shown at the beginning of this Security Agreement at least five days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling, or the like shall include Secured Party's reasonable attorney's fees and legal expenses, to the extent but only to the extent such amounts may be lawfully collected

**TEXAS LAW TO APPLY** This Agreement shall be construed under and in accordance with the Uniform Commercial Code and other applicable laws of the State of Texas and all obligations of the parties created hereunder are performable in the County of the Secured Party's address stated above

**PARTIES BOUND** This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns. If there is more than one Debtor, their obligations shall be joint and several.

**LEGAL CONSTRUCTION** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. Notwithstanding anything else herein to the contrary, if the Debt secured by this Security Agreement is a loan made under any chapter of the Texas Credit Code that limits charges and expenses that may be collected by Secured Party, the provisions of such Code shall govern in the event of any conflict between the provisions of this Security Agreement and the provisions of such Code.

Executed __November 30_____, 19_91_

Secured Party:

The San Benito Bank & Trust Company

By: Terry Gray, Senior Vice President

Debtor  Sort Rite International, Inc.

By: Shirley Metzger, President

EXHIBIT "A"

Attached to a made a part of hereto of Note #8043019-9068

Any and all inventory, work in process, finished goods, and accounts receivable now owned or hereafter acquired by Debtor being more specifically described as follows:

All of Debtor's accounts, contract rights, general intangibles, notes, drafts, acceptances, instruments and chattel paper now owned by Debtor, as well as any and all products thereof, including any and all letters of credit obtained in connection with same, or in connection with sales of inventory, and in and to all returned or repossessed goods arising from or relating to any account or other proceeds goods arising from or relating to any account or other proceeds of any sale or other disposition of inventory.  All of Debtor's inventory, including all goods, merchandise, raw materials, goods in process, finished goods and other tangible personal property now owned or hereafter acquired by Debtor and held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in Debtor's business, and all additions and accessions thereto, and in accounts with respect thereto and proceeds thereof;  Assignment of Life Insurance Policy No. JP4038973 on the life of Shirley Metzger and Personal Guaranty of Shirley Metzger.  This loan is 90% Guaranteed by the Export-Import Bank of the U. S. of an outstanding amount of $1,000,000.00.

_____
Initials

The Maker hereof, so long as the Maker is not in default under the terms of this Note and any agreement in connection therewith, may use all or any part of the credit provided for herein at any time before maturity in compliance with the Loan Agreement, and there is no limitationon the number of aggregate amounts of advances and repayments made hereunder so long as the total unpaid principal amount does not exceed One Million Dollars ($1,000,000.00).

Case 1:01-cv-00142    Document 15    Filed in TXSD on 10/30/2001    Page 11 of 35

# CLAIM PAYMENT VOUCHER
### EXPORT-IMPORT BANK OF THE UNITED STATES
### OFFICE OF THE TREASURER-CONTROLLER
Washington, D.C. 20571
202-566-8928

Guar. No. XT-0809-
60475XB

FCIA No. _____

Claim No. WC-00019

WC-19

**CLAIMANT:**

ATTN:  David Wiechering
     Vice President
SAN BENITO BANK & TRUST COMPANY
P.O. Box 1911
San Benito, TX  78586

Remitted __AUGUST 13, 1992__     Check No ___TFCS___     $ __829,441.64__

**Remarks:** Shown below are detailed computations for a claim payment Eximbank is making to you today by check/wire transfer (E.F.T.) in accordance with procedures outlined in our letter of _____

| OUTSTANDING BALANCE | PERIOD (INCLUSIVE) FROM    TO | NO. DAYS | INT. RATE | INTEREST | PRINCIPAL | TOTAL |
|---|---|---|---|---|---|---|
| 883,008.51 | 08-30-91 12-30-91 | 123 | 1/ 6.00 360 | 18,101.67 (-)12,768.34 2/ 5,333.33 | 883,008.51 | 888,341.84 |
| 5,006,01 | 12-31-91 08-12-92 | 226 | 6.00 360 | 33,259.99 TOTAL ELIGIBLE LOSS (100%) COMPENSABLE LOSS (90%) | | 921,601.72 829,441.64 |

 pproved for $ _____

(Authorized Certifying Officer)

B No  82-8
CT  1982

CitiPDF · www.texto.com

**ATTACHMENT 3**

## TRANSFER OF NOTES AND SECURITY INTERESTS

Date:  August 3, 1992

Holder of Notes and Security Interests:  The San Benito Bank & Trust Company

Holder's Mailing Address:  P.O. Drawer 1911, San Benito, Cameron County, Texas 78586

Transferee:  The Export-Import Bank of the United States

Transferee's Address:    811 Vermont Avenue, N.W.
                         Washington D.C. 20571

**NOTES**

NOTE 1:

    Date:  November 30, 1991

    Original Amount:  One Million and No/100 Dollars
        ($1,000,000.00)

    Maker:  Sort-Rite International, Inc.

    Guarantor:  Shirley Metzger.

    Payee:  The San Benito Bank & Trust Company

    Unpaid Principal and Interest as of April 22, 1992: $883,008.51 principal, $38,323.49 interest.  Interest continues to accrue on the Note after April 22, 1992, at the rate indicated therein.

    Date of Maturity:  December 31, 1991.

Note #1 was executed in renewal and extension of the following described note:

NOTE 2:

    Date:     October 30, 1991

    Original Amount:  One Million and No/100 Dollars
        ($1,000,000.00)

    Maker:  Sort-Rite International, Inc.

    Guarantor:  Shirley Metzger

    Payee:  The San Benito Bank & Trust Company

TRANSFER OF NOTES AND SECURITY INTERESTS                    PAGE -1-

Date of Maturity:  November 30, 1991

Note #2 was executed in renewal and extension of the following described note:

NOTE 3:

Date:        August 31, 1991

Original Amount:  One Million and No/100 Dollars
                  ($1,000,000.00)

Maker:  Sort-Rite International, Inc.

Guarantor:  Shirley Metzger

Payee:  The San Benito Bank & Trust Company

Date of Maturity:  October 30, 1991

Note #3 was executed in renewal and extension of the following described note:

NOTE 4:

Date:        August 31, 1990

Original Amount:  One Million and No/100 Dollars
                  ($1,000,000.00)

Maker:  Sort-Rite International, Inc.

Guarantor:  Shirley Metzger

Payee:  The San Benito Bank & Trust Company

Date of Maturity:  August 31, 1991

Notes and Security Interests are described in the following documents:

1.  Security Agreement dated November 30, 1991, executed by and between Sort-Rite International, Inc., Debtor, and The San Benito Bank & Trust Company, Secured Party.

2.  Security Agreement dated October 30, 1991, executed by and between Sort-Rite International, Inc., Debtor, and The San Benito Bank & Trust Company, Secured Party.

3.  Security Agreement dated August 31, 1990, executed by and between Sort-Rite International, Inc., Debtor, and The San Benito Bank & Trust Company, Secured Party.

Property Subject to Security Interests:  See attached Exhibit "A"

TRANSFER OF NOTES AND SECURITY INTERESTS                          PAGE -2-

The security interests are perfected by financing statement #89-196278 filed in the office of the Texas Secretary of State on August 28, 1989.

For value received Holder of the notes and security interests transfers them to Transferee, without recourse, and represents that the unpaid principal and interest on the notes are correctly stated.

When the context requires, singular nouns and pronouns include the plural.

THE SAN BENITO BANK & TRUST COMPANY

By:

David Wiechering,
Senior Vice-President

THE STATE OF TEXAS    )
                      )
COUNTY OF CAMERON     )

This instrument was acknowledged before me on this the 3rd day of August, A.D. 1992, by the said David Wiechering, Senior Vice-President of The San Benito Bank & Trust Company, a state banking association, on behalf of said state banking association.

VIRGINIA PATRICK
Notary Public
STATE OF TEXAS
My Comm. Expires
OCT 09,1995

Notary Public in and for the
State of Texas

TRANSFER OF NOTES AND SECURITY INTERESTS                    PAGE -3-

## EXHIBIT "A"

Any and all inventory, work in process, finished goods, and accounts receivable now owned or hereafter acquired by Debtor being more specifically described as follows:

All of Debtor's accounts, contract rights, general intangibles, notes, drafts, acceptances, instruments and chattel paper now owned by Debtor, as well as any and all products thereof, including any and all letters of credit obtained in connection with same, or in connection with sales of inventory, and in and to all returned or repossessed goods arising from or relating to any account or other proceeds goods arising from or relating to any account or other proceeds of any sale or other disposition of inventory. All of Debtor's inventory, including all goods, merchandise, raw materials, goods in process, finished goods and other tangible personal property now owned or hereafter acquired by Debtor and held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in Debtor's business, and all additions and accessions thereto, and in accounts with respect thereto and proceeds thereof.

ATTACHMENT 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED
MAR 15 1994
MICHAEL N. MILBY, CLERK

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

In re:                          )
                                )     Case No. 92-21053-B-11
SORT-RITE INTERNATIONAL,        )
   INC.,                        )     Chapter 11
                                )
Debtor.                         )
_____)

<u>ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION</u>

Debtor's Amended Plan of Reorganization under Chapter 11 of
the Bankruptcy Code ("Code") having been filed by SORT-RITE
INTERNATIONAL, INC. on August 12, 1993, and a copy of said plan
and of the Debtor's Disclosure Statement, as approved by the
court, having been transmitted to the holders of claims and
interests; and

It having been determined by the court after notice and
hearing held on October 18, 1993 that:

1.    The plan complies with the applicable provisions of
title 11 other than as set forth below;

2.    The Debtor had failed, as of October 18, 1993, to
comply with the following provisions of title 11:  a) the Debtor
had failed to comply with the court's adequate protection order
requiring monthly payments to Export-Import Bank of the United
States ("Export-Import Bank") in the amount of $10,500, by not
making five adequate protection payments totalling $52,500; and

b) the Debtor had made an unauthorized bookkeeping entry with respect to the salary of the Debtor's President, Shirley Metzger;

3. The plan has been proposed in good faith and not by any means forbidden by law;

4. Any payment made or promised by the proponent or by the debtor for services or for costs and expense in or in connection with the case, or in connection with the plan and incident to the case, have been approved by the Court, or is subject to the approval of the Court as reasonable;

5. The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve after confirmation of the plan as a director, officer, or voting trustee of the debtor and the appointment to or continuance in such office of such individual is consistent with the interest of creditors and equity security holders and with public policy, provided, however, that the annual salaries of insiders shall be frozen at the following amounts for a period of three years:

| Shirley Metzger: | $ 26,000 |
| Frances Merrick: | $ 52,000 |
| Leticia Pino: | $     0 (commission only) |

and further provided that the annual salary increase of each insider thereafter shall be limited to ten percent (10%) each year for the term of the plan;

6. The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and, pursuant to Paragraph 5 above, has disclosed the nature of any compensation for such insider;

- 2 -

7.   With respect to impaired classes of claims or interests, each holder of such claim or interest has accepted the plan; or, based on the modifications to the plan set forth below, will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7;

8.   Pursuant to balloting of the creditors, Class 5 has rejected the Debtor's plan, and all other classes have accepted the plan;

9.   With respect to the claims of the Internal Revenue Service, the IRS will be allowed to pursue its normal administrative collection methods in the event of default by the Debtor, including the filing of federal tax liens and seizure and sale of property.  Such collection methods will be permitted provided twenty days have passed without the Debtor curing the default.  The claims of the IRS will be paid over a period of six years from date of assessment with interest accruing at eight percent (8%);

10.  At least one class of impaired creditors has accepted the plan;

11.  Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor;

12.  With respect to the treatment of Export-Import Bank proposed under the plan, the plan is not fair and equitable and

- 3 -

thus fails to meet the cramdown requirements of 11 U.S.C. §
1129(b)(2)(A) in the following respects: 1) the plan does not
contain a "drop-dead" provision in the event the debtor defaults
in its payment and other obligations owed to Export-Import Bank;
2) the plan does not provide for default based upon the decline
in the ratio of collateral to loan amount;

13. The plan does not unfairly discriminate against Export-
Import Bank; and

It having been further determined that, in order to cure the
objectionable terms of the plan, the Debtor has modified the plan
in the following respects:

A. In the event that the Debtor defaults in any payment or
other obligations (including those obligations set forth in the
plan, the loan agreements, and this Order) to Export-Import Bank
and fails to cure such default within fifteen days of said
default, the stay shall automatically lift without further order
of the Court and Export-Import Bank may proceed to pursue all of
its remedies available under the loan agreement and applicable
state and federal law, including but not limited to taking
possession of its collateral;

B. An inventory audit prepared by Frank Hyde, CPA
(attached as Exhibit "A") has calculated the value of the
Debtor's inventory as of October 31, 1993. The "Inventory
Collateral Base" as determined in the audit as of October 31,
1993 is $449,280.78. The Debtor shall update the value and list

- 4 -

of inventory on a quarterly basis, commencing April 1, 1994, and provide Export-Import Bank with a copy of the updated value and list.  If the value of the inventory falls below the inventory collateral base, the Debtor shall have fifteen days to cure by: 1) increasing the value of the inventory to the inventory collateral base; or 2) making a payment of principal to Export-Import Bank in an amount equal to the decline of the value of the inventory below the collateral base.  Failure to cure as provided above shall constitute default by the Debtor and trigger the provisions of Paragraph A (Drop Dead Provision);

C.   A schedule prepared by the Debtor of accounts receivable aged 90 days or less and letters of credit as of October 30, 1993 ("Aged Accounts Receivable") prepared by the Debtor (attached as Exhibit B) provides the "Allowed Accounts Receivable Base" of $1,120.89.  The Debtor shall update the schedule of aged accounts receivable on a quarterly basis, commencing April 1, 1994, and provide Export-Import Bank with a copy of the updated schedule.  If the value of the Aged Accounts Receivable falls below the Allowed Accounts Receivable Base, the Debtor shall have fifteen days to cure by:  1) increasing the value of the Aged Accounts Receivable to the Allowed Accounts Receivable Base; or 2) making a payment of principal to Export-Import Bank in an amount equal to the decline of the value of the Aged Accounts Receivable below the Allowed Accounts Receivable Base.  Failure to cure as provided above shall constitute default

by the Debtor and trigger the provisions of Paragraph A (Drop Dead Provision);

D.   The annual salaries of insiders shall be frozen for a period of three years at the following amounts:

```
Shirley Metzger:    $ 26,000
Frances Merrick:    $ 52,000
Leticia Pino:       $      0  (commission only)
```

and the annual salary increase of each insider thereafter shall be limited to ten percent (10%) each year for the term of the plan;

E.   With respect to the claim of Texas Commerce Bank, an agreement has been entered into the record at the confirmation hearing pursuant to Local Rule 2(G) and such agreement is attached to this Order as Exhibit C and shall be incorporated herein by reference; and the claim of TCB shall be increased by $19,677.14, post confimation hearing interest, to $567,119.87.

It having further been determined that in order for the proponent to comply with all applicable provisions of title 11, the Debtor has taken the following actions:

F.   The Debtor has paid $94,500 to Export-Import Bank, as required by the Court's adequate protection order, for the nine months from June 1993 to February 1994;

G.   The Debtor has reversed the improper bookkeeping entry providing for repayment of Shirley Metzger's obligation to the Debtor, and the books now show that Mrs. Metzger owes the Debtor $71,285.60;

- 6 -

H.   The Debtor shall apply twenty-five percent (25%) of

Mrs. Metzger's salary to repayment of Mrs. Metzger's obligation

to the Debtor, but in any event, Mrs. Metzger shall repay this

obligation in full within three years of the date of this Order;


IT IS ORDERED that the Debtor's Plan of Reorganization filed

by Sort-Rite International, Inc., as filed and amended by the

above modifications, is CONFIRMED.

DATED: 3/14/94

HON. RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

APPROVED:

PAUL LEE WILEY & ASSOCIATES
P.O. Box 2764
Harlingen, Texas 78551-2764

By:

Michael J. Daley
Attorneys for Debtor


APPROVED AS TO FORM ONLY:

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 875
BEN FRANKLIN STATION
WASHINGTON, D.C. 20044

By:

Sidney P. Levinson
Attorney for Export-Import Bank
  of the United States

- 7 -

*Frank Hyde*

CERTIFIED PUBLIC ACCOUNTANT
3033 N.W. 63rd STREET
SUITE 100E
OKLAHOMA CITY, OKLAHOMA 73116

(405) 843-8497                                    FAX: (405) 843-6895

MEMBER OF
OKLAHOMA SOCIETY OF
CERTIFIED PUBLIC ACCOUNTANTS

MEMBER OF
AMERICAN INSTITUTE OF
CERTIFIED PUBLIC ACCOUNTANTS

# INDEPENDENT AUDITOR'S REPORT

TO:   SORT-RITE INTERNATIONAL, INC.

I have audited the accompanying schedule of inventory of Sort-Rite International, Inc. as of October 31, 1993. This schedule is the responsibility of the Company's management. My responsibility is to express an opinion on this schedule based on my audit.

I conducted my audit in accordance with generally accepted auditing standards. Those standards require that I plan and perform the audit to obtain reasonable assurance about whether the inventory is free of material misstatements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall schedule presentation. I believe that my audit provides a reasonable basis for my opinion.

In my opinion, the schedule of inventory referred to above presents fairly, in all material respects the inventory of Sort-Rite International, Inc. as of October 31, 1993 in conformity with generally accepted accounting principles.

*Frank Hyde*

Oklahoma City, Oklahoma
November 21, 1993

EXHIBIT
A

SORT–RITE INTERNATIONAL, INC.
INVENTORY - SCHEDULE A
OCTOBER 31, 1993

| | | |
|---|---|---|
| Raw materials | $ | 136,752.86 |
| Work-In-Progress | | 152,253.19 |
| Finished goods | | 160,274.73 |
| Total Inventory | $ | 449,280.78 |

See Auditor's Report



**Dirt-Rite International, Inc.**

HARLINGEN, TEXAS U.S.A. 78551

Box 1805
W. Jefferson
Ph. 210/423-2427
FAX 210/423-2643

RECEIVED FEB 8 1994

ACCOUNTS RECEIVABLE
OCTOBER 30, 1993

| | CURRENT | 31/60 | 61/90 | 91/120 | Over 120 |
|---|---|---|---|---|---|
| Altrix International<br>Coral Gables, Fla. | | | | | 321.90 |
| Atunes y Derivados, S.A.<br>Mazatlan, Sin, Mexico | | | | | 95.13 |
| Biotecnica Aquacultura S.A.<br>Mazatlan, Sin., Mexico | | | | | 1509.48 |
| Graciela Martinez Crespo<br>Del Rosario, Sin., Mexico | | | | | 19982.80 |
| Empacadora Chilapa, S.A.<br>Chilapa, Nayarit, Mexico | | | | | 521.41 |
| El Rosario, S.A.<br>Guayaquil, Ecuador | | | | | 376.00 |
| Expalsa, S.A.<br>Guayaquil, Ecuador | | | | | 1318.72 |
| Fricmares, S.A.<br>Guayaquil, Ecuador | | | | | 407.10 |
| Frocam, S.A.<br>Caracas, Venezuela | | | 138.15 | | 104.00 |
| Tim Amison Seafood<br>Apalachicola, Fla. | | | | | 520.24 |
| Texas Pack, Inc.<br>Port Isabel, Tx. | | | | | 437.17 |
| Ahome Acuicola, S.A.<br>Los Mochis, Sin, Mexico | | | 60.00 | | 190.52 |
| Empacadora Calvi, S.A.<br>Mante, Ecuador | | | | | 2000.00 |
| Empacadora Vidamar<br>Manta, Ecuador | | | | | 307.00 |
| Empacadora Bacam, S.A.<br>Guayaquil, Ecuador | | | | | 291.35 |
| Xavier Landiver<br>Guayaquil, Ecuador | | | | | 654.46 |
| Piscinas Marinas, S.A.<br>Guayaquil, Ecuador | | | | | 35.50 |
| Kitchens of the Oceans, Deerfield Beach, Fla. | | | | | 101.20 |
| Safe Harbour Seafoods — Mayport, Fla. | | | | 35.20 | |
| Camaronera de Cuyas, S.A.<br>Guayaquil, Ecuador | | | | | 6141.50 |
| Valley Baptist Medical Center<br>Harlingen, Texas | 18.25 | | | | |
| Maritech, S.A. Yuma, Az. | 141.50 | | | | |
| Singleton Shrimp Co.<br>Tampa, Fla. | 13.07 | | | | |
| Acetylene Oxygen Co.<br>Harlingen, Texas | 54.75 | | | | |
| Ibermar, S.A.<br>Tegucigalpa, Honduras | 893.32 | | | | |
| | $1120.89 | | $233.35 | | $35,315.48 |

EXHIBIT B-B

*File*

# DOUGLAS R. LITTLE

ATTORNEY AT LAW

975 TEXAS COMMERCE TOWER

600 TRAVIS

HOUSTON, TEXAS 77002

(713) 229-9922

FAX: (713) 229-8461

October 11, 1993

*VIA FEDERAL EXPRESS*

Mr. Michael J. Daley
Paul Lee Wiley & Associates
Post Office Box 2764
Harlingen, Texas  78551-2764

Re: *In re Sort-Rite International*; No. 92-21053-B-11,
In the United States Bankruptcy Court for the
Southern District of Texas, Brownsville Division

Dear Michael:

This letter is to confirm our agreement, reached on
October 5, 1993, and supplemented on October 11, 1993, with respect
to numerous issues which will be set out herein.

Sort-Rite International, Inc. ("Sort-Rite") is indebted
to Texas Commerce Bank National Association ("TCB") in the
principal amount of $547,442.73.  Using a moderately conservative,
not the least or the most, method of calculating accrued but unpaid
interest from the date of default on the indebtedness, January 10,
1992, through the date of confirmation, which is anticipated to be
October 18, 1993, yields a figure of $107,890.35.

As you know, Sort-Rite agreed to make adequate protection
payments in the amount of $7,564.00 each during the pendency of the
bankruptcy, from October 7, 1992 forward.  Sort-Rite did in fact
make five adequate protection payments, in the total amount of
$37,820.00.  Deducting these payments from the total interest due
yields a figure of $70,070.35.  Sort-Rite's total indebtedness as
of the date of confirmation is thus $617,513.08.  If TCB insisted
upon Sort-Rite's making up its missed adequate protection payments,
it would now owe the cash sum of $52,948.00.

Sort-Rite agrees to propose a plan to pay the
indebtedness described herein as follows: (1) the principal balance
of $547,442.73 will accrue interest at TCB's prime rate plus 2% per
annum (currently 8%), and will be payable in monthly installments
calculated using the 12-year amortization schedule currently
embodied in the plan.  The term of the indebtedness will be from
the date of confirmation through February 15, 1997, however, with
all unpaid amounts due at that time; (2) Sort-Rite will, before
October 19, 1993, make a cash payment to TCB in the amount of
$30,000.00, representing accrued but unpaid interest and accrued
but unpaid adequate protection payments; (3) the remainder of the



EXHIBIT
C

Mr. Michael J. Daley
October 11, 1993
Page 2

interest due, $40,070.35, will be payable, in addition to the sums payable under the plan to retire the principal indebtedness described in paragraph (1) hereof, over a 90-day period beginning on the date of confirmation. The three payments required to retire this indebtedness will be due thirty days following confirmation, sixty days following confirmation, and ninety days following confirmation; (4) Sort-Rite will not require that the cumulative post-confirmation indebtedness of $547,442.73 in principal and $40,070.35 in accrued, matured, but unpaid interest, be characterized in any particular way, but will agree that that total indebtedness can be structured for repayment in any manner TCB desires so long as the cash demands upon Sort-Rite required to retire this total indebtedness do not exceed those described herein.

Notwithstanding anything in the Plan, and specifically paragraph VI thereof, which is seemingly to the contrary, Sort-Rite hereby confirms and agrees that its debt to TCB is a valid and subsisting debt and that it is validly secured as described in paragraph II of the Plan. Sort-Rite has no objections to TCB's claim, or its classification or security or secured status.

In exchange for Sort-Rite's agreement to the foregoing, TCB agrees as follows: (1) it will withdraw its Motion to Lift Stay scheduled for hearing on October 6, 1993; (2) it will withdraw its Request for Hearing on, and file no opposition to, Debtor's Motion to pay administrative expenses including attorneys' fees; and (3) TCB will vote in favor of, and actively support, Sort-Rite's plan so long as it contains the foregoing elements.

If the foregoing accurately reflects our understanding and agreement, please execute this letter in the space provided, telecopy it back to me, and mail a hard copy containing an original signature back to me by return mail. If it does not, please contact me immediately.

Thank you for your cooperation. I am glad we were able to amicably resolve this issue.

Very truly yours,

Douglas R. Little

ACCEPTED AND AGREED TO:

Michael J. Daley, Attorney for Debtor

cc: Texas Commerce Bank

Case 1:01-cv-00142   Document 15   Filed in TXSD on 10/30/2001   Page 28 of 35





## AMORTIZATION SCHEDULE                                    PAGE   1

(POR =                          BORROWER =                        LOAN # =

N DATE =   3/01/1994   AMOUNT OF LOAN =      756,483.42   INTEREST RATE = 8.25%   MONTHLY PAYMENT =   8,292.63

| MENT MREP | DUE DATE | BEGINNING BALANCE | INTEREST PAYMENT | PRINCIPAL PAYMENT | ENDING BALANCE | INTEREST TO DATE | PRINCIPAL TO DATE |
|---|---|---|---|---|---|---|---|
| 1 | 4/01/1994 | 756,483.42 | 5,200.82 | 3,091.81 | 753,391.61 | 5,200.82 | 3,091.81 |
| 2 | 5/01/1994 | 753,391.61 | 5,179.57 | 3,113.06 | 750,278.55 | 10,380.39 | 6,204.87 |
| 3 | 6/01/1994 | 750,278.55 | 5,158.17 | 3,134.46 | 747,144.09 | 15,538.56 | 9,339.33 |
| 4 | 7/01/1994 | 747,144.09 | 5,136.62 | 3,156.01 | 743,988.08 | 20,675.18 | 12,495.34 |
| 5 | 8/01/1994 | 743,988.08 | 5,114.92 | 3,177.71 | 740,810.37 | 25,790.10 | 15,673.05 |
| 6 | 9/01/1994 | 740,810.37 | 5,093.01 | 3,199.56 | 737,610.81 | 30,883.17 | 18,872.61 |
| 7 | 10/01/1994 | 737,610.81 | 5,071.07 | 3,221.56 | 734,389.25 | 35,954.24 | 22,094.17 |
| 8 | 11/01/1994 | 734,389.25 | 5,048.93 | 3,243.70 | 731,145.55 | 41,003.17 | 25,337.87 |
| 9 | 12/01/1994 | 731,145.55 | 5,026.63 | 3,266.00 | 727,879.55 | 46,029.80 | 28,603.87 |
| | YEAR END: 1994 | TOTALS | 46,029.80 | 28,603.87 | | | |
| | | | | | | | |
| 10 | 1/01/1995 | 727,879.55 | 5,004.17 | 3,288.46 | 724,591.09 | 51,033.97 | 31,892.33 |
| 11 | 2/01/1995 | 724,591.09 | 4,981.56 | 3,311.07 | 721,280.02 | 56,015.53 | 35,203.40 |
| 12 | 3/01/1995 | 721,280.02 | 4,958.80 | 3,333.83 | 717,946.19 | 60,974.33 | 38,537.23 |
| 13 | 4/01/1995 | 717,946.19 | 4,935.88 | 3,356.75 | 714,589.44 | 65,910.21 | 41,893.98 |
| 14 | 5/01/1995 | 714,589.44 | 4,912.80 | 3,379.83 | 711,209.61 | 70,823.01 | 45,273.81 |
| 15 | 6/01/1995 | 711,209.61 | 4,889.57 | 3,403.06 | 707,806.55 | 75,712.58 | 48,676.87 |
| 16 | 7/01/1995 | 707,806.55 | 4,866.17 | 3,426.46 | 704,380.09 | 80,578.75 | 52,103.33 |
| 17 | 8/01/1995 | 704,380.09 | 4,842.61 | 3,450.02 | 700,930.07 | 85,421.36 | 55,553.35 |
| 18 | 9/01/1995 | 700,930.07 | 4,818.89 | 3,473.74 | 697,456.33 | 90,240.25 | 59,027.09 |
| 19 | 10/01/1995 | 697,456.33 | 4,795.01 | 3,497.62 | 693,958.71 | 95,035.26 | 62,524.71 |
| 20 | 11/01/1995 | 693,958.71 | 4,770.97 | 3,521.66 | 690,437.05 | 99,806.23 | 66,046.37 |
| 21 | 12/01/1995 | 690,437.05 | 4,746.75 | 3,545.88 | 686,891.17 | 104,552.98 | 69,592.25 |
| | YEAR END: 1995 | TOTALS | 58,523.18 | 40,988.38 | | | |
| | | | | | | | |
| 22 | 1/01/1996 | 686,891.17 | 4,722.38 | 3,570.25 | 683,320.92 | 109,275.36 | 73,162.50 |
| 23 | 2/01/1996 | 683,320.92 | 4,697.83 | 3,594.80 | 679,726.12 | 113,973.19 | 76,757.30 |
| 24 | 3/01/1996 | 679,726.12 | 4,673.12 | 3,619.51 | 675,106.61 | 118,646.31 | 80,376.81 |
| 25 | 4/01/1996 | 676,106.61 | 4,648.23 | 3,644.40 | 672,462.21 | 123,294.54 | 84,021.21 |
| 26 | 5/01/1996 | 672,462.21 | 4,623.18 | 3,669.45 | 668,792.76 | 127,917.72 | 87,690.66 |
| 27 | 6/01/1996 | 668,792.76 | 4,597.95 | 3,694.68 | 665,098.08 | 132,515.67 | 91,385.34 |
| 28 | 7/01/1996 | 665,098.08 | 4,572.55 | 3,720.08 | 661,378.00 | 137,088.22 | 95,105.42 |
| 29 | 8/01/1996 | 661,378.00 | 4,546.97 | 3,745.66 | 657,632.34 | 141,635.19 | 98,851.08 |
| 30 | 9/01/1996 | 657,632.34 | 4,521.22 | 3,771.41 | 653,860.93 | 146,156.41 | 102,622.49 |
| 31 | 10/01/1996 | 653,860.93 | 4,495.29 | 3,797.34 | 650,063.59 | 150,651.70 | 106,419.83 |
| 32 | 11/01/1996 | 650,063.59 | 4,469.19 | 3,823.44 | 646,240.15 | 155,120.89 | 110,243.27 |
| 33 | 12/01/1996 | 646,240.15 | 4,442.90 | 3,849.73 | 642,390.42 | 159,563.79 | 114,093.00 |
| | YEAR END: 1996 | TOTALS | 55,010.81 | 44,500.75 | | | |
| | | | | | | | |
| 34 | 1/01/1997 | 642,390.42 | 4,416.43 | 3,876.20 | 638,514.22 | 163,980.22 | 117,969.20 |
| 35 | 2/01/1997 | 638,514.22 | 4,389.79 | 3,902.84 | 634,611.38 | 168,370.01 | 121,872.04 |
| 36 | 3/01/1997 | 634,611.38 | 4,362.95 | 3,929.68 | 630,681.70 | 172,732.96 | 125,801.72 |
| 37 | 4/01/1997 | 630,681.70 | 4,335.94 | 3,956.69 | 626,725.01 | 177,068.90 | 129,758.41 |
| 38 | 5/01/1997 | 626,725.01 | 4,308.73 | 3,983.90 | 622,741.11 | 181,377.63 | 133,742.31 |
| 39 | 6/01/1997 | 622,741.11 | 4,281.35 | 4,011.28 | 618,729.83 | 185,658.98 | 137,753.59 |
| 40 | 7/01/1997 | 618,729.83 | 4,253.77 | 4,038.86 | 614,690.97 | 189,912.75 | 141,792.45 |
| 41 | 8/01/1997 | 614,690.97 | 4,226.00 | 4,066.63 | 610,624.34 | 194,138.75 | 145,859.08 |
| 42 | 9/01/1997 | 610,624.34 | 4,198.04 | 4,094.59 | 606,529.75 | 198,336.79 | 149,953.67 |
| 43 | 10/01/1997 | 606,529.75 | 4,169.89 | 4,122.74 | 602,407.01 | 202,506.68 | 154,076.41 |

 

AMORTIZATION SCHEDULE                                        PAGE    2

ENDOR =                          BORROWER =                          LOAN # =

OAN DATE =  3/01/1994   AMOUNT OF LOAN =    756,483.42   INTEREST RATE = 8.25%   MONTHLY PAYMENT =   8,292.63

| AYMENT NUMBER | DUE DATE | BEGINNING BALANCE | INTEREST PAYMENT | PRINCIPAL PAYMENT | ENDING BALANCE | INTEREST TO DATE | PRINCIPAL TO DATE |
|---|---|---|---|---|---|---|---|
| 44 | 11/01/1997 | 602,407.01 | 4,141.55 | 4,151.08 | 598,255.93 | 206,648.23 | 158,227.49 |
| 45 | 12/01/1997 | 598,255.93 | 4,113.01 | 4,179.62 | 594,076.31 | 210,761.24 | 162,407.11 |
| | YEAR END: 1997 | TOTALS | 51,197.45 | 48,314.11 | | | |
| 46 | 1/01/1998 | 594,076.31 | 4,084.27 | 4,208.36 | 589,867.95 | 214,845.51 | 166,615.47 |
| 47 | 2/01/1998 | 589,867.95 | 4,055.34 | 4,237.29 | 585,630.66 | 218,900.85 | 170,852.76 |
| 48 | 3/01/1998 | 585,630.66 | 4,026.21 | 4,266.42 | 581,364.24 | 222,927.06 | 175,119.18 |
| 49 | 4/01/1998 | 581,364.24 | 3,996.88 | 4,295.75 | 577,068.49 | 226,923.94 | 179,414.93 |
| 50 | 5/01/1998 | 577,068.49 | 3,967.35 | 4,325.28 | 572,743.21 | 230,891.29 | 183,740.21 |
| 51 | 6/01/1998 | 572,743.21 | 3,937.61 | 4,355.02 | 568,388.19 | 234,828.90 | 188,095.23 |
| 52 | 7/01/1998 | 568,388.19 | 3,907.67 | 4,384.96 | 564,003.23 | 238,736.57 | 192,480.19 |
| 53 | 8/01/1998 | 564,003.23 | 3,877.52 | 4,415.11 | 559,588.12 | 242,614.09 | 196,895.30 |
| 54 | 9/01/1998 | 559,588.12 | 3,847.17 | 4,445.46 | 555,142.66 | 246,461.26 | 201,340.76 |
| 55 | 10/01/1998 | 555,142.66 | 3,816.61 | 4,476.02 | 550,666.64 | 250,277.87 | 205,816.78 |
| 56 | 11/01/1998 | 550,666.64 | 3,785.83 | 4,506.80 | 546,159.84 | 254,063.70 | 210,323.58 |
| 57 | 12/01/1998 | 546,159.84 | 3,754.85 | 4,537.78 | 541,622.06 | 257,818.55 | 214,861.36 |
| | YEAR END: 1998 | TOTALS | 47,057.31 | 52,454.25 | | | |
| 58 | 1/01/1999 | 541,622.06 | 3,723.65 | 4,568.98 | 537,053.08 | 261,542.20 | 219,430.34 |
| 59 | 2/01/1999 | 537,053.08 | 3,692.24 | 4,600.39 | 532,452.69 | 265,234.44 | 224,030.73 |
| 60 | 3/01/1999 | 532,452.69 | 3,660.61 | 4,632.02 | 527,820.67 | 268,895.05 | 228,662.75 |
| 61 | 4/01/1999 | 527,820.67 | 3,628.77 | 4,663.86 | 523,156.81 | 272,523.82 | 233,326.61 |
| 62 | 5/01/1999 | 523,156.81 | 3,596.70 | 4,695.93 | 518,460.88 | 276,120.52 | 238,022.54 |
| 63 | 6/01/1999 | 518,460.88 | 3,564.42 | 4,728.21 | 513,732.67 | 279,684.94 | 242,750.75 |
| 64 | 7/01/1999 | 513,732.67 | 3,531.91 | 4,760.72 | 508,971.95 | 283,216.85 | 247,511.47 |
| 65 | 8/01/1999 | 508,971.95 | 3,499.18 | 4,793.45 | 504,178.50 | 286,716.03 | 252,304.92 |
| 66 | 9/01/1999 | 504,178.50 | 3,466.23 | 4,826.40 | 499,352.10 | 290,182.26 | 257,131.32 |
| 67 | 10/01/1999 | 499,352.10 | 3,433.05 | 4,859.58 | 494,492.52 | 293,615.31 | 261,990.90 |
| 68 | 11/01/1999 | 494,492.52 | 3,399.64 | 4,892.99 | 489,599.53 | 297,014.95 | 266,883.89 |
| 69 | 12/01/1999 | 489,599.53 | 3,366.00 | 4,926.63 | 484,672.90 | 300,380.95 | 271,810.52 |
| | YEAR END: 1999 | TOTALS | 42,562.40 | 56,949.16 | | | |
| 70 | 1/01/2000 | 484,672.90 | 3,332.13 | 4,960.50 | 479,712.40 | 303,713.08 | 276,771.02 |
| 71 | 2/01/2000 | 479,712.40 | 3,298.02 | 4,994.61 | 474,717.79 | 307,011.10 | 281,765.63 |
| 72 | 3/01/2000 | 474,717.79 | 3,263.68 | 5,028.95 | 469,688.84 | 310,274.78 | 286,794.58 |
| 73 | 4/01/2000 | 469,688.84 | 3,229.11 | 5,063.52 | 464,625.32 | 313,503.89 | 291,858.10 |
| 74 | 5/01/2000 | 464,625.32 | 3,194.30 | 5,098.33 | 459,526.99 | 316,698.19 | 296,956.43 |
| 75 | 6/01/2000 | 459,526.99 | 3,159.25 | 5,133.38 | 454,393.61 | 319,857.44 | 302,089.81 |
| 76 | 7/01/2000 | 454,393.61 | 3,123.96 | 5,168.67 | 449,224.94 | 322,981.40 | 307,258.48 |
| 77 | 8/01/2000 | 449,224.94 | 3,088.42 | 5,204.21 | 444,020.73 | 326,069.82 | 312,462.69 |
| 78 | 9/01/2000 | 444,020.73 | 3,052.64 | 5,239.99 | 438,780.74 | 329,122.46 | 317,702.68 |
| 79 | 10/01/2000 | 438,780.74 | 3,016.62 | 5,276.01 | 433,504.73 | 332,139.08 | 322,978.69 |
| 80 | 11/01/2000 | 433,504.73 | 2,980.35 | 5,312.28 | 428,192.45 | 335,119.43 | 328,290.97 |
| 81 | 12/01/2000 | 428,192.45 | 2,943.82 | 5,348.81 | 422,843.64 | 338,063.25 | 333,639.78 |
| | YEAR END: 2000 | TOTALS | 37,682.30 | 61,829.26 | | | |
| 82 | 1/01/2001 | 422,843.64 | 2,907.05 | 5,385.58 | 417,458.06 | 340,970.30 | 339,025.36 |
| 83 | 2/01/2001 | 417,458.06 | 2,870.02 | 5,422.61 | 412,035.45 | 343,840.32 | 344,447.97 |
| 84 | 3/01/2001 | 412,035.45 | 2,832.74 | 5,459.89 | 406,575.56 | 346,673.06 | 349,907.86 |

 

## AMORTIZATION SCHEDULE                                    PAGE    3

IDOR =                          BORROWER =                        LOAN # =

IN DATE =  3/01/1994   AMOUNT OF LOAN =      756,483.42   INTEREST RATE = 8.25%   MONTHLY PAYMENT =   8,292.63

| MENT NBER | DUE DATE | BEGINNING BALANCE | INTEREST PAYMENT | PRINCIPAL PAYMENT | ENDING BALANCE | INTEREST TO DATE | PRINCIPAL TO DATE |
|---|---|---|---|---|---|---|---|
| 85 | 4/01/2001 | 406,575.56 | 2,795.21 | 5,497.42 | 401,078.14 | 349,468.27 | 355,405.28 |
| 86 | 5/01/2001 | 401,078.14 | 2,757.41 | 5,535.22 | 395,542.92 | 352,225.68 | 360,940.50 |
| 87 | 6/01/2001 | 395,542.92 | 2,719.36 | 5,573.27 | 389,969.65 | 354,945.04 | 366,513.77 |
| 88 | 7/01/2001 | 389,969.65 | 2,681.04 | 5,611.59 | 384,358.06 | 357,626.08 | 372,125.36 |
| 89 | 8/01/2001 | 384,358.06 | 2,642.46 | 5,650.17 | 378,707.89 | 360,268.54 | 377,775.53 |
| 90 | 9/01/2001 | 378,707.89 | 2,603.62 | 5,689.01 | 373,018.88 | 362,872.16 | 383,464.54 |
| 91 | 10/01/2001 | 373,018.88 | 2,564.50 | 5,728.13 | 367,290.75 | 365,436.66 | 389,192.67 |
| 92 | 11/01/2001 | 367,290.75 | 2,525.12 | 5,767.51 | 361,523.24 | 367,961.78 | 394,960.18 |
| 93 | 12/01/2001 | 361,523.24 | 2,485.47 | 5,807.16 | 355,716.08 | 370,447.25 | 400,767.34 |
|  | YEAR END: 2001 | TOTALS | 32,384.00 | 67,127.56 |  |  |  |
| 94 | 1/01/2002 | 355,716.08 | 2,445.55 | 5,847.08 | 349,869.00 | 372,892.80 | 406,614.42 |
| 95 | 2/01/2002 | 349,869.00 | 2,405.35 | 5,887.28 | 343,981.72 | 375,298.15 | 412,501.70 |
| 96 | 3/01/2002 | 343,981.72 | 2,364.87 | 5,927.76 | 338,053.96 ✓ | 377,663.02 | 418,429.46 |
| 97 | 4/01/2002 | 338,053.96 | 2,324.12 | 5,968.51 | 332,085.45 | 379,987.14 | 424,397.97 |
| 98 | 5/01/2002 | 332,085.45 | 2,283.09 | 6,009.54 | 326,075.91 | 382,270.23 | 430,407.51 |
| 99 | 6/01/2002 | 326,075.91 | 2,241.77 | 6,050.86 | 320,025.05 | 384,512.00 | 436,458.37 |
| 00 | 7/01/2002 | 320,025.05 | 2,200.17 | 6,092.46 | 313,932.59 | 386,712.17 | 442,550.83 |
| 01 | 8/01/2002 | 313,932.59 | 2,158.29 | 6,134.34 | 307,798.25 | 388,870.46 | 448,685.17 |
| 02 | 9/01/2002 | 307,798.25 | 2,116.11 | 6,176.52 | 301,621.73 | 390,986.57 | 454,861.69 |
| 03 | 10/01/2002 | 301,621.73 | 2,073.65 | 6,218.98 | 295,402.75 | 393,060.22 | 461,080.67 |
| 04 | 11/01/2002 | 295,402.75 | 2,030.89 | 6,261.74 | 289,141.01 | 395,091.11 | 467,342.41 |
| 05 | 12/01/2002 | 289,141.01 | 1,987.84 | 6,304.79 | 282,836.22 | 397,078.95 | 473,647.20 |
|  | YEAR END: 2002 | TOTALS | 26,631.70 | 72,879.86 |  |  |  |
| 06 | 1/01/2003 | 282,836.22 | 1,944.50 | 6,348.13 | 276,488.09 | 399,023.45 | 479,995.33 |
| 07 | 2/01/2003 | 276,488.09 | 1,900.86 | 6,391.77 | 270,096.32 | 400,924.31 | 486,387.10 |
| 08 | 3/01/2003 | 270,096.32 | 1,856.91 | 6,435.72 | 263,660.60 | 402,781.22 | 492,822.82 |
| 09 | 4/01/2003 | 263,660.60 | 1,812.67 | 6,479.96 | 257,180.64 | 404,593.89 | 499,302.78 |
| 10 | 5/01/2003 | 257,180.64 | 1,768.12 | 6,524.51 | 250,656.13 | 406,362.01 | 505,827.29 |
| 11 | 6/01/2003 | 250,656.13 | 1,723.26 | 6,569.37 | 244,086.76 | 408,085.27 | 512,396.66 |
| 12 | 7/01/2003 | 244,086.76 | 1,678.10 | 6,614.53 | 237,472.23 | 409,763.37 | 519,011.19 |
| 13 | 8/01/2003 | 237,472.23 | 1,632.62 | 6,660.01 | 230,812.22 | 411,395.99 | 525,671.20 |
| 14 | 9/01/2003 | 230,812.22 | 1,586.83 | 6,705.80 | 224,106.42 | 412,982.82 | 532,377.00 |
| 15 | 10/01/2003 | 224,106.42 | 1,540.73 | 6,751.90 | 217,354.52 | 414,523.55 | 539,128.90 |
| 16 | 11/01/2003 | 217,354.52 | 1,494.31 | 6,798.32 | 210,556.20 | 416,017.86 | 545,927.22 |
| 17 | 12/01/2003 | 210,556.20 | 1,447.57 | 6,845.06 | 203,711.14 | 417,465.43 | 552,772.28 |
|  | YEAR END: 2003 | TOTALS | 20,386.48 | 79,125.08 |  |  |  |
|  | 1/01/2004 | 203,711.14 | 1,400.51 | 6,892.12 | 196,819.02 | 418,865.94 | 559,664.40 |
|  | 2/01/2004 | 196,819.02 | 1,353.13 | 6,939.50 | 189,879.52 | 420,219.07 | 566,603.90 |
|  | 3/01/2004 | 189,879.52 | 1,305.42 | 6,987.21 | 182,892.31 | 421,524.49 | 573,591.11 |
|  | 4/01/2004 | 182,892.31 | 1,257.38 | 7,035.25 | 175,857.06 | 422,781.87 | 580,626.36 |
|  | 5/01/2004 | 175,857.06 | 1,209.02 | 7,083.61 | 168,773.45 | 423,990.89 | 587,709.97 |
|  | 6/01/2004 | 168,773.45 | 1,160.32 | 7,132.31 | 161,641.14 | 425,151.21 | 594,842.28 |
|  | 7/01/2004 | 161,641.14 | 1,111.28 | 7,181.35 | 154,459.79 | 426,262.49 | 602,023.63 |
|  | 8/01/2004 | 154,459.79 | 1,061.91 | 7,230.72 | 147,229.07 | 427,324.40 | 609,254.35 |
|  | 9/01/2004 | 147,229.07 | 1,012.20 | 7,280.43 | 139,948.64 | 428,336.60 | 616,534.78 |
|  | 10/01/2004 | 139,948.64 | 962.15 | 7,330.48 | 132,618.16 | 429,298.75 | 623,865.26 |

Case 1:01-cv-00142   Document 15   Filed in TXSD on 10/30/2001   Page 31 of 35

AMORTIZATION SCHEDULE

'IDOR =                              BORROWER =                          LOAN # =

IN DATE =  3/01/1994    AMOUNT OF LOAN =    756,483.42   INTEREST RATE = 8.25%   MONTHLY PAYMENT =   8,292.63

| 'MENT MMBER | DUE DATE | BEGINNING BALANCE | INTEREST PAYMENT | PRINCIPAL PAYMENT | ENDING BALANCE | INTEREST TO DATE | PRINCIPAL TO DATE |
|---|---|---|---|---|---|---|---|
| 128 | 11/01/2004 | 132,618.16 | 911.75 | 7,380.88 | 125,237.28 | 430,210.50 | 631,246.14 |
| 129 | 12/01/2004 | 125,237.28 | 861.01 | 7,431.62 | 117,805.66 | 431,071.51 | 638,677.76 |
|  | YEAR END: 2004 | TOTALS | 13,606.08 | 85,905.48 |  |  |  |
|  |  |  |  |  |  |  |  |
| 130 | 1/01/2005 | 117,805.66 | 809.91 | 7,482.72 | 110,322.94 | 431,881.42 | 646,160.48 |
| 131 | 2/01/2005 | 110,322.94 | 758.47 | 7,534.16 | 102,788.78 | 432,639.89 | 653,694.64 |
| 132 | 3/01/2005 | 102,788.78 | 706.67 | 7,585.96 | 95,202.82 | 433,346.56 | 661,280.60 |
| 133 | 4/01/2005 | 95,202.82 | 654.52 | 7,638.11 | 87,564.71 | 434,001.08 | 668,918.71 |
| 134 | 5/01/2005 | 87,564.71 | 602.01 | 7,690.62 | 79,874.09 | 434,603.09 | 676,609.33 |
| 135 | 6/01/2005 | 79,874.09 | 549.13 | 7,743.50 | 72,130.59 | 435,152.22 | 684,352.83 |
| 136 | 7/01/2005 | 72,130.59 | 495.90 | 7,796.73 | 64,333.86 | 435,648.12 | 692,149.56 |
| 137 | 8/01/2005 | 64,333.86 | 442.30 | 7,850.33 | 56,483.53 | 436,090.42 | 699,999.89 |
| 138 | 9/01/2005 | 56,483.53 | 388.32 | 7,904.31 | 48,579.22 | 436,478.74 | 707,904.20 |
| 139 | 10/01/2005 | 48,579.22 | 333.98 | 7,958.65 | 40,620.57 | 436,812.72 | 715,862.85 |
| 140 | 11/01/2005 | 40,620.57 | 279.27 | 8,013.36 | 32,607.21 | 437,091.99 | 723,876.21 |
| 141 | 12/01/2005 | 32,607.21 | 224.17 | 8,068.46 | 24,538.75 | 437,316.16 | 731,944.67 |
|  | YEAR END: 2005 | TOTALS | 6,244.65 | 93,266.91 |  |  |  |
|  |  |  |  |  |  |  |  |
| 142 | 1/01/2006 | 24,538.75 | 168.70 | 8,123.93 | 16,414.82 | 437,484.86 | 740,068.60 |
| 143 | 2/01/2006 | 16,414.82 | 112.85 | 8,179.78 | 8,235.04 | 437,597.71 | 748,248.38 |
| 144 | 3/01/2006 | 8,235.04 | 56.62 | 8,235.04 | .00 | 437,654.33 | 756,483.42 |
|  | YEAR END: 2006 | TOTALS | 338.17 | 24,538.75 |  |  |  |

' PAYMENT AMOUNT =        8,291.66


L PAYMENTS =       1,194,137.75


L INTEREST PAID =       437,654.33


L PRINCIPAL PAID  =       756,483.42


NCE REMAINING =            .00

## TRANSFER OF NOTES AND SECURITY INTERESTS

Date:  August 3, 1992

Holder of Notes and Security Interests:  The San Benito Bank & Trust Company

Holder's Mailing Address:  P.O. Drawer 1911, San Benito, Cameron County, Texas 78586

Transferee:  The Export-Import Bank of the United States

Transferee's Address:      811 Vermont Avenue, N.W.
                           Washington D.C. 20571

**NOTES**

NOTE 1:

    Date:  November 30, 1991

    Original Amount:  One Million and No/100 Dollars
    ($1,000,000.00)

    Maker:  Sort-Rite International, Inc.

    Guarantor:  Shirley Metzger

    Payee:  The San Benito Bank & Trust Company

    Unpaid Principal and Interest as of April 22, 1992: $883,008.51 principal, $38,323.49 interest.  Interest continues to accrue on the Note after April 22, 1992, at the rate indicated therein.

    Date of Maturity:  December 31, 1991.

Note #1 was executed in renewal and extension of the following described note:

NOTE 2:

    Date:      October 30, 1991

    Original Amount:  One Million and No/100 Dollars
    ($1,000,000.00)

    Maker:  Sort-Rite International, Inc.

    Guarantor:  Shirley Metzger

    Payee:  The San Benito Bank & Trust Company

Date of Maturity:  November 30, 1991

Note #2 was executed in renewal and extension of the following described note:

NOTE 3:

Date:        August 31, 1991

Original Amount:  One Million and No/100 Dollars
                  ($1,000,000.00)

Maker:  Sort-Rite International, Inc.

Guarantor:  Shirley Metzger

Payee:  The San Benito Bank & Trust Company

Date of Maturity:  October 30, 1991

Note #3 was executed in renewal and extension of the following described note:

NOTE 4:

Date:        August 31, 1990

Original Amount:  One Million and No/100 Dollars
                  ($1,000,000.00)

Maker:  Sort-Rite International, Inc.

Guarantor:  Shirley Metzger

Payee:  The San Benito Bank & Trust Company

Date of Maturity:  August 31, 1991

Notes and Security Interests are described in the following documents:

1.   Security Agreement dated November 30, 1991, executed by and between Sort-Rite International, Inc., Debtor, and The San Benito Bank & Trust Company, Secured Party.

2.   Security Agreement dated October 30, 1991, executed by and between Sort-Rite International, Inc., Debtor, and The San Benito Bank & Trust Company, Secured Party.

3.   Security Agreement dated August 31, 1990, executed by and between Sort-Rite International, Inc., Debtor, and The San Benito Bank & Trust Company, Secured Party.

Property Subject to Security Interests:  See attached Exhibit "A"

The security interests are perfected by financing statement #89-196278 filed in the office of the Texas Secretary of State on August 28, 1989.

For value received Holder of the notes and security interests transfers them to Transferee, without recourse, and represents that the unpaid principal and interest on the notes are correctly stated.

When the context requires, singular nouns and pronouns include the plural.

THE SAN BENITO BANK & TRUST COMPANY

By: _____
David Wiechering,
Senior Vice-President

THE STATE OF TEXAS     )
                        )
COUNTY OF CAMERON      )

    This instrument was acknowledged before me on this the 3rd day of August, A.D. 1992, by the said David Wiechering, Senior Vice-President of The San Benito Bank & Trust Company, a state banking association, on behalf of said state banking association.

VIRGINIA PATRICK
Notary Public
STATE OF TEXAS
My Comm. Expires
OCT 09, 1995

_____
Notary Public in and for the
State of Texas

EXHIBIT "A"

Any and all inventory, work in process, finished goods, and accounts receivable now owned or hereafter acquired by Debtor being more specifically described as follows:

All of Debtor's accounts, contract rights, general intangibles, notes, drafts, acceptances, instruments and chattel paper now owned by Debtor, as well as any and all products thereof, including any and all letters of credit obtained in connection with same, or in connection with sales of inventory, and in and to all returned or repossessed goods arising from or relating to any account or other proceeds goods arising from or relating to any account or other proceeds of any sale or other disposition of inventory. All of Debtor's inventory, including all goods, merchandise, raw materials, goods in process, finished goods and other tangible personal property now owned or hereafter acquired by Debtor and held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in Debtor's business, and all additions and accessions thereto, and in accounts with respect thereto and proceeds thereof.

TRANSFER OF NOTES AND SECURITY INTERESTS                                    PAGE -4-