**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

United States District Court
Southern District of Texas
FILED

JUN 2 4 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JEFFERSON PILOT LIFE INSURANCE | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-01-142 |
| | § | |
| SORT-RITE INTERNATIONAL, INC., | § | |
| et al. | § | |

## SORT-RITE INTERNATIONAL, INC.'S RESPONSE TO LETICIA PINO, DEBRA FINCH AND KATHERINE METZGER'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

SORT-RITE INTERNATIONAL, INC.,  files this its Response to Letitia Pino, Debra Finch and Katherine Metzger's  Motion for Summary Judgment and in support thereof, would respectfully show the Court as follows:

### A. Summary Judgment Evidence and Pleadings Relied Upon.

In Response  Sort-Rite International, Inc. (*hereinafter "Sort-Rite"*) relies upon the following summary judgment evidence and pleadings:

1.     Jefferson Pilot Life Insurance Company's Original Complaint for Interpleader.

2.     Stipulation of Dismissal with Prejudice of Claims by and Against Jefferson Pilot.

---

Sort-Rite's Response to Defendants' MSJ/3206.001                                Page 1

3.    Sort-Rite International Inc.'s Motion for Judgment Pursuant to Rule 12(b)(6).

4.    Sort-Rite International Inc.'s Motion for Summary Judgment and Memorandum of Authorities in Support Thereof together with all Exhibits and Summary Judgment Evidence attached thereto.

5.    Exhibits 1, 2 and 3 attached to this Response and the argument and authorities contained herein.

## B.    Summary of the Argument.

Pino, Metzger and Finch's (collectively hereinafter sometimes referred to as *"Pino"*) Motion for Summary Judgment should be denied for the reason that as a matter of law they are not entitled to the Employer's Portion of the Life Insurance Policy Proceeds. On the contrary, as argued in Sort-Rite's own Motion for Summary Judgment, the Employer's Portion of the Policy Proceeds should be paid to Sort-Rite. Pino's argument that Sort-Rite relinquished all claims to the policy proceeds as a result of the Bankruptcy fails because the policy was not executory in nature. Even if it was, rejection merely constitutes a material breach which the non-debtor party may at its option act upon. Jefferson Pilot did not act upon or consider the contract with Sort-Rite in breach since it paid the policy proceeds into the registry of the Court through this Interpleader action and has fully performed. Sort-Rite is not judicially estopped from claiming an interest in the policy proceeds since the Pino's characterization of the testimony at the Confirmation

---

Hearing is flatly wrong. The testimony disclosed the existence of the policy and indeed Sort-Rite during the bankruptcy continued to make premium payments. Pino's parties' argument that Sort-Rite had no insurable interest is also wrong because it fails to recognize the effect of **Tex.Ins. Code Sec. 3.49-1** which allows the insured to name any beneficiary. Shirley Metzger named Sort-Rite which "shall at all times thereafter have an insurable interest." Finally, Shirley Metzger's 1995 Change of Beneficiary Form could only and did only change her individual portion of the policy.

### C. Objections to Pino's Unsupported Summary Judgment Allegations.

Factual assertions made in support of a Motion for Summary Judgment should be supported by affidavit or other summary judgment evidence. Pino's Motion contains numerous factual allegations which are wholly unsupported by the summary judgment evidence attached to the Motion and Sort-Rite objects. Sort-Rite's objections include but are not limited to the following factual allegations which are unsupported by competent summary judgment evidence: Paragraph XI except for the factual assertion that Shirley Metzger died in March 2001; Paragraphs XII, XIII, XIV; the last four sentences of Paragraph XVI; Paragraphs XXXV, XXXVII, XL, ; the first sentence of XLII; Paragraphs XLIII, XLIV, XLV, LIII, LIV and LVI.

### D. Jefferson Pilot Life Insurance Company Did Not Consider the Policy Contract Rejected.

Obviously, Jefferson Pilot Life Insurance Company did not consider the Life Insurance Contract rejected or Sort-Rite's interest terminated; otherwise, the company would not have deposited the monies in the registry of the Court and the nature of the litigation would be altogether different. Nevertheless, Pino asserts that because Sort-Rite's Plan of Reorganization rejects any unassumed executory contracts that Sort-Rite no longer has an interest in the policy. Even if Sort-Rite had elected to reject the policy, which is denied, that would not necessarily relieve Jefferson Pilot's duty to perform and pay. In *In re CVA General Contractor's Inc.* 267 B.R. 773 (W.D.Texas 2001), Judge Clark made clear that rejection does not cause a contract to "cease to exist." Citing *Matter of Austin Development, Inc.,* 19 F.3d 1077 (5th Cir. 1994), the Bankruptcy Court noted that the Fifth Circuit has held "that the rejection of an executory contract whether by intention or by operation of law, does not terminate or forfeit the non-debtor parties' rights under the contract." **Id at 1082.** Said the Court,

> throughout [Bankruptcy Code Section] 365, rejection refers to the debtor's decision not to assume a burdensome lease or executory contract. Section 365(g) states that rejection of a [contract or] or lease "constitutes a breach" except as provided in subjections (h)(2) and (i)(2). Three circuits, including this one, have held that this language does not mean that the executory contract or lease has been terminated, but only that a breach has been deemed to occur. *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir.1993) ("to assert that

---

a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"); *In re Modern Textile, Inc., 900 F.2d 1184, 1191 (8th Cir. 1990; Leasing Service Corp. v. First Tennessee Bank Nat'l Ass'n, 826 F. 2d 434, 436-37 (6th Cir. 1987.)*

*Id. at 1082.* The Bankruptcy Court went on to note that "while only the trustee may reject a contract, termination of the contract can only occur at the option of the non-debtor party to that contract." *In Re CVA General Contractors, Inc., supra at 777.* Thus, since Jefferson Pilot did not attempt at its option to avoid or terminate its obligation under the Policy, this point is moot.

Nonetheless, Sort-Rite is compelled to point out that in fact it continued to make premium payments even after the filing of the 2000 bankruptcy as is evidenced by the premium payment schedule attached to *SJX-3* of Sort-Rite's Motion for Summary Judgment. That exhibit attaches the premium payment schedules as Exhibits 1 and 2 to relevant portions of James Richard Kettenring's deposition. Sort-Rite's premium payments were always sporadic as evidenced by the schedule including two payments in January 2001. The reason for this in part is that there was not a "set Premium schedule and set premium amount." *See Response Exhibit (RX-1) at page 24, line 19 through page 25 line 2 of J. Kettering's Deposition.* The policy in question was a "universal life policy" with a flexible-premium adjustable life/death benefit. The cost of the insurance fees and expenses come out on a monthly basis, and there is no set premium schedule. If a

---

premium is not paid, those fees and expenses and costs of insurance can come out of the accumulation value. *See RX-1 at page 24, line 10 through page 25, line 6.*

It is questionable as to whether, under these circumstances, the policy could even be considered an executory contract. In *In re Placid Oil Company*, **72 B.R. 135 (N.D. Texas 1987),** the Bankruptcy Court analyzed a Premium Agreement for insurance and held that it was not an executory contract where the only duty under the premium agreement was to pay money. **Id at 138.** Citing *In re Gladding*, **22 B.R. 632 (Bankr. D. Mass. 1982),** it was noted that the **Gladding** court considered a retrospective premium arrangement where the premium was not ascertainable until the insurer had paid all insured claims for a given policy year or until the parties had agreed to close the books on a policy year. The debtor was to make interim payments based upon estimates of what the final premium would be. In commenting on the respective rights of the parties, the **Gladding** court said:

> [A] debtor-insured retains his present interest in the policies whether they be assumed or not . . . . There is no forfeiture of past benefits. Likewise, the insurance company gains nothing by assumption of the contract, except the right to its pre-petition debt paid ahead of general claims.

**Id. at 636.** Similarly, Sort-Rite retained its then present interest in the policy regardless of formal assumption since Jefferson-Pilot was bound to perform on the policy, the agreed

---

premiums having already been paid sufficiently for the policy to be in force at the time of Shirley Metzger's death.

Clearly, Pino's arguments regarding executory contract rejection are very far off base and plainly incorrect. And so it is with their argument on "judicial estoppel."

### E. There is No Inconsistency in Positions Which Support a Claim of Judicial Estoppel.

Pino argues that Sort-Rite was somehow inconsistent or misleading in its testimony at the confirmation hearing regarding the existence of the life insurance policy. She relies on the question of a creditor's attorney, Mr. Walsh, rather than the answer given by the Debtor's attorney, Mr. Mackey. Mr. Walsh wanted to know what Shirley Metzger's compensation package was to be and whether there was any life insurance. First, when Walsh mentions "life insurance" at page 91, line 10 of the Transcript attached to Pino's Motion at Exhibit 1, he is not asking Sort-Rite a direct question. He is having a conversation with the Judge. Second, Sort-Rite's lawyer Mr. Mackey later does state that there is a "whole-life" policy insuring Ms. Metzger but that it has little value. *See Page 104, lines 17-25 of the Pino Parties Exhibit 1.* In fact, as was noted in the Original Complaint for Interpleader at paragraph 13, there was an outstanding policy loan of $13,406.80 at the time of Ms. Metzger's death. The summary judgment evidence simply does not establish anything misleading about this policy. Quite the opposite, its existence was unquestionably disclosed.

### F. <u>Sort-Rite Had an Insurable Interest in the Life of Shirley Metzger.</u>

Pino argues that Sort-Rite had no insurable interest in the life of Shirley Metzger and is therefore not entitled to any benefits. She is wrong according to "black-letter" law. **Tex.Ins.Code Sec. 3.49-1** provides that if the insured applies for the policy and names a beneficiary, that beneficiary shall thereafter at all times have an insurable interest. The argument and authority on this issue is contained on page 10, paragraph 5.03 of Sort-Rite's Motion for Summary Judgment and is incorporated herein. Therefore it shall not be repeated. Section 3.49-1 is attached to this Response as *RX-2*. Dorsaneo's comment from the TEXAS LITIGATION GUIDE concurring with this interpretation is likewise attached as *RX-3*.

Pino cites several cases in support of her insurable interest arguments which are plainly not applicable to the facts of this case. *Still Wagoner v. Travelers Insurance Company*, 979 S.W.2d 354 (Tex.App.-Tyler 1998) falls outside the provisions of Section 3.49-1 since, in that case, the employer purchased the life insurance on its employees without their knowledge. The insured did not name its employer as the beneficiary as did Metzger. Likewise, *Tamez v. Certain Underwriters at Lloyds London, International Accident Facilities, Inc.*, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998 also involved a situation where the employer simply purchased insurance on the lives of its employees without their involvement in the application. Finally, *Little v. X-pert Corp.*,

867 S.W.2d 15 (Tex.1993) turned not upon a determination of insurable interest but rather upon a contractual arrangement between the insured and the corporation.    None of these cases is  applicable to the facts of the case at bar and are easily distinguished.   But even under the common law, Sort-Rite would maintain an insurable interest since at the time of her death, Shirley Metzger was employed by Sort-Rite International, Inc. and because her knowledge of the industry and  her contacts in the sales side of the business were essential to the success of the business.   *See Pino's exhibit number "1", partial transcript of hearing, page 49, lines 11 through 17.*

### G. Sort-Rite is the Beneficiary of the Employer's Portion of the Policy.

Sort-Rite has set forth the summary judgment evidence and legal authority for why it is entitled to the Employer's portion of the policy proceeds in its own Motion for Summary Judgment, the argument for which is incorporated herein by reference and shall not be repeated in its entirety. Jefferson Pilot considered the 1995 Change of Beneficiary as one only to Shirley Metzger's individual portion of the policy.   *SJX "7"* attached to Sort-Rite's Motion for Summary Judgment paragraph 4.   Shirley Metzger continued to identify Sort-Rite as a beneficiary of the policy after 1995.   *SJX "10"* attached to Sort-Rite's Motion for Summary Judgment.   Metzger did not comply with the requirements necessary to effect a change in the corporation/employer's portion of the policy by having another officer sign a change of beneficiary form with her. *Exhibit A-2 attached to SJX*

---

"7". After Sort-Rite's paying all of the premiums on the policy, it would violate the provisions of the split dollar endorsement agreement prohibiting actions against the interest of either Sort-Rite or Metzger if she unilaterally and without consideration gave away Sort-Rite's interest to a personal friend.   See Paragraph IV of the Split Dollar Endorsement Agreement attached as *SJX "2"* to Sort-Rite's Motion for Summary Judgment.

## H.  Summary

The Life Insurance Policy in question is not an executory contract that could be rejected under the circumstances of premiums paid current.  Even if it was an executory contract, the evidence demonstrates assumption by continued payments of premiums after the filing of the bankruptcy.  It was Jefferson-Pilot's option to perform on the policy which it did by tendering the policy benefits to this Court.  Sort-Rite at all times maintained an insurable interest since Metzger herself named Sort-Rite as the beneficiary.  There was never an attempt by Sort-Rite to deny the existence of the policy in the Bankruptcy Plan Confirmation Hearing and thus it is not judicially estopped from its position in this suit. Sort-Rite is entitled to the employer's portion of the policy proceeds as a matter of law. Sort-Rite objects to the largely irrelevant and completely unsupported factual assertions made in the Pino Parties Motion.

WHEREFORE, PREMISES CONSIDERED,  SORT-RITE INTERNATIONAL, INC., respectfully requests that this Court deny  Pino, Finch and Metzger's  Motion for

---

Summary Judgment, grant Sort-Rite International Inc.'s Motion for Summary Judgment and for such other and further relief as to which Defendant Sort-Rite may show itself justly entitled.

OF COUNSEL:

STAPLETON, CURTIS &
    BOSWELL, L.L.P.

_____

Chris Boswell
Attorney in Charge
State Bar No. 02683300
Southern District of Texas
Admissions Id. No. 1256
515 East Harrison, Suite "A" (78550)
Post Office Box 2644
Harlingen, Texas 78551
Telephone: (956) 428-9191
Telecopier: (956) 428-9283

Attorney for Sort-Rite International, Inc.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the ___24th___ day of June, 2002, a true and correct copy of Sort-Rite's Responses to Defendants Pino, Finch & Metzger's Motion for Summary Judgment was forwarded to counsel for Defendants Pino, Finch & Metzger, Ms. Constance Singleton, at 215 Bayland Ave., Houston, Texas 77009 via Certified Mail, Return Receipt Requested #7001 2510 0006 8915 7457.

_____

Chris Boswell

STATE OF TEXAS          }
                        }          VERIFICATION
COUNTY OF CAMERON       }

**BEFORE ME,** the undersigned official, on this day appeared CHRIS BOSWELL, who is personally known to me, and first being duly sworn according to law upon his oath deposed and said:

> My name is CHRIS BOSWELL. I am over eighteen years of age and have never been convicted of a felony or crime involving moral turpitude. I am fully competent, qualified and authorized to make this verification. I have personal knowledge of the matters set forth herein. The excerpts to the deposition of James Richard Kettenring attached to the Response to the Motion for Summary Judgment as ***R-X "1"*** , respectively, are authentic and otherwise genuine copies of the originals.

Further affiant sayeth not.

_____
CHRIS BOSWELL

**SUBSCRIBED AND SWORN** to before me by the said CHRIS BOSWELL, affiant, on the __24th__ day of June, 2002, to certify which witness my hand and official seal.



HILDA LOPEZ
Notary Public, State of Texas
My Commission Expires
September 14, 2005

_____
Notary Public, State of Texas

---

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

Case No. B-01-142

JEFFERSON-PILOT LIFE       )
INSURANCE COMPANY,         )
                           )
            Plaintiff,     )
                           )
      vs.                  )
                           )
SORT-RITE INTERNATIONAL,   )
ET AL.,                    )
                           )
            Defendants.    )

COPY

———————————————————————————————

DEPOSITION

OF

**JAMES RICHARD KETTENRING**

———————————————————————————————

————————————
Greensboro, North Carolina
May 3, 2002
10:52 a.m.
————————————

*R-X "1"*

Court Reporter:  Cindy A. Fletcher

**ACCURATE REPORTING SERVICE, A SPHERION COMPANY (336) 373-0985**

J. KETTENRING          MAY 3, 2002          PAGE 2

1                  TABLE OF CONTENTS

2                                                    PAGE

3    EXHIBIT INDEX . . . . . . . . . . . . . . . .   3

4    APPEARANCES . . . . . . . . . . . . . . . .    4

5    STIPULATIONS . . . . . . . . . . . . . . .     5

6    EXAMINATION

7          By Ms. Singleton    . . . . . . . . . .   6

8          By Mr. Boswell    . . . . . . . . . .    30

9          By Ms. Singleton    . . . . . . . . . .  38

10         By Mr. Boswell    . . . . . . . . . .    42

11   CERTIFICATE OF WITNESS . . . . . . . . . .     43

12   CERTIFICATE OF REPORTER . . . . . . . . . .    44

13   ERRATA SHEET  . . . . . . . . . . . . . . .    45

14

15

16

17

18

19

20

21

22

23   Reporter's Note:  This transcript contains quoted

24   material.  Such material is reproduced as read or

25   quoted by the speaker.

**ACCURATE REPORTING SERVICE, A SPHERION COMPANY (336) 373-0985**

J. KETTENRING                    MAY 3, 2002                    PAGE 3

1                        EXHIBIT INDEX

2                                                              PAGE

3    Number 1      4/29/02 Session - Passport;

4                  Premium Payment Information    . . . . 10

5    Number 2      Premium Breakdown       . . . . . . . . 15

6    Number 3      Account Spreadsheet      . . . . . . . 17

7    Number 4      12/1/98 Statement of Account   . . . . 22

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        <u>APPEARANCES</u>

2    APPEARING ON BEHALF OF THE PLAINTIFF JEFFERSON-PILOT

3    LIFE INSURANCE COMPANY:

4            Carl D. Semmler, J.D.

5            Assistant Vice President and

6            Associate Counsel

7            Jefferson-Pilot Life Insurance Company

8            101 North Greene Street

9            Post Office Box 21008 (27420)

10           Greensboro, North Carolina  27401

11           Telephone:  (336) 691-3369

12   APPEARING ON BEHALF OF THE DEFENDANTS LETICIA PINO,

13   KATHERINE METZGER AND DEBRA METZGER FINCH:

14           Constance Y. Singleton, Esq.

15           Attorney at Law

16           215 Bayland Avenue

17           Houston, Texas  77009

18           Telephone:  (281) 687-0100

19   APPEARING ON BEHALF OF THE DEFENDANT SORT-RITE

20   INTERNATIONAL, INC.:

21           Stapleton, Curtis & Boswell, by

22           Chris Boswell, Esq.

23           515 East Harrison Street, Suite A

24           Harlingen, Texas  78551

25           Telephone:  (956) 428-9191

## STIPULATIONS

It is hereby stipulated and agreed between the parties to this action, through their respective counsel of record, as follows:

1.    The deposition of JAMES RICHARD KETTENRING may be taken on Friday, May 3, 2002, beginning at 10:52 a.m., in the offices of Jefferson-Pilot Life Insurance Company; 101 North Greene Street; Greensboro, North Carolina, before Cindy A. Fletcher, Court Reporter and Notary Public.

2.    Said deposition shall be taken in accordance with the Federal Rules of Civil Procedure.

3.    The sealed original of this deposition will be mailed first-class postage or hand delivered to Constance Y. Singleton, Esq.; Attorney at Law; 215 Bayland Avenue; Houston, Texas, 77009; and notice of filing is hereby waived.

4.    The reading and signing of the deposition are not waived.

*********

1   Thereupon:

2                JAMES RICHARD KETTENRING

3   being first duly sworn in the above cause, was

4   examined and testified under oath as follows:

5                EXAMINATION BY MS. SINGLETON

6          Q.   Well, sir, my name is Constance

7   Singleton, and I represent Leticia Pino, Katherine

8   Metzger, and Debra Finch in a lawsuit that involves a

9   life-insurance policy on the life of Shirley Metzger.

10               Can you give us your full name.

11         A.   James Richard Kettenring.

12         Q.   Okay.  And can you spell that last name

13  for us.

14         A.   K-e-t-t-e-n-r-i-n-g.

15         Q.   Okay.  What is your job with

16  Jefferson-Pilot?

17         A.   Manager of customer service.

18         Q.   Okay.  And how long have you been manager

19  of customer service?

20         A.   With JP it's been, in Greensboro, one

21  year.

22         Q.   Okay.  Have you ever had your deposition

23  taken before?

24         A.   Yes, I have.

25         Q.   Okay.  So you understand what a

J. KETTENRING          MAY 3, 2002                PAGE 44

1          <u>CERTIFICATE OF REPORTER</u>

2

3          I, CINDY A. FLETCHER, Court Reporter and

4   a Notary Public, duly appointed and qualified in and

5   for the State of North Carolina at large, do hereby

6   certify:

7          That JAMES RICHARD KETTENRING was by me

8   duly sworn to testify concerning the matters in

9   controversy in this case and was thereupon examined;

10          That said examination was reported by me

11   and the foregoing transcript is a true record of the

12   testimony given by the witness to the best of my

13   knowledge and belief;

14          That I am neither related to nor employed

15   by any of the parties or counsel employed by the

16   parties hereto, nor interested directly or indirectly

17   in the matter in controversy.

18          IN WITNESS WHEREOF, I have hereunto set

19   my hand and affixed my official seal this 6 day of

20   May 2002.

21

22

23   _____

24        Cindy A. Fletcher, Notary Public

25        My Commission Expires:  03/11/2003

1   of 12,413.76, they will equal the 19,694.31.

2       Q.   Okay.   Now, does that mean that if the

3   policy--if the premium were not made timely, that

4   that is the amount of money that was available to

5   apply against the premium or against anything?

6       A.   In a way, but you're talking about a

7   universal life policy.

8       Q.   I guess.   Is that significant to you?

9       A.   Yes.

10      Q.   Would you tell us what a universal life

11  policy is.

12      A.   It's a flexible-premium adjustable

13  life/death benefit.

14      Q.   Okay.   Well, that was certainly a lot of

15  words that probably have significance in the

16  industry, but can you tell us to the layman, what is

17  the significance of that as regards premium payments

18  and what's available for premiums?

19      A.   On a traditional, nonuniversal-life-type

20  policy, there is a set premium schedule and a set

21  premium amount.   On a universal life, it's a flexible

22  premium, and when premiums go into the contract,

23  interest is credited.   The cost of insurance fees and

24  expenses come out on a monthly basis, and there is no

25  set premium schedule.   So, if a premium is not paid,

Session - PASSPORT                                    April 29, 2002, 15:28:24

```
LPOS 201 79 JRK                      FLEXCICS    04-29-2002  15.27.14
RENT 1774 JP4038973  METZGER          INSURED * SHIRLEY JEAN METZGER

SUSPEND   OVERRIDE   IMAGE   CORRES/CHECK   DATE    BATCH
   3         N         N         N        04-29-02  1JRK

ID  FUNC   ACCT   TYPE   DUR   USE   TOT-AMOUNT    USE   NET-AMOUNT
ME   .     908     6     00         000100447.90    .   000092411.93

         USE    ACCUM-UNITS    USE   REG-PMTS   USE   OTH-PMTS   NUMBER
          .    0000000.000000   .     00085     .      00000      13

FUNC TYPE SUB     AMOUNT  FUNC TYPE SUB     AMOUNT  FUNC TYPE SUB     AMOUNT
  .   4   8   0011821.56    .   2   1   0008035.97    .   2   8   0000360.00
  .   2   9   0002160.00    .   5   1   0079456.55    .   4   9   0003835.69
  .   4   4   0001106.13    .   D   1   1484622.80    .   D   4   1484622.80
  .   3   4   0015377.20    .   2   G   0000000.00    .   2   2   0000000.00

 6 ME TRAILERS PRESENT        DISPLAY - N    NEXT - 05   NEXT SEG  13


ID96   COMMENT TRAILER PRESENT
```

EXHIBIT

_1_

Session — PASSPORT                                    April 29, 2002, 15:25:46

```
LPOS 201 79 JRK      SCREEN 1812 SUMMARY - FLEXCICS    04/29/2002  15:24:41  F2
Policy # JP4038973   252 NF Trailers   INSURED * SHIRLEY JEAN METZGER
  sued 12-01-87                                                        UL/CAL
Trl  - Tran. Ident -   Journal  Hist  Journal    As-of      Due            Financial
 #   MAJ TYP SUB BAS    Date     ID  Rev. Date    Date       Date   Status   Amount
```

| Trl # | MAJ | TYP | SUB | BAS | Journal Date | Hist ID | Journal Rev. Date | As-of Date | Due Date | Status | Financial Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 9 | 1 | 1 | 0 | 08-25-01 | 02 | | 04-01-01 | 08-25-01 | 1 | ~~526.41~~ |
| 2 | 3 | 1 | 2 | D | 08-25-01 | 01 | | 04-01-01 | 04-01-01 | 1 | ~~1~~486575.65 |
| 5 | 1 | 1 | 1 | 4 | 01-11-01 | 01 | | 01-11-01 | 01-11-01 | 1 | 1004.48 |
| 6 | 1 | 1 | 1 | 4 | 01-02-01 | 01 | | 01-02-01 | 01-02-01 | 1 | 1004.48 |
| 9 | 9 | 1 | 1 | 0 | 11-11-00 | 01 | | 12-01-00 | 11-11-00 | 1 | ~~789.61~~ |
| 11 | 1 | 1 | 1 | 4 | 10-24-00 | 01 | | 10-24-00 | 10-24-00 | 1 | 1004.48 |
| 13 | 1 | 1 | 1 | 4 | 09-25-00 | 01 | | 09-25-00 | 09-25-00 | 1 | 1004.48 |
| 15 | 1 | 1 | A | 4 | 08-12-00 | 01 | | 08-10-00 | 08-10-00 | 1 | 2008.96 |
| 25 | 9 | 1 | 1 | 0 | 11-11-99 | 01 | | 12-01-99 | 11-11-99 | 1 | ~~744.92~~ |
| 33 | 1 | 1 | 1 | 4 | 04-05-99 | 01 | | 04-05-99 | 04-05-99 | 1 | 1004.48 |
| 36 | 1 | 1 | 1 | 4 | 02-18-99 | 01 | | 02-18-99 | 02-18-99 | 1 | 1004.48 |
| 38 | 1 | 1 | 1 | 4 | 01-26-99 | 01 | | 01-26-99 | 01-26-99 | 1 | 1004.48 |
| 39 | 1 | 1 | 1 | 4 | 01-19-99 | 01 | | 01-19-99 | 01-19-99 | 1 | 1004.48 |
| 41 | 1 | 1 | A | 4 | 12-26-98 | 01 | | 12-26-98 | 12-26-98 | 1 | 2008.96 |
| 42 | 9 | 1 | 1 | 0 | 12-22-98 | 01 | | 12-21-98 | 12-22-98 | 1 | ~~742.30~~ |
| 44 | 9 | 1 | 1 | 0 | 11-11-98 | 01 | | 12-01-98 | 11-11-98 | 1 | ~~744.77~~ |
| 47 | 1 | 1 | 1 | 4 | 09-28-98 | 01 | | 09-28-98 | 09-28-98 | 1 | 9040.32 |
| 53 | 9 | 1 | 1 | 0 | 04-29-98 | 01 | | 04-29-98 | 04-29-98 | 1 | ~~12413.76~~ |

```
F1=Help      F3=Exit      F4=Initial Menu      ENTER=Next    Or jump to trailer
```

2

Session – PASSPORT                                    April 29, 2002, 15:26:03

```
LPOS 201 79 JRK        SCREEN 1812 SUMMARY - FLEXCICS    04/29/2002  15:24:59  F2
Policy # JP4038973     252 NF Trailers   INSURED * SHIRLEY JEAN METZGER
   sued 12-01-87                                                        UL/CAL
```

| Trl # | Tran. MAJ | TYP | Ident SUB | BAS | Journal Date | Hist ID | Journal Rev. Date | As-of Date | Due Date | Status | Financial Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 58 | 1 | 1 | 1 | 4 | 12-29-97 | 01 | | 12-29-97 | 12-29-97 | 1 | 1004.48 |
| 59 | 1 | 1 | 1 | 4 | 12-09-97 | 01 | | 12-08-97 | 12-08-97 | 1 | 1004.48 |
| 61 | 1 | 1 | 1 | 4 | 11-04-97 | 01 | | 11-04-97 | 11-04-97 | 1 | 1004.48 |
| 64 | 1 | 1 | 1 | 4 | 09-29-97 | 01 | | 09-29-97 | 09-29-97 | 1 | 1004.48 |
| 65 | 1 | 1 | 1 | 4 | 09-06-97 | 01 | | 09-06-97 | 09-06-97 | 1 | 1004.48 |
| 68 | 1 | 1 | 1 | 4 | 08-02-97 | 01 | | 08-02-97 | 08-02-97 | 1 | 1004.48 |
| 70 | 1 | 1 | 1 | 4 | 06-30-97 | 01 | | 06-30-97 | 06-30-97 | 1 | 1004.48 |
| 71 | 1 | 1 | 1 | 4 | 06-12-97 | 01 | | 06-12-97 | 06-12-97 | 1 | 1004.48 |
| 74 | 1 | 1 | 1 | 4 | 04-28-97 | 01 | | 04-28-97 | 04-28-97 | 1 | 1004.48 |
| 76 | 1 | 1 | 1 | 4 | 03-25-97 | 01 | | 03-25-97 | 03-25-97 | 1 | 1004.48 |
| 77 | 1 | 1 | 1 | 4 | 03-05-97 | 01 | | 03-05-97 | 03-05-97 | 1 | 1004.48 |
| 80 | 1 | 1 | 1 | 4 | 01-27-97 | 01 | | 01-27-97 | 01-27-97 | 1 | 1004.48 |
| 81 | 1 | 1 | 1 | 4 | 01-15-97 | 01 | | 01-15-97 | 01-15-97 | 1 | 1004.48 |
| 83 | 1 | 1 | 1 | 4 | 12-04-96 | 01 | | 12-04-96 | 12-04-96 | 1 | 1004.48 |
| 86 | 1 | 1 | 1 | 4 | 10-24-96 | 01 | | 10-24-96 | 10-24-96 | 1 | 1004.48 |
| 88 | 1 | 1 | 1 | 4 | 09-28-96 | 01 | | 09-28-96 | 09-28-96 | 1 | 1004.48 |
| 90 | 1 | 1 | 1 | 4 | 08-26-96 | 01 | | 08-26-96 | 08-26-96 | 1 | 1004.48 |
| 91 | 1 | 1 | 1 | 4 | 08-03-96 | 01 | | 08-03-96 | 08-03-96 | 1 | 1004.48 |

```
F1=Help      F3=Exit     F4=Initial Menu    ENTER=Next   Or jump to trailer
```

*18 C 1004 ⁴⁸  1808 04*

3

Session - PASSPORT                                    April 29, 2002, 15:26:25

```
LPOS 201 79 JRK      SCREEN 1812 SUMMARY - FLEXCICS    04/29/2002  15:25:22   F2
Policy # JP4038973   252 NF Trailers   INSURED * SHIRLEY JEAN METZGER
    sued 12-01-87                                                         UL/CAL
Trl  - Tran. Ident -  Journal   Hist  Journal     As-of      Due           Financial
 #   MAJ TYP SUB BAS   Date      ID  Rev. Date     Date       Date   Status Amount
 94   1   1   1   4   07-01-96   01              07-01-96  07-01-96    1    1004.48
 95   1   1   1   4   06-10-96   01              06-10-96  06-10-96    1    1004.48
 97   1   1   1   4   05-09-96   01              05-09-96  05-09-96    1    1004.48
100   1   1   1   4   04-01-96   01              04-01-96  04-01-96    1    1004.48
101   1   1   1   4   03-06-96   01              03-06-96  03-06-96    1    1004.48
104   1   1   1   4   01-30-96   01              01-30-96  01-30-96    1    1004.48
106   1   1   1   4   12-27-95   01              12-27-95  12-27-95    1    1004.48
108   1   1   1   4   11-28-95   01              11-28-95  11-28-95    1    1004.48
110   1   1   1   4   10-24-95   01              10-24-95  10-24-95    1    1004.48
111   1   1   1   4   10-14-95   01              10-14-95  10-14-95    1    1004.48
114   1   1   1   4   08-28-95   01              08-28-95  08-28-95    1    1004.48
116   1   1   1   4   07-31-95   01              07-31-95  07-31-95    1    1004.48
118   1   1   1   4   06-27-95   01              06-27-95  06-27-95    1    1004.48
120   1   1   1   4   05-30-95   01              05-30-95  05-30-95    1    1004.48
124   1   1   A   4   02-02-95   01              02-02-95  02-02-95    1    2008.96
129   1   1   1   4   10-27-94   01              10-27-94  10-27-94    1    1004.48
138   1   1   1   4   02-02-94   01              02-02-94  02-02-94    1    1004.48
142   1   1   1   4   11-16-93   01              11-16-93  11-16-93    1    1004.48
F1=Help     F3=Exit     F4=Initial Menu     ENTER=Next   Or jump to trailer
```

Session – PASSPORT                                    April 29, 2002, 15:27:09

```
LPOS 201 79 JRK        SCREEN 1812 SUMMARY – FLEXCICS    04/29/2002  15:26:02   F2
Policy # JP4038973     252 NF Trailers    INSURED * SHIRLEY JEAN METZGER
   sued 12-01-87                                                           UL/CAL
Trl  -  Tran. Ident -   Journal   Hist  Journal     As-of      Due            Financial
 #   MAJ TYP SUB BAS     Date      ID  Rev. Date     Date      Date    Status   Amount
144   1   1   1   4    10-31-93   01              10-31-93   10-31-93    1     1004.48
147   1   1   1   4    08-31-93   01              08-31-93   08-31-93    1     1004.48
153   1   1   1   4    03-29-93   01              03-29-93   03-29-93    1     1004.48
155   1   1   1   4    02-20-93   01              02-20-93   02-20-93    1     1004.48
158   1   1   1   4    12-07-92   01              12-07-92   12-07-92    1     1004.48
160   1   1   1   4    11-19-92   01              11-19-92   11-19-92    1     1004.48
162   1   1   1   4    10-17-92   01              10-17-92   10-17-92    1     1004.48
177   1   1   1   4    08-27-91   01              08-26-91   08-26-91    1     1004.48
178   1   1   1   4    08-26-91   01              08-26-91   08-26-91    1     1004.48
180   1   1   1   4    07-18-91   01              07-18-91   07-18-91    1     1004.48
183   1   1   1   4    05-20-91   01              05-16-91   05-16-91    1     1004.48
184   1   1   1   4    05-18-91   01              05-16-91   05-16-91    1     1004.48
185   1   1   1   4    05-16-91   01              05-16-91   05-16-91    1     1004.48
196   1   1   1   4    07-11-90   02              07-11-90   07-11-90    1     1004.48
197   1   1   1   4    07-11-90   01              07-11-90   07-11-90    1     1004.48
203   1   1   1   4    04-07-90   01              04-07-90   04-07-90    1     6026.88
206   1   1   1   4    02-24-90   01              02-23-90   02-23-90    1     1004.48
211   1   1   1   4    08-26-89   01              08-26-89   08-26-89    1     1004.48
F1=Help     F3=Exit     F4=Initial Menu      ENTER=Next   Or jump to trailer
```

Session - PASSPORT                                          April 29, 2002, 15:27:34

LPOS 201 79 JRK        SCREEN 1812 SUMMARY - FLEXCICS     04/29/2002  15:26:30  F2
Policy # JP4038973    252 NF Trailers   INSURED * SHIRLEY JEAN METZGER
   sued 12-01-87                                                            UL/CAL
Trl  - Tran. Ident -  Journal   Hist  Journal      As-of       Due            Financial
 #   MAJ TYP SUB BAS   Date      ID  Rev. Date      Date        Date   Status  Amount

| Trl # | MAJ | TYP | SUB | BAS | Journal Date | Hist ID | Journal Rev. Date | As-of Date | Due Date | Status | Financial Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 213 | 1 | 1 | 1 | 4 | 07-26-89 | 01 | | 07-26-89 | 07-26-89 | 1 | 1004.48 |
| 215 | 1 | 1 | 1 | 4 | 06-06-89 | 01 | | 06-06-89 | 06-06-89 | 1 | 1004.48 |
| 217 | 1 | 1 | 1 | 4 | 05-06-89 | 01 | | 05-06-89 | 05-06-89 | 1 | 1004.48 |
| 219 | 1 | 1 | 1 | 4 | 04-04-89 | 01 | | 04-04-89 | 04-04-89 | 1 | 1004.48 |
| 221 | 1 | 1 | 1 | 4 | 03-08-89 | 01 | | 03-08-89 | 03-08-89 | 1 | 1004.48 |
| 223 | 1 | 1 | 1 | 4 | 02-04-89 | 01 | | 02-04-89 | 02-04-89 | 1 | 1004.48 |
| 225 | 1 | 1 | 1 | 4 | 01-03-89 | 01 | | 01-03-89 | 01-03-89 | 1 | 1004.48 |
| 228 | 1 | 1 | 1 | 4 | 12-03-88 | 01 | | 12-03-88 | 12-03-88 | 1 | 1004.48 |
| 230 | 1 | 1 | 1 | 4 | 10-26-88 | 01 | | 10-25-88 | 10-25-88 | 1 | 1004.48 |
| 232 | 1 | 1 | 1 | 4 | 10-25-88 | 01 | | 10-25-88 | 10-25-88 | 1 | 1004.48 |
| 234 | 1 | 1 | 1 | 4 | 08-16-88 | 01 | | 08-16-88 | 08-16-88 | 1 | 1004.48 |
| 236 | 1 | 1 | 1 | 4 | 07-11-88 | 01 | | 07-11-88 | 07-11-88 | 1 | 1004.48 |
| 239 | 1 | 1 | 1 | 4 | 06-18-88 | 01 | | 06-18-88 | 06-18-88 | 1 | 1004.48 |
| 241 | 1 | 1 | 1 | 4 | 05-19-88 | 01 | | 05-19-88 | 05-19-88 | 1 | 1004.48 |
| 243 | 1 | 1 | 1 | 4 | 04-11-88 | 01 | | 04-11-88 | 04-11-88 | 1 | 1004.48 |
| 245 | 1 | 1 | 1 | 4 | 04-05-88 | 01 | | 04-05-88 | 04-05-88 | 1 | 1004.48 |
| 247 | 1 | 1 | 1 | 4 | 02-23-88 | 02 | | 02-23-88 | 02-23-88 | 1 | 19.35 |
| 248 | 1 | 1 | 1 | 4 | 02-23-88 | 01 | | 02-23-88 | 02-23-88 | 1 | 1004.48 |

F1=Help     F3=Exit     F4=Initial Menu     ENTER=Next   Or jump to trailer

Session - PASSPORT                                    April 29, 2002, 15:27:50

```
LPOS 201 79 JRK      SCREEN 1812 SUMMARY - FLEXCICS      04/29/2002  15:26:38  F2
Policy # JP4038973   252 NF Trailers   INSURED * SHIRLEY JEAN METZGER
    sued 12-01-87                                                    UL/CAL
Trl  - Tran. Ident -  Journal  Hist Journal     As-of        Due          Financial
 #   MAJ TYP SUB BAS    Date     ID  Rev. Date    Date        Date   Status   Amount
250   1   1   1   4   01-19-88  01              01-19-88    01-19-88    1      985.13
252   1   1   A   4   12-17-87  01              12-17-87    12-17-87    1     1004.38
```

F1=Help      F3=Exit      F4=Initial Menu      ENTER=Next      Or jump to trailer



**EXHIBIT**

2

POLICY # JP4038973
INSURED * SHIRLEY JEAN METZGER

| AS-OF DATE | DUE DATE | S T | FINANCIAL AMOUNT |
|---|---|---|---|
| 01-11-01 | 01-11-01 | 1 | 1004.48 |
| 01-02-01 | 01-02-01 | 1 | 1004.48 |
| 10-24-00 | 10-24-00 | 1 | 1004.48 |
| 09-25-00 | 09-25-00 | 1 | 1004.48 |
| 08-10-00 | 08-10-00 | 1 | 2008.96 |
| 04-05-99 | 04-05-99 | 1 | 1004.48 |
| 02-18-99 | 02-18-99 | 1 | 1004.48 |
| 01-26-99 | 01-26-99 | 1 | 1004.48 |
| 01-19-99 | 01-19-99 | 1 | 1004.48 |
| 12-26-98 | 12-26-98 | 1 | 2008.96 |
| 09-28-98 | 09-28-98 | 1 | 9040.32 |
| 12-29-97 | 12-29-97 | 1 | 1004.48 |
| 12-08-97 | 12-08-97 | 1 | 1004.48 |
| 11-04-97 | 11-04-97 | 1 | 1004.48 |
| 09-29-97 | 09-29-97 | 1 | 1004.48 |
| 09-06-97 | 09-06-97 | 1 | 1004.48 |
| 08-02-97 | 08-02-97 | 1 | 1004.48 |
| 06-30-97 | 06-30-97 | 1 | 1004.48 |
| 06-12-97 | 06-12-97 | 1 | 1004.48 |
| 04-28-97 | 04-28-97 | 1 | 1004.48 |
| 03-25-97 | 03-25-97 | 1 | 1004.48 |
| 03-05-97 | 03-05-97 | 1 | 1004.48 |
| 01-27-97 | 01-27-97 | 1 | 1004.48 |
| 01-15-97 | 01-15-97 | 1 | 1004.48 |
| 12-04-96 | 12-04-96 | 1 | 1004.48 |
| 10-24-96 | 10-24-96 | 1 | 1004.48 |
| 09-28-96 | 09-28-96 | 1 | 1004.48 |
| 08-26-96 | 08-26-96 | 1 | 1004.48 |
| 08-03-96 | 08-03-96 | 1 | 1004.48 |
| 07-01-96 | 07-01-96 | 1 | 1004.48 |
| 06-10-96 | 06-10-96 | 1 | 1004.48 |
| 05-09-96 | 05-09-96 | 1 | 1004.48 |
| 04-01-96 | 04-01-96 | 1 | 1004.48 |
| 03-06-96 | 03-06-96 | 1 | 1004.48 |
| 01-30-96 | 01-30-96 | 1 | 1004.48 |

```
            POLICY # JP4038973
  12-27-95   12-27-95   1        1004.48
  11-28-95   11-28-95   1        1004.48
  10-24-95   10-24-95   1        1004.48
  10-14-95   10-14-95   1        1004.48
  08-28-95   08-28-95   1        1004.48
  07-31-95   07-31-95   1        1004.48
  06-27-95   06-27-95   1        1004.48
  05-30-95   05-30-95   1        1004.48
  02-02-95   02-02-95   1        2008.96
  10-27-94   10-27-94   1        1004.48
  02-02-94   02-02-94   1        1004.48
  11-16-93   11-16-93   1        1004.48
  10-31-93   10-31-93   1        1004.48
  08-31-93   08-31-93   1        1004.48
  03-29-93   03-29-93   1        1004.48
  02-20-93   02-20-93   1        1004.48
  12-07-92   12-07-92   1        1004.48
  11-19-92   11-19-92   1        1004.48
  10-17-92   10-17-92   1        1004.48
  08-26-91   08-26-91   1        1004.48
  08-26-91   08-26-91   1        1004.48
  07-18-91   07-18-91   1        1004.48
  05-16-91   05-16-91   1        1004.48
  05-16-91   05-16-91   1        1004.48
  05-16-91   05-16-91   1        1004.48
  07-11-90   07-11-90   1        1004.48
  07-11-90   07-11-90   1        1004.48
  04-07-90   04-07-90   1        6026.88
  02-23-90   02-23-90   1        1004.48
  08-26-89   08-26-89   1        1004.48
  07-26-89   07-26-89   1        1004.48
  06-06-89   06-06-89   1        1004.48
  05-06-89   05-06-89   1        1004.48
  04-04-89   04-04-89   1        1004.48
  03-08-89   03-08-89   1        1004.48
  02-04-89   02-04-89   1        1004.48
```

```
        POLICY # JP4038973
01-03-89  01-03-89    1        1004.48
12-03-88  12-03-88    1        1004.48
10-25-88  10-25-88    1        1004.48
10-25-88  10-25-88    1        1004.48
08-16-88  08-16-88    1        1004.48
07-11-88  07-11-88    1        1004.48
06-18-88  06-18-88    1        1004.48
05-19-88  05-19-88    1        1004.48
04-11-88  04-11-88    1        1004.48
04-05-88  04-05-88    1        1004.48
02-23-88  02-23-88    1          19.35
02-23-88  02-23-88    1        1004.48
01-19-88  01-19-88    1         985.13
12-17-87  12-17-87    1        1004.38
```

STAPLETON & WHITTINGTON

## Notes of Decisions

Preemption  ½
Vesting  14

---

### ½. Preemption

ERISA did not preempt state law undue influence claim by insured's minor children against insured's fiancee, for causing insured to change beneficiary under group life plan two days before his death; supremacy of federal statutory law under ERISA would yield to state when necessary to see that crime did not pay. Manahan v. Meyer (App. 1 Dist. 1993) 862 S.W.2d 130, rehearing denied, writ denied, rehearing of writ of error overruled.

State statutory claim for improper claims processing was preempted by ERISA, even assuming that statute regulated business of insurance within meaning of ERISA saving clause, because statute provided remedies that were not available under ERISA. Manahan v. Meyer (App. 1 Dist. 1993) 862 S.W.2d 130, rehearing denied, writ denied, rehearing of writ of error overruled.

### 1. Construction and application

Brown v. Lee (Civ.App. 1962) 362 S.W.2d 381, [main volume] error granted, reversed 371 S.W.2d 694.

### 3. Notice of adverse claim

Any constructive notice that life insurer received regarding divorce of insured and named beneficiary upon receipt of copy of divorce decree did not satisfy requirements necessary to hold it liable for subsequent payment of proceeds to named beneficiary upon insured's death; both Family Code and Insurance Code unequivocally discharged insurer from liability to alternate beneficiaries or estate in absence of receipt of it by notice from interested person that beneficiary designation was not effective or of receipt by it of notice of adverse claim. Hunt v. Jefferson-Pilot Life Ins. Co. (App. 2 Dist. 1995) 900 S.W.2d 453, rehearing overruled, writ denied.

### 14. Vesting

Corporation's interest in life insurance proceeds paid to corporation upon officer's death vested upon officer's death, and officer's estate was entitled to recover officer's share of proceeds as of that date, even though check for proceeds was not actually received until three months after officer's death. Francis v. Beaudry (App. 5 Dist. 1987) 733 S.W.2d 331, ref. n.r.e..

## Art. 3.49–1.  Life Insurance; Designated Beneficiaries or Owners; Insurable Interest

### Designation of Beneficiaries or Owners in Application

Sec. 1.  Any person of legal age may apply for insurance on his life in any legal reserve or mutual assessment life insurance company and in such application designate in writing any person, persons, partnership, association, corporation or other legal entity, or any combination thereof, as the beneficiary or beneficiaries, or the absolute or partial owner or owners, or both beneficiary and owner, of any policy or policies issued in connection with such application; and with respect to any such policy or policies any such beneficiary or owner so designated shall at all times thereafter have an insurable interest in the life of such person, except as provided in Section 4 of this Act.

### Designation of Beneficiaries or Owners in Existing or Future Policies

Sec. 2.  Any person of legal age whose life is insured under any existing or future policy of insurance by any legal reserve or mutual assessment life insurance company may, in the manner and to the extent permitted by the policy, designate in writing as the beneficiary or beneficiaries thereof any person, persons, partnership, association, corporation or other legal entity, or any combination thereof, and in addition, in any manner and to any extent not prohibited by the terms of the policy, may transfer or assign in writing any such policy or any interest, benefit, right or title therein to any person, persons, partnership, association, corporation or other legal entity, or any combination thereof, and with respect to any such policy any such beneficiary, transferee or assignee shall at all times thereafter have an insurable interest in the life of such person, except as provided in Section 4 of this Act.

### Exception of Persons, etc., Engaged in Business of Burying Dead

Sec. 3.  Any person of legal age may consent in writing to the purchase of or the application for an individual or group insurance policy or policies issued by any legal reserve or mutual assessment life insurance company by a third party or parties and in such written document consent to or designate any person, persons, partnership, association, corporation or other legal entity, or any combination thereof, as the absolute or partial owner or owners or beneficiary, or any combination thereof, of any policy or policies issued in connection with

152

such consent or designation; and with respect to any such policy or policies any such owner or beneficiary shall at all times thereafter have an insurable interest in the life of such person, except as provided in Section 4 of this Act.

#### Consent to Purchase or Application for Policies

Sec. 4.  Notwithstanding the provisions thereof, no person, persons, partnership, association, corporation or other legal entity, or any combination thereof, directly or indirectly engaged in the business of burying the dead shall have or obtain, directly or indirectly, any insurable interest in the life of any person by virtue of Sections 1, 2, or 3 of this Act, or shall have an insurable interest in the life of any person unless such insurable interest be established under and by virtue of other applicable statutory or common law.

#### Cumulative Effect; Liberal Construction

Sec. 5.  The provisions of this Act are cumulative of existing law in Texas, statutory and otherwise, on the question of insurable interest. This Act is enacted in specific recognition of the provisions of Article 21.23 of the Texas Insurance Code, 1951, that the interest of any beneficiary in a life insurance policy is forfeited if the beneficiary is the principal or an accomplice in bringing about the death of the insured.

This Act shall be liberally construed to effectuate its purposes, and its provisions are not to be limited or restricted by previous declarations or holdings of the Courts of Texas defining the term insurable interest.

Amended by Acts 1999, 76th Leg., ch. 438, § 1, eff. Sept. 1, 1999.

### Historical and Statutory Notes

Sections 2 and 3 of Acts 1999, 76th Leg., ch. 438 provide:

"Sec. 2.  The purpose of this Act is to clarify existing law and practice as it relates to consent to the ownership of, or status as a beneficiary under, a life insurance policy. This Act is not intended to alter or modify the meaning of, or law relating to, former Section 4, Chapter 113, Acts of the 53rd Legislature, Regular Session, 1953 (Article 3.49–1, Vernon's Texas Insurance Code), as that section

existed immediately before the effective date of this Act.

"Sec. 3.  This Act takes effect September 1, 1999, and applies only to an insurance policy delivered, issued for delivery, or renewed on or after January 1, 2000.  A policy delivered, issued for delivery, or renewed before January 1, 2000, is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose."

### Cross References

Public insurance counsel, assessment of insurers for office under this article, see V.A.T.S. Insurance Code, art. 1.35B.

### Notes of Decisions

**4. Insurable interest**

United Benefit Life Ins. Co. of Omaha v. Boyd (Civ.App. 1970) 453 S.W.2d 332, [main volume] ref. n.r.e. 457 S.W.2d 893.

**5. Change of beneficiary**

Prudential Ins. Co. of America v. Burke (Civ. App. 1981) 614 S.W.2d 847, [main volume] ref. n.r.e. 621 S.W.2d 596.

Where life insurance policy did not prescribe specific method to redesignate former spouse as beneficiary, provisions of policy and state statute, requiring that beneficiary designation be in writing, were controlling. Sever v. Massachusetts Mut. Life Ins. Co. (App. 7 Dist. 1997) 944 S.W.2d 486, rehearing overruled, writ denied.

**8. Divorce**

Where insured did not document in writing his alleged intention to redesignate his former spouse as beneficiary of his life insurance policy, former spouse was not his beneficiary upon death and, in absence of designation of secondary beneficiary, policy proceeds were payable to insured's estate. Sever v. Massachusetts Mut. Life Ins. Co. (App. 7 Dist. 1997) 944 S.W.2d 486, rehearing overruled, writ denied.

Verbal statements of insured to his insurance agent, indicating that he had no desire to change his beneficiary designation of his wife after their divorce, were insufficient to support finding of substantial compliance with requirement that redesignation of former spouse after divorce be in writing. Sever v. Massachusetts Mut. Life Ins.

153

an uncomplicated delivery by caesarean section [Ins. C. Art. 21.53F §§ 2(3), 3, 4(a)—as added by Acts 1997, 75th Leg., ch. 832].

15.   HIV, AIDS, or HIV-related illnesses [Ins. C. Art. 3.51—6 § 3C; *see* Ins. C. Art. 3.70—3A(a); *see also* Health & Safety C. § 81.101(1), (2)—"HIV" and "AIDS" defined].

16.   Certain prescription drugs [Ins. C. § 21.53M].

17.   Certain benefits related to brain injury [Ins. C. Art. 21.53Q].

18.   Prescription contraceptive drugs and devices and related services, to the extent other prescription drugs and devices and related services are covered [Ins. C. Art. 21.52L].

### [5]—Coverage Issues in Group Policies: Continuous Service Clauses

Some group life, health, and accident policies require that, before an insured will be covered under a policy, the insured must have completed a certain period of "continuous service" at his or her place of employment. Such clauses are enforceable. For purposes of calculating the period of service, the first day of "service" is the day on which an employee commences the regular work for which he or she was hired [Aetna Life & Cas. Co. v. Gunn, 628 S.W.2d 758, 760 (Tex. 1982)].

## § 344.03   Proper Claimants

### [1]—Insurable Interest Requirement

#### [a]—Life Policies

##### [i]—Beneficiaries With Insurable Interests

To collect proceeds from a life insurance policy, the beneficiary must have had an "insurable interest" in the life of the insured, both when the policy was issued and when the benefits became payable [Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057, 1058 (1942)]. This requirement is based on two policy considerations: (1) that no inducement should be offered to a person to take the life of another person; and (2) that no one should be permitted to wager on the continuation of a human life [Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 360 (Tex. App.—Tyler 1998, no pet.)]. The insurable interest may arise under the common law or under provisions of the Insurance Code.

Under the common law, a beneficiary has an insurable interest in the life of the insured if the beneficiary either (1) is closely related by blood or affinity to the insured so as to want the insured to continue to live regardless of monetary considerations, (2) has a reasonable expectation of pecuniary benefits

from the insured's continued life, or (3) is a creditor of the insured [Empire
Life Ins. Co. of America v. Moody, 584 S.W.2d 855, 859 (Tex. 1979); Drane
v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057, 1058
(1942)]. However, regardless of the value of the policy, a creditor's common-law
insurable interest is limited to the loan balance at the insured's death. The
remaining proceeds belong to the insured's estate [see Stillwagoner v. Travelers
Ins. Co., 979 S.W.2d 354, 359 (Tex. App.—Tyler 1998, no pet.)].

Compared to the common law, the range of people who have an insurable
interest in another person's life is greatly expanded by Section 3.49—1 of the
Insurance Code, which has effectively eliminated the insurable interest require-
ment in most cases involving adult insureds. Under Section 3.49—1, a person
"of legal age" may (1) buy a life insurance policy on his or her own life and
designate virtually any other person or entity as the beneficiary or owner of
the policy; (2) to the extent permitted by the terms of the policy, designate
in writing virtually any other person or entity as the beneficiary of a policy
on his or her life or transfer or assign the policy or any of its benefits to any
person or legal entity; and (3) consent in writing to the purchase of insurance
on the person's life by a third party, including consent to the designation of
any person or legal entity as the owner or beneficiary of the policy [Ins. C.
Art. 3.49—1 §§ 1–3; see Ins. C. Art. 3.49—2—life insurance contracts with
minors over 14 years old]. In any of these cases, the designated owner,
beneficiary, assignee, or transferee will have an insurable interest in the life
of the insured, except that no person or entity engaged in the business of
burying the dead may obtain an insurable interest merely as a result of such
a designation [Ins. C. Art. 3.49—1 §§ 1–4]. Thus, the insurable interest
requirement is a potential problem with respect to adult insureds only when
the policy is purchased by a person other than the insured and the insured
neither designated nor consented to the designation of the beneficiary, such
as when an employer buys life insurance on the lives of its employees and
designates itself as the beneficiary [see, e.g., Tamez v. Certain Underwriters
at Lloyd's, 999 S.W.2d 12, 18 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied); Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 361–363 (Tex.
App.—Tyler 1998, no pet.)].

Corporations, partnerships, joint stock associations, and trust estates doing
business for profit have an insurable interest in the lives of their officers,
partners, and stockholders [Ins. C. Art. 3.49]. In contrast, employers do not
generally have an insurable interest in the life of an ordinary employee if the
policy was purchased by the employer, the employee neither designated nor
consented to the designation of the employer as beneficiary, and the employee
was not crucial to the operation of the business [Tamez v. Certain Underwriters
at Lloyds's, 999 S.W.2d 12, 18 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied); Sillwagoner v. Travelers Ins. Co, 979 S.W.2d 354, 361–363 (Tex.

App.—Tyler 1998, no pet.); *see also* Ins. C. Art. 3.49—1]. The fact that the proceeds of the policy may be used by an employer who does not subscribe to workers' compensation to pay benefits or defend against liability to the employee's heirs and estate does not give the employer an insurable interest [Tamez v. Certain Underwriters at Lloyd's, 999 S.W.2d 12, 18–19 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 362–363 (Tex. App.—Tyler 1998, no pet.)].

Religious, eleemosynary, charitable, and benevolent institutions and undertakings have an insurable interest in the life of any individual insured under a policy naming the institution or undertaking as a beneficiary [Ins. C. Art. 3.49].

Finally, a member of a fraternal benefit society may name anyone as a beneficiary of a life insurance policy issued by the society, subject only to the laws of the society [*see* Ins. C. Arts. 10.04, 10.12—1(a); *see also* Allen v. Brewster, 142 Tex. 127, 176 S.W.2d 311, 312 (1943)].

### [ii]—Enforcement of Insurable Interest Requirement

Any interested party other than the insurer may raise the issue of the designated beneficiary's lack of an insurable interest in the insured's life [Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 358 (Tex. App.—Tyler 1998, no pet.); *see* Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274 (1894)]. For example, the issue may be raised by the insured's estate [Tamez v. Certain Underwriters at Lloyd's, 999 S.W.2d 12, 16 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)].

In Texas, in contrast to most jurisdictions, an insurance company has no standing to raise the issue of lack of insurable interest with respect to a life insurance policy. The insurance company must pay the full amount of the insurance, if otherwise liable, because that is what it contracted to do [Wilke v. Finn, 39 S.W.2d 836, 837–838 (Comm. App. 1931, opinion adopted)]. This is because it would be inequitable to permit an insurer to issue a policy and collect the premiums, and then escape its obligations under the policy by claiming the designated beneficiary does not have an insurable interest [Tamez v. Certain Underwriters at Lloyd's, 999 S.W.2d 12, 115–116 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)]. If the insurance company pays the proceeds to a designated beneficiary who has no insurable interest, that payee will hold the proceeds as trustee for the benefit of the persons entitled by law to receive the proceeds [Wilke v. Finn, 39 S.W.2d 836, 837–838 (Comm. App. 1931, opinion adopted); Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 358 (Tex. App.—Tyler 1998, no pet.)].