**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
ENTERED

**SEP 0 5 2002**

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| Jefferson-Pilot Life Ins. Co., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-01-142 |
| | § | |
| Sort-Rite International, et al., | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that on September ____5____, 2002, the Court considered Defendant Sort-Rite International, Inc.'s Motion for Summary Judgment [Dkt. No. 48]; the Motion of Defendant Metzger, et al. for Summary Judgment Against Sort-Rite International, Inc. [Dkt. No. 49]; and the replies and responses thereto.

Procedural Background

The proceeds of a life insurance policy, $1,500,000, are at issue in this case. The proceeds were tendered into the Registry of the Court in August 2001 [Dkt. No 3].

Jefferson-Pilot Life Insurance Company, which filed this action in interpleader in August 2001 to determine the extent of the claims and interest of the claimants, has been dismissed from the case [Dkt. No. 18]. In May 2002, de Pino, Metzger, and Finch ("de Pino")[1] settled with Defendants Coastal Banc and Export-Import Banc collectively in the amount of $150,000, and those two Defendants were dismissed and severed from the case [Dkt. Nos. 42 & 43]. De Pino and Sort-Rite International, Inc. ("Sort-Rite") presently assert claims on the Policy, and are the only Parties remaining in the case. De Pino claims 100% percent of the remaining funds. Sort-Rite claims that as Employer it is entitled to $1,000,000, and that de Pino is entitled to $500,000.

---

[1]    Debra Ann Metzger Finch and Katherine Lee Metzger do not contend that they are presently beneficiaries under the Policy; instead their interest is through an agreement with de Pino to share in any proceeds which de Pino may recover as a result of this suit.

Uncontroverted Facts

Shirley Metzger died on March 23, 2001. Shirley Metzger was President, primary salesperson, and 85% stockholder (her daughters, Debra Ann Metzger Finch and Katherine Lee Metzger owned the remaining 15%) of Sort-Rite for approximately twenty-five years. In 1987, she applied for a life insurance policy with Jefferson-Pilot Life Insurance Company. The Policy, #JP4038973, was issued about December 1, 1987 [Dkt. No. 49 Ex. B] ("the Policy"). The face value of the Policy was $1,500,000 and it contained a "split-dollar endorsement"[2] between the Employer, Sort-Rite, and Co-beneficiaries. The Policy states that "[t]he Employer shall receive the greater of (1) $1,000,000.00 or (2) the Net Premiums. The Co-beneficiary shall receive any remainder of the net death proceeds, except that if the net death proceeds are less than the Net Premiums, the entire net death proceeds shall be payable to the Employer." [Id. at 40]. The split-dollar endorsement was signed by Shirley Metzger and listed herself as the "Co-owner" of the Policy, Sort-Rite as the "Employer," and Debra Ann Metzger Finch, Katherine Lee Metzger, and Frances Merrick as "Co-beneficiaries" [Id. at 40].

From January 11, 1988 through January 4, 2001, Sort-Rite paid $100,477.90 in premiums for the policy from Sort-Rite's checking account [Dkt. No. 48 Ex. 4]. De Pino offers no evidence to the contrary. Sort-Rite concedes that its payments were not regular.

On or about September 6, 1995, Shirley Metzger signed a Change of Beneficiary Form naming Leticia Elizalde de Pino as the primary beneficiary, and naming Debra Ann Metzger Finch as the contingent beneficiary and Katherine Lee Metzger as the second beneficiary. Shirley Metzger herself, in 1996, continued to certify that Sort-Rite

---

[2]      Split-dollar insurance: An arrangement between two people (often an employer and employee) in which life insurance is written on the life of one, though both share the premium payments. On the insured's death or other event terminating the plan, the non-insured person receives the cash value of the insurance as reimbursement, and the beneficiary named by the insured is entitled to the remainder.
            Black's Law Dictionary (7th ed. 1999) (Brian K. Gardner, ed.).

was a beneficiary in the Life Insurance Standard Confirmation Inquiry in 1996 [Dkt. No. 48 Ex. 10].

Jefferson-Pilot requires that if a Policy is "corporate-owned the form must be signed and dated by two officials with their titles shown." [Dkt No. 48 Ex. 7]. Under the Policy, the Co-Owner is prohibited from exercising any rights, options, or privileges not specifically reserved to the Co-Owner in a manner which would impair any right or interest of the Employer. [Dkt. No. 48 Ex. 2 at 42]. Only Shirley Metzger, albeit as President of Sort-Rite, signed the "Change of Beneficiary" form. [Dkt. No 47 Ex. B; Dkt. No. 48 Ex. 6].

Sort-Rite filed for Chapter 11 Bankruptcy in May 1992 and in April 2000 (Case Nos. 92-21053-B 11 & 00-21094-B 11). A plan of reorganization was confirmed in each of these two bankruptcies. The Second Amended Plan of Reorganization states: "Debtor Rejects, as of the effective date, any and all employee-related agreements and polices, including . . . insurance plans . . ." [Dkt. No 47 Ex. 3 at 19].[3]

During a hearing before the bankruptcy court on January 10, 2001, the following exchange took place between the attorney for Sort-Rite, Ken Mackey, and the Court:

| | |
|---|---|
| THE COURT: | So it's your understanding and you'll stipulate on the record as attorney for this, the reorganized debtor [Sort-Rite] the debtor who is seeking reorganization at least or, that the reorganized debtor has no contract nor does the party buying this have any contract other than the one that was described on the witness stand. Is that correct? |
| MR. MACKEY: | . . . .[T]he reason that I hesitate as the lawyer, Judge, is that there is an insurance, life insurance policy that when XM Bank was in the case as a secured creditor went to XM Bank as a beneficiary. That has to be reversed out and how we're going to do that, I don't know. But it is an insurance policy on-- |

---

[3]    The Second Amended Plan of Reorganization, just after the provision cited, has a provision for the assumption of contracts [id.].

THE COURT:        Is it a whole-life policy?

MR. MACKEY:       Yes, on Ms. Metzger.

[Dkt. No. 49 Ex. A at 104].

Summary of Arguments

In its Motion for Summary Judgment [Dkt. No. 48], Sort-Rite asserts its interest in the Policy as the Employer/Beneficiary. Sort-Rite argues that at all times it maintained an insurable interest in the Policy, and that by its clear terms it is entitled, as the Employer under the Policy, to $1,000,000. Under Tex. Ins. Code Sec. 3.49-1, any person of legal age may buy an insurance policy on his or her own life and designate virtually any other person or entity as the beneficiary or owner of the policy. In Empire Life Inc. Co. v. Moody, 584 S.W. 2d 855 (Tex. Sup. 1979), the Texas Supreme Court held that where a policy designated the corporation as beneficiary and owner, the corporation "shall at all times after have an insurable interest." Id., at 860. Sort-Rite further argues that in any case Shirley Metzger did not have the right to change the "Employer" portion of the Policy on the Change of Beneficiary form without the signature of another officer.

In her Cross-Motion for Summary Judgment [Dkt. No. 49], De Pino asserts that Sort-Rite no longer has an interest in the Policy because Sort-Rite's Plan of Reorganization rejected all unassumed[4] executory contracts, including the Policy at issue here [Dkt. No. 47 Ex. 3]. De Pino argues that during the hearing on the confirmation of the Plan of Reorganization in the second bankruptcy, Sort-Rite failed to disclose to the Court any interest in Policy. De Pino contends that the failure to disclose is tantamount to rejection of the contract, and relinquishment of any rights therein. De Pino asserts that Sort-Rite's "original rights to the $1,000,000 portion of the proceeds were incidental to a lending transaction which required the debtor-corporation to assign to [XM Bank] its interest in a life insurance policy on the life of its chief executive until the

---

[4]      Assumption- the act of taking (esp. Someone else's debt or obligation) for or on oneself;  the agreement to take <assumption of a debt>. Black's Law Dictionary (7th ed. 1999) (Brian K. Gardner, ed.).

debt was paid." [Dkt. No. 49 at 3]. De Pino maintains that the bank's assignment was not preserved as a lien in the plan of reorganization in the first bankruptcy proceeding, which was confirmed in 1994, and that "in recognition of the fact that it had no interest in the life insurance policy, Sort-Rite did not list the Policy as an asset in the second bankruptcy proceeding." De Pino argues that in 1995, Shirley Metzger, acting as President of Sort-Rite, validly cancelled all previous beneficiary designations, which eliminated Sort-Right's rights to the Policy. [Dkt. No. 49 at 3-4]. De Pino further maintains that after the second Plan of Reorganization, "the old shareholders were stripped of all interest in Debtor, and new shares of stock were issued to a third party, who represented to the bankruptcy court through sworn testimony at the confirmation hearing that Sort-Rite was rejecting the life insurance contract, thereby terminating its interest in the policy, to the extent that it had one." [Dkt. No. 49 at 4]. The Court notes that there is no evidence in the summary judgment record to support any of these assertions in her Motion. [Dkt. No. 49].

De Pino also asserts that the language of the Second Plan of Reorganzation rejected the Policy as an executory contract, as it had no positive value to the company, and that after the plan of reorganization was confirmed, Sort-Rite paid no further premiums on the Policy since it had no further obligation to do so due to the rejection. However, as to these assertions there is likewise no evidence. De Pino argues that Sort-Rite is judicially estopped from asserting an interest in the policy, and that Sort-Rite has no insurable interest in the Policy.

Sort-Rite responds by stating that the contract was not executory in nature and that even if it was, Sort-Rite's rejection would only constitute a material breach of its contract with Jefferson-Pilot. Sort-Rite also maintains that the exchange between Mr. Mackey and the bankruptcy court constitutes disclosure of the Policy, and that it in fact continued to pay premiums during the pendency of the bankruptcy.

Effect of Change of Beneficiary Form

De Pino argues that the Change of Beneficiary Form ended Sort-Rite's interest in the Policy [Dkt. No. 49 at 28]. The Court disagrees; the Change of Beneficiary Form did

not effect the interest of Sort-Rite in the Policy. Under the Policy, Shirley Metzger had the right to unilaterally change the portion of the proceeds that she controlled. However, she was required to have two signatures of company officers in order to effect Sort-Rite's interest, and therefore if that is what she was attempting to do, such attempt was invalid as per the clear terms of the Policy. According to the Instructions to the Change of Beneficiary form, which are on the reverse side of the form itself, "[i]f the policy is corporate-owned, the form must be signed and dated by two officials with their titles shown." [Dkt. No. 48 Ex. 7, A-2]. The evidence is uncontroverted that the form is signed only by Shirley Metzger as President of Sort-Rite. [id.] A change in beneficiary will be given effect only if the insured substantially complies or does all she can to substantially comply with necessary requirements. Creighton v. Barnes, 257 S.W.2d 101 (Tex. Sup. 1953).

Because Shirley Metzger had no right to unilaterally change the rights of Sort-Rite under the Policy, any change of beneficiary effected only the rights of the beneficiaries that she had the right to designate: Katherine Metzger, Debra Metzger Finch, and Frances Merrick (the original beneficiaries), and the newly-named beneficiary (Leticia de Pino) to the portion that Shirley Metzger unilaterally controlled, $500,000.[5] Therefore, the Court finds that Sort-Rite has maintained and continues to maintain its interest in the $1,000,000 "Employer" portion of the Policy.

Rejection of Executory Contract

De Pino contends that Sort-Rite rejected this contract as an executory contract during the second bankruptcy proceeding. An executory contract in the bankruptcy context is one "under which debtor and nondebtor each have unperformed obligations and the debtor, if it ceased further performance, would have no right to other party's continued performance." Black's Law Dictionary (7th ed. 1999) (Brian K. Gardner, ed.).

---

[5]    Furthermore, there is no evidence that Jefferson-Pilot viewed Sort-Rite's interest in the $1,000,000 portion as having been changed; in fact, there is evidence to the contrary [Dkt. No. 48 Ex. 7].

Sort-Rite denies that it rejected the Policy, but argues in the alternative that even if it had attempted to reject the policy, the result would be only breach by Sort-Rite, rather than termination of the contract.   The Court agrees.  "The rejection of an executory contract . . . does not terminate or forfeit the non-debtor parties' rights under the contract."  In re CVA General Contractors Inc., 267 B.R. 773 (W.D. Tex. 2001).  See id.; In re Continental Airlines, 981 F.2d 1450, 1459 (5th Cir. 1993) ("to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached."); see also In re Modern Textile, Inc., 900 F.2d 1184 (8th Cir. 1990); Leasing Service Corp. v. First Tennessee Bank Nat'l Ass'n, 826 F.2d 434, 436-37 (6th Cir. 1987).  Had Sort-Rite attempted to reject the Policy, Jefferson-Pilot would then have the option to terminate the contract, but Sort-Rite at no time had the right to terminate the contract unilaterally.  See In re CVA General Contractors Inc., 267 B.R. 773 (W.D. Tex. 2001) ("only the trustee may reject a contract, termination of the contract can only occur at the option of the non-debtor party to that contract," [the non-debtor here being Jefferson-Pilot]).  Here, there is no evidence that a trustee rejected the Policy, and any attempt at rejection by Sort-Rite was unilateral, resulting at worst in breach by Sort-Rite.[6]  The Court finds that any attempt (assuming without deciding that an attempt was made) by Sort-Rite to reject the Policy did not change the rights of Sort-Rite and Jefferson-Pilot vis-a-vis one another.[7]  De Pino's argument that Sort-Rite relinquished its rights under the Policy therefore fails.

## Judicial Estoppel

De Pino last asserts that summary judgment should be granted for her since Sort-Rite took a misleading position in the bankruptcy proceeding by failing to disclose, and thereby assume, the Policy.  Under the doctrine of judicial estoppel, a party who has

---

[6]    The Court leaves the issue of whether breach actually occurred for another proceeding and another day, noting that Sort-Rite attaches evidence showing that such payments were continued through 2001 [Dkt. No. 48 Ex. 3], and it is undisputed that the existence of the Policy was disclosed at the bankruptcy hearing. [Dkt. No 49 Ex. 1 at 104].

[7]    In light of the above, the Court does not address Sort-Rite's argument that the Policy was not an executory contract.

given oral testimony in a judicial proceeding is judicially estopped from maintaining a contrary position in a subsequent proceeding. <u>Long v. Knox</u>, 291 S.W.2d 292 (Tex. 1956). However, de Pino's own exhibit shows that the Policy was in fact disclosed [Dkt. No 49 Ex. A at 104]. Statements made by Mr. Mackey during the bankruptcy proceeding, while not evidence, may be taken into consideration in determining whether a party is judicially estopped from asserting an inconsistent position in a later proceeding. <u>Goldman v. White Rose Distributing Co.</u>, 936 S.W.2d 393, 398 (Tex. App.-- Fort Worth 1996) <u>judgment vacted without reference to the merits</u>, 949 S.W.2d 707 (Tex. 1997) (citing cases). The Court therefore rejects de Pino's argument and finds that Sort-Rite is not judicially estopped from asserting an interest in the Policy.

For the reasons discussed above, summary judgment is **GRANTED** for Defendant Sort-Rite.

DONE this _____5_____ day of September, 2002, at Brownsville, Texas.


Hilda G. Tagle
United States District Judge

8