IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

DEC 1 8 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| JEFFERSON-PILOT LIFE INSURANCE, CO., § | |
| Plaintiff, § | |
| v. § | NO. B-01-142 |
| § | |
| SORT-RITE INTERNATIONAL, INC., AND § | |
| LETICIA DE PINO, DEBRA FINCH, AND § | |
| KATHERINE METZGER, § | |
| Defendants. § | |

## ORDER AND MEMORANDUM

BE IT REMEMBERED that on December 16, 2002, the Court considered Defendants Leticia de Pino, Debra Finch, and Katherine Metzger's (hereinafter "de Pino") Motion for Reconsideration [Dkt. No. 66] and Defendant Sort-Rite International, Inc.'s (hereinafter "Sort-Rite") Response thereto [Dkt. No. 71]. De Pino's Motion requests that the Court reconsider its September 5, 2002, Order [Dkt. No. 62] in which it granted Sort-Rite's Motion for Summary Judgment. After careful consideration, the Court **DENIES** the motion. The Court **GRANTS** Defendant Sort-Rite's Motion to Dismiss Claims for Attorneys' Fees and Reimbursement of Premiums [Dkt. No. 79].

Procedural and Factual Background

This case arose out of a dispute concerning the proceeds of a life insurance policy. Jefferson-Pilot Life Insurance Company (hereinafter "Jefferson-Pilot") filed an action in interpleader in August 2001 to determine the interest of the claimants, Sort-Rite and Leticia de Pino, Debra Finch, and Katherine Metzger. Jefferson-Pilot was dismissed from the case [Dkt. No. 18].[1]  Both Sort-Rite and de Pino filed Motions for Summary Judgement [Dkt. Nos. 48 & 49].   In its summary judgment motion, Sort-Rite,

---

[1]De Pino, Finch, and Metzger settled with Defendants Coastal Banc and Export-Import Banc collectively in the amount of $150,000.

the Employer, asserted a claim on the policy in the amount of $1,000,000 and argued de Pino was entitled to approximately $350,000 ($500,000 minus 150,000). Conversely, de Pino claimed all of the proceeds in the amount of $1,350,000. On September 5, 2002, the Court granted summary judgment in favor of Defendant Sort-Rite. In this order, the Court held that under the insurance policy at issue and pursuant to the "Split Dollar Endorsement" agreement, Sort-Rite, as the Employer/Beneficiary, was entitled to approximately $1,000,000 of the policy proceeds while de Pino[2] was entitled to the remaining proceeds. See September 5, 2002, order, at 2 [Dkt. No. 62]. The Court's ruling on the summary judgment motions did not resolve what claims, if any, Sort-Rite had against de Pino's portion of the policy proceeds for the

---

[2]De Pino has never presented the Court with any evidence that anyone other than Leticia de Pino is the sole beneficiary of Shirley Metzger's portion of the insurance policy. De Pino argues in both her Response to Sort-Rite's Motion for Summary Judgment [Dkt. No. 66, Ex. A, at 23-24] and her Response to the Motion to Distribute Funds Held in the Registry of the Court [Dkt. No. 70] that de Pino, Finch, and Metzger are equal beneficiaries. Pursuant to the 1995 Beneficiary Designation Change, Shirley Metzger designated de Pino as the sole beneficiary of Shirley Metzger's portion of the insurance policy. Debra Ann Metzger Finch was designated as the contingent beneficiary and Katherine Lee Metzger as the second contingent beneficiary. See Sort-Rite's Motion for Summary Judgment, Ex. 6 [Dkt. No. 48]. De Pino presented the Court with absolutely no evidence that anyone other than de Pino was a beneficiary of the policy proceeds in any amount, regardless of whether the Court ruled Sort-Rite had asserted a valid claim to any of the policy proceeds. De Pino states in her Response to Sort-Rite's Motion for Summary Judgment, "[a]dditionally, there was a potential conflict between PINO on one side, and METZGER and FINCH on the other with respect to the interpretation that the 1995 Beneficiary Designation Change actually canceled the beneficiary designations of both portions of the policy, leaving PINO the sole beneficiary of the entire $1,500,000. Through agreement among these parties, these conflicts were resolved." See [Dkt. No. 66, Ex. A, at 24]. Both Metzger and Finch discussed the agreement de Pino references in their deposition testimony. See Sort-Rite's Motion for Summary Judgment, Ex. 8, at p. 18, lines 25 through p. 19, line 6 & Ex. 9, at p. 9, lines 12 through 17 [Dkt. No. 48]. De Pino has consistently argued throughout the proceedings in this case that this Beneficiary Designation Change effectively changed the beneficiary of the entire $1,500,000. Reviewing this same form, it is clear that Shirley Metzger designated de Pino as the primary beneficiary with Metzger and Finch as contingent beneficiaries. Any agreement de Pino, Metzger and Finch entered into is separate from the beneficiary designations listed on the insurance policy and does not change their status as beneficiaries.

reimbursement of premium payments made by Sort-Rite. In addition, the Court did not address Sort-Rite's general request for attorneys' fees. Having been informed by Sort-Rite that it withdraws its request for attorneys' fees, the Court does not now address the appropriateness of awarding such fees in this case. See Sort-Rite's Motion to Dismiss Claims for Attorneys' Fees and Reimbursement of Premiums [Dkt. No. 79]. Sort-Rite also informs the Court it does not wish to pursue its claim against de Pino for the reimbursement of premiums. See id.

On September 24, 2002, the Court inadvertently issued an order of disbursement [Dkt. No. 65], which it later vacated on October 30, 2002 [Dkt. No. 76]. The Court ordered the parties to return all disbursed funds to the Court's registry by November 8, 2002. Upon disposal of Defendant de Pino's Motion for Reconsideration, no issues remain on which the Court must rule. The Court will direct the disbursement of funds by separate order.

Motion for Reconsideration Standard

The Federal Rules of Civil Procedure do not recognize a Motion for Reconsideration per se. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). De Pino filed her Motion for Reconsideration on September 26, 2002, which is counted, pursuant to Federal Rule of Civil Procedure 6(a), as ten (10) days after the Court entered final judgment in this case on September 12, 2002. The Court, therefore, considers the Motion as one to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e). See id. See also Fletcher v. Appel, 210 F.3d 510, 512 (5th Cir. 2000). Motions for Reconsideration are generally disfavored and are not proper tools "to introduce evidence that was available at [the time of the summary judgment motion] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). Generally, a Motion for Reconsideration may be granted under Rule 59(e) if the movant shows: "(1) the motion

3

is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law." Fields v. Pool Offshore, 1998 WL 43217, *2 (E.D. La. Feb. 3, 1998), aff'd 182 F.3d 353 (5th Cir. 1999).

## De Pino's Missing Response and Reply to Sort-Rite's Motion for Summary Judgment

At the outset, the Court addresses de Pino's arguments concerning a response and reply to Sort-Rite's Motion for Summary Judgment. See de Pino's Motion for Reconsideration, at 3 [Dkt. No. 66]. De Pino informs the Court that on July 11, 2002, she filed this response in the United States District Clerk's Office for the Southern District of Texas, Houston Division. The docket for this case does not reflect this filing in the Brownsville Division. De Pino does not present mail receipts demonstrating her filing of this response with the Houston Division. First, the Court notes that de Pino filed this response in the incorrect division. Second, it is counsel's responsibility to monitor the docket and ensure that filings are received and docketed properly, particularly when the response, unlike all of de Pino's previous pleadings, was filed in a different division. Finally, and most importantly, the Court set June 4, 2002, as the deadline for filing dispositive motions. The deadline, therefore, for de Pino to file a response to Sort-Rite's Motion for Summary Judgment was on June 24, 2002. Even if the Court accepts July 11, 2002, as the date upon which de Pino filed her response, the filing was still untimely because Local Rule 7.3 requires parties to file responses within twenty (20) days. The Court interprets a failure to respond as a representation of no opposition. Although the Court would not normally consider this response because it is untimely, in an effort to thoroughly examine the parties' claims and arguments, the Court will briefly address several of de Pino's main arguments. The Court notes that none of de Pino's arguments in this response would have altered the Court's original September 5, 2002, order.

4

Beneficiary Designation Change

De Pino makes several interrelated arguments concerning the Beneficiary
Designation Change form. First, in her *Response to Sort-Rite's Motion for Summary
Judgment*, she attacks Sort-Rite's argument that Jefferson-Pilot treated the Beneficiary
Designation Change as affecting only the Employer's side of the policy and not the
individual's side. She references Jefferson-Pilot's interpleader complaint and states
that the "present beneficiaries under the split-dollar endorsement [were] as follows: 1.
Under the Employer's portion, Leticia Pino, whose beneficiary status arose from the
August 1995 beneficiary designation change, and 2. Under the individual's portion,
Debra Finch, Katherine Metzger, and Francis Merrick (deceased)." *See* de Pino's
*Motion for Reconsideration*, Ex. A, at 13 [Dkt. No. 66].

As the Court concluded in its September 5, 2002, order, this assertion is without
support for several reasons. Split-dollar insurance is defined as:

> an arrangement between two people (often an employer and employee) in which
> life insurance is written on the life of one, though both share the premium
> payments. On the insured's death or other event terminating the plan, the non-
> insured person receives the cash value of the insurance as reimbursement, and
> the beneficiary named by the insured is entitled to the remainder.

Black's Law Dictionary (7th ed. 1999). According to the Split Dollar Endorsement, Sort-
Rite is the Employer while Shirley Metzger is labeled as the Co-Owner. *See* Sort-Rite's
*Motion for Summary Judgment*, Ex. 2, at 40 [Dkt. No. 48]. The Co-Beneficiary listings
refer to the beneficiaries of the Co-Owner Shirley Metzger. Sort-Rite, as the Employer,
may act alone and designate and change a beneficiary for the Employer's share of the
death proceeds. Similarly, the Co-Owner, Shirley Metzger, may act alone and
designate and change the Co-Beneficiary for the Co-Owner's share of the death
proceeds. Indeed, the entire purpose of a split endorsement policy is that the Employer
and the Co-Owner agree to a plan for the payment of premiums, and the policy
contemplates a division of proceeds between the Employer and the Co-Beneficiary.
*See* Id., Sections III and IV. If Shirley Metzger, as the Co-Owner, had the ability to
unilaterally change the beneficiary designation for both her individual share of the

proceeds and the Employer's share of the proceeds, the purpose of the split dollar endorsement would be obviated and the Employer's interests would not be protected. Jefferson-Pilot's interpleader complaint stated, "the Insured, in her capacity as President of Sort-Rite International, Inc., changed the beneficiary designation in August 1995, naming Leticia Elizalde de Pino, friend, as primary beneficiary and Debra Ann Metzger Finch and Katherine Lee Metzger as contingent beneficiaries." [Dkt. No. 1, ¶ 12]. This statement is not inconsistent with Sort-Rite's position that Jefferson-Pilot interpreted the change in beneficiary designation as applying to only Shirley Metzger's individual portion of the proceeds because the Employer still remained an owner of the policy under the Split Dollar Endorsement agreement. Stated differently, a change in beneficiary to the individual's portion of the policy does not alter or amend the nature of the agreement between the policy owners, Sort-Rite and Shirley Metzger. Additionally, simply because Shirley Metzger signed the form in her professional capacity does not mean she effectively changed the beneficiary designation with respect to the Employer's portion of the policy. Nor does the fact that Metzger signed the form as the President of Sort-Rite conflict with Jefferson-Pilot's explanation that the Beneficiary Designation Change effected only Metzger's individual portion of the policy.

De Pino's second main argument concerning the Beneficiary Designation Change form is raised in both her Motion for Reconsideration and her Response to Sort-Rite's Motion for Summary Judgment. De Pino argues the Beneficiary Change Designation terminated Sort-Rite's interest in the insurance policy. See [Dkt. No. 49 & 66, Ex. A]. The form, de Pino argues, does not distinguish between the Employer's portion of the policy and the individual's portion, but rather cancels all previous beneficiary designations. See [Dkt. No. 66, Ex. A, at 10]. De Pino concedes, however, that one policy owner cannot change the beneficiary designation for a portion of the policy that is not hers. De Pino states, "[w]hile it is certainly true that the one signing the beneficiary form cannot extend beneficiary status over a portion of the policy not his (or hers) to give, in the instant case, at the time that Shirley Metzger signed the 1995 Beneficiary Change, she represented not only herself, but also the corporation." Id. at 11. This Court has already made a finding that Shirley Metzger signed the change of

6

beneficiary form in her capacity as President of Sort-Rite. See September 5, 2002, order [Dkt. No. 62, at 6].  Additionally, she signed the form (in what appears to be her individual capacity) in a space marked for the policy owner.  In essence, de Pino argues that because Shirley Metzger signed the form in her corporate capacity, she could unilaterally effect a change to the beneficiaries of both the employer and individual portion of the policy.

On the reverse side of the Beneficiary Designation Change form, the instructions clearly state, "If the policy is corporate owned, the form must be signed and dated by two officials with their titles shown."  See Sort-Rite's Motion for Summary Judgment, Ex. 7 [Dkt. No. 48].  The Court, therefore, was correct when it initially determined in its September 5, 2002, order that under Texas law, a change in beneficiary is only effective if the policyholder substantially complies with the policy requirements.  See Creighton v. Barnes, 257 S.W.2d 101, 103 (Tex. 1953).  "Substantial compliance is achieved if the insured 'has done all that reasonably [she] could have done to effect the change.'"  See Metropolitan Life Insurance Co. v. Bialik, 2001 WL 169600 *2 (N.D. Tex. Jan. 16, 2001) (citing Todd v. Mutual Benefit Life Insurance Co., 483 S.W.2d 889, 891 (Tex.Civ.App.–Waco 1972, writ ref'd n.r.e.)).  Shirley Metzger did not substantially comply with the policy's requirements for a change in beneficiary because she did not obtain the signature of a second corporate officer.[3]

---

[3]De Pino argues for the first time in her Motion for Reconsideration there is a genuine issue of material fact concerning whether the change of beneficiary form was executed in "substantial compliance" with the insurance company's requirements. See de Pino's Motion for Reconsideration, at 13 [Dkt. No. 66].  The Court notes that de Pino argues both that Metzger complied with Jefferson-Pilot's requirements for the change of beneficiary and that there remains an issue of material fact concerning whether Metzger complied with the insurance company's requirements.

De Pino now argues the policy form "obscures the instructions" by "not disclos[ing] the requirement of a second signature on the front page" and by failing to provide a space for a second signature.  See id. at 14.  Additionally, de Pino argues that attached to Sort-Rite's Motion for Summary Judgment [Dkt. No. 48, Exs. 6 & 7] are two versions of the change of beneficiary form.  The Court does not find there to be two versions of the change of beneficiary form.  Rather, Exhibit 6 of Sort-Rite's Motion for Summary Judgment is a copy of the second page of the form, while Exhibit 7 is a copy of the first page of the form.  In the form's original, non-photocopied version, both pages, reproduced in Exhibits 6 and

De Pino argues <u>Creighton v. Barnes</u> is inapplicable to the present case because in <u>Creighton</u> no change of beneficiary form had been filed with the insurance company and there the Texas Supreme Court held that the insured's will did not satisfy the policy's requirements for a change of beneficiary. <u>See</u> de Pino's Motion for Reconsideration, at 9 [Dkt. No. 66]. De Pino instead argues in her Motion for Reconsideration that <u>Fidelity Union Life Insurance Co. v. Methven</u>, 346 S.W.2d 797 (Tex. 1961) applies to the facts of this case. The Court maintains, as it did in its September 5, 2002, order that the basic premise of <u>Creighton</u> continues to apply to this case – namely, an insurer may make reasonable regulations that govern the policy in general and a change of beneficiary specifically. Further, beneficiaries "named in the certificate [of insurance] ha[ve] a right, by virtue of the contract, to require that a change be made substantially in accordance with the manner provided," even though the "insurer may waive compliance with regulations intended for its benefit." <u>Creighton</u>, 257 S.W.2d at 102 (citing <u>Garabrant v. Burns</u>, 111 S.W.2d 1100, 1103 (1938)). According to <u>Creighton</u>, rules concerning the change of beneficiary serve to protect the last named beneficiary from parties claiming changes made in their favor, and thus changes are only given effect when the insured substantially complies with the policy regulations or has taken reasonable measures and did what she could have reasonably done to comply with such rules.

_____

7, direct the reader to the reverse side of the form for further instruction. It is evident that through imperfect reproduction, one set of instructions was simply cut off during photocopying. De Pino also asserts "there is nothing in the record to establish that the instructions were part of the version of the beneficiary designation form which Shirley Metzger herself received."

In short, de Pino has not raised a material issue of fact; she must do more than suggest the form Metzger received might have hypothetically lacked proper instructions. De Pino only states there is no way "to ascertain whether Shirley Metzger ever got a copy of the instructions now the focus of this suit." <u>See</u> de Pino's Motion for Reconsideration, at 15 [Dkt. No. 66]. De Pino presents no evidence that Metzger mistakenly thought she was complying with the change of beneficiary form, other than to speculate that Metzger could have overlooked instructions printed on each page that directed the reader to refer to the reverse side of the last page for further instruction. De Pino has not, therefore, raised a material issue of fact concerning the change of beneficiary form.

Indeed, <u>Fidelity Union Life Insurance Co. v. Methven</u>, cited by de Pino, acknowledges that certain policy requirements exist for the benefit of beneficiaries named in the policy. <u>See</u> <u>Fidelity</u>, 346 S.W.2d at 800. Arguing the Court erred when it relied on <u>Creighton</u>, de Pino states the Supreme Court of Texas held in <u>Fidelity</u> that "where the policy requirements for effecting a change of beneficiary have been waived by the insurer, and a change in beneficiary effected in a manner satisfactory to the insurer and insured during the insured's life, the ousted beneficiary lacks standing, after the insured's death, to assert that the change was made without substantial compliance with the policy requirements." <u>See</u> de Pino's Motion for Reconsideration, at 10 [Dkt. No. 66]. The insurer may waive compliance with policy requirements for effecting a change in beneficiary during the lifetime of the insured and such requirements are often for the benefit of the insurer. <u>See</u> <u>id.</u> at 327.

Neither <u>Fidelity</u> nor <u>Creighton</u> stood for the proposition that an insurer can waive compliance with policy requirements for a change of beneficiary when such requirements exist for the benefit of the beneficiary named in the policy or for the benefit of a co-owner of the policy. Most importantly, <u>Fidelity</u> and <u>Creighton</u> were not cases involving Split-Dollar Endorsement agreements. <u>Fidelity</u> distinguished its holding from <u>Creighton's</u> by explaining a beneficiary may require substantial compliance with the policy's regulations when there has been no waiver. De Pino has not presented convincing evidence that Jefferson-Pilot waived its regulations, and Sort-Rite has presented evidence that Jefferson-Pilot interpreted the change of beneficiary to apply to only the individual's portion of the policy, and thus did not waive any requirements concerning the change in beneficiary.[4] <u>See</u> Sort-Rite's Motion for Summary Judgment, Ex. 7, ¶¶ 4, 5 [Dkt. No. 48] (Affidavit of Carl Semmler, Assistant Vice President and Associate Counsel for Jefferson-Pilot).

Jefferson-Pilot imposed a requirement that two corporate officials sign the change of beneficiary form when the policy is corporate owned. This requirement was

---

[4]The Court notes with disapproval that fact that de Pino raises this issue of waiver and standing for the first time in her Motion for Reconsideration.

9

addressed to corporate policy owners, and not simply third party beneficiaries. De Pino, however, does not make this distinction in her arguments. To allow the Co-Owner of the policy, Shirley Metzger, to unilaterally change the beneficiary form without two signatures of corporate officials would circumvent provisions of the Split-Dollar Endorsement that require the Employer and Co-Owner to act jointly to change the death benefit option, and would place Sort-Rite in a precarious position - after having paid a portion of the insurance premiums as an owner of the policy, it could at any time be divested of its interest in the death proceeds without its consent. Finally, Sort-Rite is not a *third party* beneficiary. Rather, Sort-Rite is both the Employer/Owner of the policy as well as a designated beneficiary. Sort-Rite is a party to the contract and directly derived benefits from the Split Dollar Endorsement agreement. Sort-Rite's relationship to Jefferson-Pilot is not analogous to the relationship a third party beneficiary would have with the insurer because third party beneficiaries are not parties to a contractual agreement with the insurer.

Effect of the Second Bankruptcy Proceedings and Rejection of Sort-Rite's Interest in the Policy

De Pino raises issues concerning the effect of the bankruptcy proceedings on Sort-Rite's interest in the life insurance policy. The Court finds no new arguments in de Pino's Motion for Reconsideration. Rather, she again argues that Sort-Rite relinquished its rights in the life insurance proceeds during the second bankruptcy proceeding by rejecting the policy, which de Pino asserts is an "executory contract."

De Pino specifically contests the Court's interpretation of In re CVA General Contractors, Inc., 267 B.R. 773, 777 (W.D. Tex. 2001). and argues this case does not apply to the present facts because the debtor in In re CVA was "in chapter 7, not Chapter 11" and the non-debtor referenced in In re CVA is analogous to Shirley Metzger and not Jefferson-Pilot as the insurer. See de Pino's Motion for Reconsideration, at 25 [Dkt. No. 66]. The Court, for a second time, disagrees with de Pino's interpretation of In re CVA. The following issues are presented in this case: first,

10

whether the premium agreement at issue constitutes an "executory contract;"[5] second, whether if it is an executory contract, Sort-Rite rejected the insurance policy agreement; and, third, the affect rejection has on Sort-Rite's interests in the policy proceeds.

As the Court noted in its September 5, 2002, an executory contract in the bankruptcy context is one "under which debtor and non-debtor each have unperformed obligations and the debtor, if it ceased further performance, would have no right to the other party's continued performance." Black's Law Dictionary (7th ed. 1999).  In re CVA held that "rejection of an executory contract, . . ., does *not* terminate or forfeit the non-debtor parties' rights under the contract."  In re CVA General Contractors, Inc., 267 B.R. 773, 777 (W.D. Tex. 2001).  The bankruptcy court in In re CVA further explained that language in 11 U.S.C. § 365 regarding the rejection of an executory contract means only that a breach of contract has occurred.  See id. (citing In re Austin Development Co. et al. v. Austin Development Co., 19 F.3d 1077, 1082 (5th Cir. 1994).  "[T]o assert that a contract effectively does not exist as of the date of rejection is inconsistent with

---

[5]The Court addresses this argument in a footnote because even if the premium agreement is considered to be an executory contract, this fact does not terminate the contract.  Many courts have determined that when an insurance contract has been terminated before the bankruptcy filing date, there is no contract, executory or otherwise, for the trustee to assume or reject.  See, e.g., In re Firearms Import and Export Corp., 131 B.R. 1009, 1013 (Bankr. S.D. Fla. 1991); In re Federal Press Co., Inc., 104 B.R. 56, 66 (Bankr. N.D. Ind. 1989), aff'd sub. Nom. Guaranty Nat'l. Ins. Co. v. Greater Kansas City Transp., Inc., 90 B.R. 461, 463 (D. Kan. 1988).  Other courts have  stated a debtor's obligation to pay retrospective premiums did not make an insurance policy executory. See, e.g., In re Placid Oil Co., 72 B.R. 135 (Bankr. N.D. Tex. 1987); In re Sudbury, Inc., 153 B.R. 776, 778 (Bankr. N.D. Ohio 1993); Texscan Corp. v. Commercial Union Insurance Cos. (In re Texscan Corp.), 107 B.R. 227 (9th Cir. BAP 1989), aff'd 976 F.2d 1269 (9th Cir. 1992). These courts defined an executory contract using Professor Countryman's definition: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Sudbury, 153 B.R. at 778 (citing Vern Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 460 (1973)). But see In re Gamma Fishing Co., Inc., 70 B.R. 949, 951 (Bankr. S.D. Cal. 1987) (holding insurance policy agreement was executory because "the debtor has the obligation to continue payments on the installment premiums, while [the insurer] must continue to keep the insurance policy in effect.  Therefore, the agreement fulfills the requirements of an executory contract.").

11

deeming the same contract breached." In re Continental Airlines, 981 F.2d 1450, 1459 (5th Cir. 1993). Finally, the bankruptcy court noted that termination can only occur at the option of the non-debtor party to that contract. See id. De Pino seizes upon this language, arguing that Shirley Metzger is the non-debtor in this case. In re CVA, held the rights and obligations of the debtor and insurer (the non-debtor) did not cease to exist, and as in In re CVA, Sort-Rite is a debtor who entered into an insurance contract with Jefferson Pilot, the non-debtor. Thus, the rights and obligations of Sort-Rite did not automatically cease to exist.

    Section 365(g)(1) of the Bankruptcy Code treats rejection as a breach of contract so that the non-debtor party may bring a viable claim for breach of contract against the debtor. Although the contract is not terminated, the parties may still perform on the agreement. Without reaffirmation, however, a debtor who has rejected the contract will not be obligated to perform its obligations. See In re Beck, 272 B.R. 112, 121 (Bankr. E.D. Penn. 2002). In this case, therefore, supposing the premium agreement was in fact an executory contract and Sort-Rite had rejected the contract, this rejection would simply inform Jefferson-Pilot that Sort-Rite, as the debtor, presumptively will not perform its pending obligations, and Jefferson-Pilot may have a viable claim for breach of contract  pursuant to state law. As stated in In re CVA, when rejection occurs under § 365, the insurer is released from "any further obligation to furnish coverage for any future period from and after the date of the filing of the bankruptcy case, and to afford [the insurer] (if it so chose) the right to file a proof of claim for any unpaid premium obligations due as of bankruptcy filing." 267 B.R. at 778. Jefferson Pilot did not do this and indeed, it filed this action as an interpleader for the purpose of paying out the proceeds of the life insurance policy to either Sort-Rite, de Pino, or both.

    De Pino asserts that Sort-Rite rejected the insurance policy, and she cites the Second Amended Disclosure Statement filed by the Debtor. See de Pino's Motion for Reconsideration, at 32 [Dkt. No. 66]. Even if Sort-Rite as the debtor intended to reject all insurance plans, and the Court does not make such a finding now, it defies common sense that Sort-Rite would reject the terms of a split-dollar endorsement policy when the terms of such agreement entitle Sort-Rite to the value of the insurance policy

12

($1,000,000) as reimbursement for premiums already paid.  See Sort-Rite's Motion for Summary Judgment, Ex. 2, Section III [Dkt. No. 48].  It is more likely that Sort-Rite would reject the policy only to the extent that it would discontinue future premium payments and as such reject its future obligations.  This rejection, however, would not necessarily strip Sort-Rite of any benefit it was to receive based on the numerous premium payments already made throughout the life of the policy.   There is no principled reason to hold that even if Sort-Rite had rejected the premium agreement, this rejection would have rendered Sort-Rite ineligible to collect any proceeds under the policy.

Conclusion

De Pino has presented no new evidence unavailable at the time the motions for summary judgment were filed, no intervening change in controlling law, and no clear error of law.  The purpose of a Motion for Reconsideration is not to re-litigate issues already presented to the Court previously or to create another opportunity to make legal and factual arguments that were viable at the time of the original filings for summary judgment.  See Lavespere, 910 F.2d at 174; Russ v. International Paper Co., 943 F.2d 589, 593 (5th Cir. 1991), cert. denied, 503 U.S. 987 (1992).  Instead, de Pino presents several new arguments, including whether Jefferson-Pilot waived its two-signature requirement in the Beneficiary Designation Change form.  On the whole, however, de Pino largely presents recycled arguments and legal theories.  As a result, the Court **DENIES** de Pino's Motion for Reconsideration [Dkt. No. 66] and **GRANTS** Defendant Sort-Rite's Motion to Dismiss Claims for Attorneys' Fees and Reimbursement of Premiums [Dkt. No. 79].

Furthermore, the Court forewarns the parties that any future Motions for Reconsideration will not be entertained if they present arguments and issues already decided by the Court.  Absent intervening changes in the law or newly discovered evidence that was not previously available, the Court will not allow the parties to

13

relitigate the same issues, and will consider imposing sanctions if the motions are determined to be frivolous.

DONE this 16th day of December, 2002, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge

14